## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLORADO

Civil Action No. 09-cv-00752-CMA-CBS
(Consolidated with 09-cv-01222-CMA-CBS and 09-cv-01356-CMA-CBS)

WILLIAM AND ELEANOR COHEN,
ROCHELLE MANDELBAUM, individually and as executrix of
THE ESTATE OF DONALD MANDELBAUM;
GIUSEPPE SANTINELLO;
ANNE J. DEL CASINO, and
ROBERT AND STEPHANIE HALIO,
on behalf of themselves and other person similarly situated,

      Plaintiffs,

v.

FISERV, INC.,
FISERV TRUST COMPANY,
RETIREMENT ACCOUNTS, INC.,
NTC & CO. LLP,
TRUST INDUSTRIAL BANK,
LINCOLN TRUST COMPANY,
ROBERT BERIAULT,
ROBERT BERIAULT HOLDINGS, INC.,
TD AMERITRADE ONLINE HOLDING CORP., and
TD AMERITRADE HOLDING CORPORATION,`

      Defendants.

---

## MOTION TO DISMISS OF DEFENDANTS FISERV, INC., ROBERT BERIAULT, ROBERT BERIAULT HOLDINGS, INC., TD AMERITRADE ONLINE HOLDINGS CORP. AND TD AMERITRADE HOLDING CORP.

---

# TABLE OF CONTENTS

Page

PRELIMINARY STATEMENT ................................................................................ 1

STATEMENT OF FACTS ................................................................................... 5

I.    Status Allegations ................................................................................ 5

      A.    Status Allegations As To Fiserv, Inc. .................................................. 5

      B.    Status Allegations As To The TD Ameritrade Parties .............................. 6

      C.    Status Allegations As To The Beriault Defendants ................................. 6

II.   Transaction Documents ......................................................................... 7

      A.    The TD Ameritrade Transaction ......................................................... 7

      B.    The Beriault Transaction ................................................................. 9

III.  Aiding and Abetting Claims ................................................................... 12

ARGUMENT ............................................................................................... 14

I.    Rule 12(b)(6) Standards Require Dismissal Of The Consolidated Complaint ..... 14

II.   Under Well-Established Principles Of Corporate Law, None Of The Five
      Movants Could Be Liable Based on Plaintiffs' Status Allegations In Relation
      To Plaintiffs' IRA Investments With Madoff ............................................. 15

      A.    TD Ameritrade Parties ................................................................... 15

            1.    A parent corporation is not liable for the liabilities of its
                  subsidiary .......................................................................... 15

            2.    Plaintiffs have not asserted a claim for piercing the corporate
                  veil and have not alleged facts that would support such a claim ... 16

            3.    "Successor liability" principles do not apply to TD Ameritrade
                  Online's acquisition of FTC because the acquisition was
                  effected through a stock purchase, not an asset purchase ........... 17

      B.    Fiserv, Inc. ................................................................................ 18

      C.    Beriault Parties ........................................................................... 19

III.   Plaintiffs Fail To Plead Facts Supporting Any Claims For Aiding And Abetting Liability Against Movants ...................................................................................... 21

    A.   Plaintiffs Fail To Allege Sufficient Knowledge ......................................... 22

    B.   Plaintiffs Fail to Allege Substantial Assistance......................................... 25

CONCLUSION ........................................................................................................ 28

## TABLE OF AUTHORITIES

Page

### Cases

*Alcan Aluminum Corp. v. Elec. Metal Prods., Inc.*, 837 P.2d 282 (Colo. Ct. App. 1992)................................................................................................................17, 20

*Ashcroft v. Iqbal*, 129 S.Ct. 1937 (2009) ...............................................................14, 23

*Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007)..............................................14, 23

*Cargo Partner AG v. Albatrans, Inc.*, 352 F.3d 41 (2d Cir. 2003) ...................................18

*Citadel Equity Fund Ltd. v. Aquila, Inc.*, 168 Fed.Appx. 474 (2d Cir. 2006)....................7

*CNH America LLC. v. Kinzenbaw*, C.A. No. 08-945(GMS), 2009 WL 3737653 (D. Del. Nov. 9, 2009) ................................................................................................16, 17

*Cortec Indus., Inc. v. Sum Holding L.P.*, 949 F.2d 42 (2d Cir. 1991)...............................7

*Crosse v. BCBSD, Inc.*, 836 A.2d 492 (Del. 2003) .......................................................17

*Echostar Satellite Corp. v. Ultraview Satellite, Inc.*, No. 01-cv-00739-JLK, 2009 WL 1011204 (D. Colo. April 15, 2009) .......................................................................16

*Ede v. Mueller Pump Co.*, 652 F. Supp. 658-659 (D. Colo. 1987)..................................20

*Florom v. Elliott Mfg.*, 867 F.2d 570 (10th Cir. 1989).........................................17, 19, 20

*GFF Corp. v. Assoc. Wholesale Grocers, Inc.*, 130 F.3d 1381 (10th Cir. 1997)..............7

*Grynberg v. Koch Gateway Pipeline Co.*, 390 F.3d 1276 (10th Cir. 2004) ......................7

*Hamon Contractors, Inc. v. Carter & Burgess, Inc.*, Nos. 07CA0987, 07CA0988 and 07CA2342, 2009 WL 1152160 (Colo. Ct. App. June 11, 2009)...........................26

*Holmes v. Young*, 885 P.2d 305 (Colo. Ct. App. 1994) .................................................21

*In re AE, Inc. v. Goodyear Tire & Rubber Co.*, 168 P.3d 507 (Colo. 2007) ...................20

*In re Phillips v. Englewood Post No. 322 Veterans of Foreign Wars of the United States*, 139 P.3d 639 (Colo. 2006) .......................................................................15, 16

*In re Santa Fe Pacific Corp. Shareholder Litig.*, 669 A.2d 59 (Del. 1995) .....................21

*In re Sharp Int'l Corp.*, 403 F.3d 43 (2d. Cir. 2005) .......................................25, 26, 27, 28

*Johnston v. Amsted Indus., Inc.*, 830 P.2d 1141 (Colo. Ct. App. 1992).................. 17, 20

*Kirschner v. Bennett*, 648 F. Supp.2d 525 (S.D.N.Y. 2009) ...................................24, 25

*Lego v. Schmidt*, 805 P.2d 1119 (Colo. Ct. App. 1990)................................................ 26

*Leonard v. McMorris*, 63 P.3d 323 (Colo. 2003)........................................................... 15

*Liberty Savings Bank, FSB v. Webb Crane Serv., Inc.,* No. Civ.
A03CV2218REBCBS, 2005 WL 1799300 (D. Colo. July 27, 2005), *aff'd mem.*,
2007 WL 1548994 (10th Cir. May 30, 2007) ........................................... 25, 26, 27, 28

*Lowell Staats Mining Co. v. Pioneer Uravan, Inc.*, 878 F.2d 1259 (10th Cir. 1989). 15, 19

*Mann v. GTCR Golder Rauner, L.L.C.*, 483 F. Supp.2d 884 (D. Ariz. 2007) ................ 12

*Meisel v. Grunberg*, No. Civ. 11610 (PKL), 2009 WL 2777165 (S.D.N.Y. Aug. 31,
2009).................................................................................................................................22

*Micciche v. Billings*, 727 P.2d 367 (Colo. 1986) ........................................................... 15

*Natural Wealth Real Estate, Inc. v. Cohen*, No. 05-cv-01233-LTB-MJW, 2007 WL
201252 (D. Colo. Jan. 23, 2007) .................................................................................21

*Nelson v. Elway*, 971 P.2d 245 (Colo. Ct. App. 1998)................................................... 21

*Ross v. Desa Holdings Corp.*, C.A. No. 05C-05-013 MMJ, 2008 WL 4899226
(Del. Super. Ct. 2008) .................................................................................................. 20

*Ruiz v. ExCello Corp.*, 653 P.2d 415 (Colo. Ct. App. 1982) ................................... 17, 20

*Sender v. Mann*, 423 F. Supp. 2d 1155 (D. Colo. 2006) .........................................21, 22

*Sirna v. Prudential Securities, Inc., et al.*, Nos. 95 CIV 8422 (LAK), 95 CIV 9016
(LAK), 96 CIV. 4534 (LAK), 1997 WL 53194 (S.D.N.Y. Feb. 10, 1997) ..................... 28

*Sunnyside Dev. Co., LLC v. Opsys Ltd.*, No. C 05 0553 MHP, 2007 WL 2462142
(N.D. Cal. Aug. 29, 2007).............................................................................................. 18

*Trevino v. Merscorp, Inc.,* 583 F. Supp. 2d 521 (D. Del. 2008) ..................................... 17

*Utah Gospel Mission v. Salt Lake City Corp.*, 425 F.3d 1249 (10th Cir. 2005)............... 7

*Western Innovations, Inc. v. Sonitrol Corp.*, 187 P.3d 1155 (Colo. Ct. App. 2008)........ 26

**Statutes**

15 U.S.C. § 77(p) ............................................................................................................. 2

15 U.S.C. § 78 (bb)(f) ...................................................................................... 2

## Rules

Federal Rule of Civil Procedure 12(b)(6) ......................................... 1, 7, 14, 28

## Regulations

26 CFR Reg. 408.2 .............................................................................. 13, 27

## PRELIMINARY STATEMENT

Plaintiffs' complaint names as Defendants four corporations and an individual with no substantive relationship to the underlying allegations in this lawsuit. Because the claims against these five Defendants have no legal or factual basis, Defendants (i) Fiserv, Inc., (ii) Robert Beriault ("Beriault"), (iii) Robert Beriault Holdings, Inc. ("Beriault Inc."), (iv) TD Ameritrade Online Holdings Corp., sued herein as TD Ameritrade Online Holding Corp. ("TD Ameritrade Online"), and (v) TD Ameritrade Holding Corporation ("TD Ameritrade Holding") (the five movants collectively, "Non-Trust Company Defendants" or "Movants") hereby move to dismiss with prejudice pursuant to Federal Rule of Civil Procedure 12(b)(6) the Consolidated Class Action Complaint ("Consolidated Complaint") as against them for failure to state a claim.

In addition to the arguments set forth in this motion, the Movants and all other Defendants in this action are simultaneously filing two other motions to dismiss, one of which (the "Omnibus Motion") seeks dismissal of all claims against all Defendants. If the Court grants the Omnibus Motion in its entirety, this motion will be moot.

Plaintiffs assert claims against eleven Defendants for losses arising out of investments of self-directed IRA funds that Plaintiffs directed be made with Bernard Madoff ("Madoff"), the convicted multi-billion-dollar Ponzi Scheme operator.[1] Plaintiffs, who directed that funds be transferred to Madoff's control for him to trade securities on their behalf, now claim that: (1) Defendants failed to provide them "accurate" reports as to the value of their account, *i.e.*, Defendants failed to detect and report that Madoff was

---

[1] Ten Defendants are identified in the caption of the Consolidated Complaint; those ten plus First Trust Corporation are named in the body of the Consolidated Complaint. For present purposes, this inconsistency is irrelevant.

stealing Plaintiffs' money (Cons. Compl. ¶¶ 21, 144, 148 , 164-66, 175, 186 & 191); and

(2) Defendants failed to hold and prevent "commingling" of IRA assets, which enabled

Madoff to perpetrate his fraud (Cons. Compl. ¶¶ 10, 15-17, 20, 60, 63, 82-83, 87-88 &

93-94). All of these claims arise out of purported duties that Plaintiffs allege were owed

by Defendants pursuant to IRA agreements.

While six of the Defendants named in the Consolidated Complaint are trust

company entities ("Trust Companies")[2] alleged to have provided services for the IRA

accounts of class members, the five remaining Defendants, Movants here, are <u>not</u>

alleged to have had any contractual or other relationship with Plaintiffs at all. The

claims against Movants are based solely on their corporate status as alleged parent

corporations or alleged successors to the Trust Companies, or their alleged role as

"aiders and abettors" of the Trust Companies.

In fact, as set forth in the Omnibus Motion, all claims against the Trust

Companies, and thus all Defendants, fail because they are based on claimed duties that

do not exist; and, as set forth in the separate motion to dismiss by all Defendants

pursuant to the Securities Litigation Uniform Standards Act of 1998, 15 U.S.C. § 77(p),

78 (bb)(f)  ("SLUSA"), the claims made on behalf of a class are barred by SLUSA.

Dismissal of claims pursuant to those motions would compel dismissal of the claims

---

[2] The term "Trust Companies," as used herein, is different from Plaintiffs' term "Trustee Defendants," as defined and used in the Consolidated Complaint. By "Trust Companies," Movants are referring to First Trust Corporation, Fiserv Trust Company, Retirement Accounts, Inc., NTC & Co. LLP, Trust Industrial Bank and Lincoln Trust Company. The term "Trustee Defendants," as defined by Plaintiffs, includes Fiserv, Inc., Beriault Inc. and Beriault in addition to five of the six Trust Companies mentioned above (First Trust Corporation is not included). (Cons. Compl. ¶ 51(j)). Defendants do not concede that Plaintiffs have accurately identified the trust companies which provided services to Plaintiffs' IRA accounts, but will accept Plaintiffs' allegations in this regard as true for purposes of this Rule 12 motion.

against Movants, since all of the claims against Movants are predicated on the claims against the Trust Companies.

As set forth below, the claims against Movants also must be dismissed because the Consolidated Complaint fails to allege facts supporting any liability on their part as corporate parents or alleged successors, or for aiding and abetting.

As to Fiserv, Inc., Plaintiffs do not allege that it is an IRA service provider that contracted with them. Rather, they allege only that Fiserv, Inc. is the parent company of the Trust Companies. That allegation is insufficient to state a claim against Fiserv, Inc.

The claims against the other four Movants arise out of agreements entered into in May 2007, by which Fiserv, Inc. agreed to sell its investment support services ("ISS") business in two separate transactions -- one with TD Ameritrade Online, and one with Beriault Inc. Based on the facts pleaded, these agreements and transactions created no liability on the part of TD Ameritrade Online or Beriault Inc. Nor is there any basis for liability on the part of TD Ameritrade Holding or Beriault himself, who are simply stockholders of the respective purchasing corporations.

In the first transaction, TD Ameritrade Online purchased the stock of Fiserv Trust Company ("FTC"), one of the Trust Companies and a then-subsidiary of Fiserv, Inc. Acquiring the stock of FTC does not make TD Ameritrade Online liable for any obligations of FTC. Nor do plaintiffs assert any claim, or allege facts that would support a claim, for piercing the corporate veil. Plaintiffs allege that TD Ameritrade Online has successor liability. Yet, the Consolidated Complaint specifically alleges that no accounts that invested with Madoff were acquired by TD Ameritrade Online as part of this transaction. This allegation wholly undermines any possible application of

3

"successor liability." And, the claim of successor liability against TD Holding, which rests solely on the allegation that it is the parent of TD Ameritrade Online, is plainly insufficient.

As to the second transaction, the Consolidated Complaint vaguely alleges that Beriault Inc. agreed to purchase Trust Industrial Bank ("TIB"), also one of the Trust Companies, where IRA accounts were housed, though whether the transaction was a purchase of stock or assets is not clearly alleged.   In either case, merely acquiring the stock of a corporation or its assets, without more, does not make the acquirer liable for any obligations of that corporation. As with TD Ameritrade Online, Plaintiffs fail to make a claim or assert allegations that would support a claim of piercing the corporate veil, or would give rise to successor liability on the part of Beriault Inc. or Beriault. The Consolidated Complaint does not allege that Beriault Inc. acquired any of the Madoff accounts (it did not, as set forth below). These claims must also be dismissed as a matter of law.

Plaintiffs' aiding and abetting claims are also fatally deficient. To plead such a claim, a plaintiff must allege facts that would show that the defendant had "actual knowledge" of another defendant's underlying breach, and provided knowing and "substantial assistance" to such other defendant in connection with its breach. Plaintiffs do not support either element with well-pleaded allegations. Plaintiffs' sole allegation even purportedly bearing on Movants' knowledge is that TD Ameritrade Online, TD Ameritrade Holding and Beriault Inc. performed due diligence in connection with the 2007 agreements, and their alleged assistance was essentially their failure to disclose what they learned to third parties to whom they owed no duty. But Plaintiffs do not set

forth any non-conclusory allegations of knowledge as required under the relevant standard, and simply alleging silence, without more, does not sufficiently allege "substantial assistance." And the allegations that TD Ameritrade Holding and Beriault are liable as sole stockholders of TD Ameritrade Online and Beriault Inc., respectively, fail to state a claim as a matter of law.

Accordingly, all claims against Movants must be dismissed.

## STATEMENT OF FACTS

### I.   Status Allegations

The principal allegations against Movants are based on their corporate status and relationship with the Trust Companies ("Status Allegations"). In short, in their Status Allegations, Plaintiffs assert that: (i) Fiserv, Inc. was the parent company of the various Trust Companies that entered into agreements with Plaintiffs in connection with their IRA accounts; (ii) TD Ameritrade Online purchased the stock of FTC, one of the Trust Companies, in a transaction that excluded all the Plaintiffs' IRA accounts invested with Madoff; (iii) TD Ameritrade Holding is the parent company of TD Ameritrade Online; (iv) Beriault agreed to purchase TIB, another one of the Trust Companies, at some unspecified time in the future; and (v) Beriault Inc. is owned by Beriault. As set forth below, these Status Allegations, even if proven, fail to state a basis for liability on the part of Movants.

### A.   Status Allegations As To Fiserv, Inc.

The Trust Companies are alleged to have been originally owned by Movant Fiserv, Inc., a publicly traded company. (Cons. Compl. ¶¶ 31). Entities that were subsidiaries or affiliates of Fiserv, Inc. are alleged to have provided services to Plaintiffs' IRA accounts pursuant to contracts with class members up to and including 2008.

These entities allegedly include the six Trust Companies: FTC, TIB, Retirement Accounts, Inc., First Trust Corporation, NTC & Co. LLP, and Lincoln Trust Company. (Cons. Compl. ¶¶ 48-52). However, Fiserv, Inc. itself is <u>not</u> alleged to have been a party to any such contracts.

### B.   Status Allegations As To The TD Ameritrade Parties

According to the Consolidated Complaint, on February 4, 2008, TD Ameritrade Online "purchased all outstanding stock of FTC as well as its assets, <u>with the exception of the custodial accounts invested by Bernard Madoff and his company BMIS</u>." (Cons. Compl. ¶ 41) (emphasis ours here and throughout unless stated otherwise). Plaintiffs immediately follow this allegation with the conclusory allegation that "TD Ameritrade Online is successor in interest of FTC and responsible for FTC's liabilities." (*Id.*).

As to TD Ameritrade Holding, the Consolidated Complaint alleges merely: "TD Holding is the sole owner of TD Online and is responsible for its liabilities." (Cons. Compl. ¶ 42).

### C.   Status Allegations As To The Beriault Defendants

Similarly, Movants Beriault and Beriault Inc. (a corporation wholly owned by Beriault) are also sued based on having agreed to engage in certain corporate transactions with Fiserv, Inc. Without specifying the meaning of the term "Beriault", the Consolidated Complaint alleges: "On May 24, 2007, Beriault reached agreement with Fiserv to purchase TIB and his former division, which had custody of Plaintiffs' and Class Members' IRAs. Under the agreement, Beriault would own and operate TIB, which would (and did) hold custody of Plaintiffs' and Class Members' IRAs." (Cons. Compl. ¶ 39). It is not alleged that Beriault completed this purchase, or that the transaction ever closed.

II.     **Transaction Documents**

The agreements and transactions between Fiserv, Inc. and TD Ameritrade

Online, and between Beriault Inc. and TIB, referred to in the Consolidated Complaint

are contained in public documents filed with the Securities and Exchange Commission

("SEC") to which Plaintiffs have access and of which this Court may take judicial notice

on this Motion.[3]

A.     **The TD Ameritrade Transaction**

On May 24, 2007, TD Ameritrade Online entered into a Stock Purchase

Agreement ("TD Ameritrade Stock Purchase Agreement") with Fiserv, Inc.  (A copy of

the TD Ameritrade Stock Purchase Agreement is Exhibit 2.1 to the Form 10-Q filed by

Fiserv, Inc. with the SEC on August 3, 2007, and relevant pages are included in Exhibit

20 to the Declaration of Kenneth B. Siegel ("Siegel Decl.")).  Under the TD Ameritrade

Stock Purchase Agreement, TD Ameritrade Online agreed to purchase "all of the

outstanding capital stock" of FTC, defined as the "Target Company." (Siegel Decl., Ex.

20, TD Ameritrade Stock Purchase Agreement, "Whereas" clauses).  FTC had three

---

[3] As explained in the Omnibus Motion, documents referenced in the Consolidated Complaint and central to Plaintiffs' claims may be considered in determining this Motion – even if the documents are not attached to or incorporated by reference in the Consolidated Complaint. *Utah Gospel Mission v. Salt Lake City Corp.*, 425 F.3d 1249, 1253-54 (10th Cir. 2005); *GFF Corp. v. Assoc. Wholesale Grocers, Inc.*, 130 F.3d 1381, 1384-85 (10th Cir. 1997).  *See also Cortec Indus., Inc. v. Sum Holding L.P.*, 949 F.2d 42, 47-48 (2d Cir. 1991) (even though stock purchase agreement and related documents were not attached to or incorporated by reference in the complaint, plaintiff had notice of the documents and the documents were integral to the complaint; thus, the court could consider the documents on a motion to dismiss).

Moreover, facts subject to judicial notice (such as SEC filings) may be considered in a Rule 12(b)(6) motion without converting the motion to dismiss into a motion for summary judgment. *Grynberg v. Koch Gateway Pipeline Co.*, 390 F.3d 1276, 1278 n. 1 (10th Cir. 2004) (citing 27A Fed. Proc., L.Ed. § 62:520 (2003)).  *See, e.g., Citadel Equity Fund Ltd. v. Aquila, Inc.*, 168 Fed.Appx. 474, 475-476 (2d Cir. 2006).

lines of business:  (i) providing back office services to investment advisers and institutional advisory firms ("Advisor Services" or "AS Business"); (ii) providing back office services for defined benefit and defined contribution retirement plans and trustee and administrative services to collective investment funds ("Institutional Retirement Plan Services" or "IRPS Business"); and (iii) providing services to self-directed IRA accounts and qualified retirement plans ("Investment Administration Services" or "IAS Business"). (*Id.* § 7.1, Definitions of "Target Businesses," "AS Business," "IRPS Business" and "Acquired IAS Accounts").

Under the TD Ameritrade Stock Purchase Agreement, certain components of FTC's business were excluded from the acquisition, including the "balance forward business" and the "daily valuation business." (Siegel Decl., Ex. 20, TD Ameritrade Stock Purchase Agreement § 7.1, Definition of "Excluded Business").  Also, the vast bulk of FTC's IAS business (where self-directed IRAs were located) was excluded from the acquisition; only a small fraction of the IRA business was included -- accounts that satisfied a number of specified criteria including the criterion that they were not associated with a registered investment advisor (such as Madoff). (*Id.* § 7.1, Definitions of "Excluded Business" and "Acquired IAS Accounts").  The self-directed IRA accounts that invested with Madoff, which were in the IAS business, were thus among the many accounts excluded from the acquisition, as Plaintiffs' Consolidated Complaint admits. (Cons. Compl. ¶ 41).

In order to effectuate this agreement, Fiserv, Inc. and TD Ameritrade Online agreed that before the closing of the acquisition by TD Ameritrade Online, FTC would transfer to TIB, a separate Fiserv, Inc. affiliate, all of FTC's assets and liabilities relating

to the parts of the business that TD Ameritrade was not going to acquire.  (Siegel Decl.,

Ex. 20, TD Ameritrade Stock Purchase Agreement §§ 3.1.5; 7.1, Definitions of

"Customers" and "Target Businesses").  Thus, at the closing of the purchase of the FTC

stock, FTC would not contain the parts of the FTC business that were not being

acquired by TD Ameritrade Online, including the assets and liabilities relating to

accounts that TD Ameritrade Online was not acquiring.

As the Consolidated Complaint itself alleges, therefore, the transaction with TD

Ameritrade Online did not include Plaintiffs' IRA accounts, and there was never a time

when TD Ameritrade Online provided services for any IRA accounts invested with

Madoff or otherwise had any contractual relationship with Plaintiffs.  (Cons. Compl. ¶

41).  The acquisition by TD Ameritrade Online closed on February 4, 2008. (Cons.

Compl. ¶ 41).[4]

## B.      The Beriault Transaction

The second transaction agreed to in May 2007, was between Fiserv, Inc. and

Beriault Inc.  Under this transaction (later modified as discussed below), the remainder

of the business that had been part of FTC, including the IAS Accounts that were to be

transferred out of FTC prior to the sale of its stock to TD Online, was to be acquired by

Beriault Inc.  On May 24, 2007, Fiserv, Inc. entered into a Stock Purchase Agreement

with Beriault Inc. ("Beriault Inc. Stock Purchase Agreement"), in which Beriault Inc.

agreed to purchase all of the outstanding capital stock of TIB, where the IAS Accounts

not acquired by TD Ameritrade Online were then housed, including at that point

---

[4] At the same time, as discussed *infra* in connection with the claims of aiding and abetting, these
contractual terms make clear that Plaintiffs' implication that the exclusion of certain accounts
was Madoff-specific is false, since the exclusion involved all accounts with investment advisers
– including, but certainly not limited to, Madoff accounts.

Plaintiffs' self-directed IRAs.[5]  (A copy of the Beriault Inc. Stock Purchase Agreement is Exhibit 2.2 to the Form 10-Q filed by Fiserv, Inc. with the SEC on August 3, 2007, and relevant pages are included in Exhibit 20 to the Siegel Decl.).  The transaction was subject to various regulatory approvals, which ultimately took more than two years to obtain.

During the time between the execution of the Beriault Inc. Stock Purchase Agreement and the obtaining of the regulatory approvals, the parties agreed to restructure their agreement.  They first modified the Beriault Inc. Stock Purchase Agreement in March 2008 (a copy of the Amended and Restated Stock Purchase Agreement is Exhibit 2.1 to the Form 8-K filed by Fiserv, Inc. on April 3, 2008, and relevant pages are included in Exhibit 21 to the Siegel Decl.).  Then, on April 15, 2009, they entered into a Second Amended and Restated Stock Purchase Agreement and also an Asset Purchase Agreement between Fiserv, Inc., Lincoln Trust Company as seller, and Beriault Inc. as buyer ("Asset Purchase Agreement") (copies of the (i) Second Amended and Restated Stock Purchase Agreement and (ii) the Asset Purchase Agreement are Exhibits 2.1 and 2.2 respectively to the Form 8-K filed by Fiserv, Inc. on April 21, 2009, and relevant pages are included in Exhibit 22 to the Siegel Decl.).

Under the Asset Purchase Agreement, which was negotiated and entered into after the December 2008 disclosure of the Madoff scheme, Beriault Inc. agreed to buy certain defined assets of TIB, which had changed its name to Lincoln Trust Company.[6]

---

[5] Beriault Inc. also agreed to purchase all of the capital stock of certain other companies wholly owed by Fiserv, Inc. pursuant to the Beriault Inc. Stock Purchase Agreement.  (Siegel Decl., Ex. 20, Beriault Inc. Stock Purchase Agreement, "Whereas" clauses defining "Target Shares").

[6] At the time of the Asset Purchase Agreement, TIB had changed its name to Lincoln Trust Company. (Cons. Compl. ¶¶ 36-37).

(Siegel Decl., Ex. 22, Asset Purchase Agreement § 1.1.1). The Asset Purchase Agreement also expressly provided that Beriault Inc. would not assume any liability of Lincoln Trust Company arising prior to the closing date of the transactions. (*Id.*, § 1.1.5).

Further, in connection with the approval by the Colorado State Banking Board of the transaction provided for under the Asset Purchase Agreement, the IAS Accounts invested with Madoff that remained with the seller entity (Lincoln Trust Company, formerly known as TIB) were required to be transferred to an unaffiliated third party or distributed per customer request, and thus were not included within the assets to be purchased by Beriault Inc. or its newly created trust company. (A copy of the November 19, 2009 Order from the Colorado Department of Regulatory Agencies, Division of Banking approving the application of Beriault Inc. and requiring transfer or distribution of Madoff accounts is Exhibit 23 to the Siegel Decl.).[7] The transaction closed in early December 2009 -- after the date on which the Consolidated Complaint was filed and, of course, long after the operative events at issue in this litigation occurred. (Siegel Decl., Ex. 24, 401kwire.com Press Release, "A Recordkeeping Phoenix Rises in the West" (December 7, 2009)). Beriault Inc. at no time had any contractual or other relationship with Plaintiffs or provided services in connection with their IRA accounts.

---

[7] As part of the Asset Purchase Agreement, Beriault Inc. acquired use of the name Lincoln Trust Company, and thus the application and approval letter from the Colorado State Banking Board permit Beriault Inc. to operate its newly created trust company under the name Lincoln Trust Company, so that a new Lincoln Trust Company became the actual purchaser of the assets. In contemplation of this disposition of the name, the seller Lincoln Trust Company entity had changed its name back to TIB, and thus TIB is the seller entity referred to in the Banking Board letter, which also identifies new Lincoln Trust Company as the trust company that would operate the business. (Siegel Decl., Ex. 23).

### III.   Aiding and Abetting Claims

In addition to the Status Allegations, the Consolidated Complaint also makes certain allegations that purport to support aiding and abetting claims against TD Ameritrade Online and TD Ameritrade Holding (referred to collectively as "TD Ameritrade Parties") as well as Beriault and Beriault Inc. (referred to collectively as "Beriault Parties") (Cons. Compl. ¶¶ 97-105).[8]  The Consolidated Complaint alleges that TD Ameritrade Online and TD Ameritrade Holding learned of the alleged Trustee Defendants' "breaches" of fiduciary duty when they conducted due diligence in connection with the prospective purchase of FTC, and that it "materially assisted the Trustee Defendants' breach of their fiduciary duties when [they] agreed not to disclose [their] knowledge but to go forward with the transaction after excluding the Class members' IRAs and other accounts."  (Cons. Compl. ¶¶ 100-103).  The Consolidated Complaint is silent as to what facts TD Ameritrade Online and TD Ameritrade Holding allegedly learned and also silent as to how anything the TD Ameritrade Parties did had any effect on the events giving rise to Plaintiffs' losses, which are alleged to have occurred during the preceding two or more decades.

---

[8] In keeping with Plaintiffs' blunderbuss style of pleading, all of the thirty-two claims in the Consolidated Complaint are asserted against all eleven Defendants, including the aiding and abetting claims, meaning that Plaintiffs in effect accuse the Trust Companies of aiding and abetting themselves. This, of course, is impossible as a matter of logic and law. *See Mann v. GTCR Golder Rauner, L.L.C.*, 483 F. Supp.2d 884, 916 (D. Ariz. 2007) (noting plaintiffs' concession that a person who himself owes a fiduciary duty with respect to a transaction or course of conduct cannot be liable for aiding and abetting a breach of that same fiduciary duty by another). The only allegations in the Consolidated Complaint that even address aiding and abetting, however, are in paragraphs 96 – 106, and these all concern only TD Ameritrade Online, TD Ameritrade Holding, Beriault and Beriault Inc.

The Consolidated Complaint then alleges that "[a]s the sole owner of TD Ameritrade Online Holding Corporation, TD Ameritrade Holding Corporation similarly aided and abetted the Trustee Defendants' breach of their fiduciary duties." (Cons. Compl. ¶ 101). In this section, the Consolidated Complaint repeats its conclusory contention from the Status Allegations that "[a]s the sole owner of TD Ameritrade Online Holding Corporation, TD Ameritrade Holding Corporation is responsible for the liabilities of its subsidiary." (Cons. Compl. ¶ 102).

Plaintiffs make similar allegations against the Beriault Parties. The Consolidated Complaint states that, based on Beriault's former role in FTC's business and the due diligence conducted in connection with the May 2007 agreement, the Beriault Parties knew of "the Trustee Defendants' numerous breaches and gross negligence." (Cons. Compl. ¶ 105). The Consolidated Complaint further alleges that the Beriault Parties "materially assisted the Trustee Defendants' breach of their fiduciary duties when they agreed not to disclose their knowledge but continued to exercise control" over TIB and NTC & Co. LLP [another of the Trust Companies] "during the transition period while Beriault's transaction with Fiserv was pending...." (*Id.*). The Consolidated Complaint contains no allegations as to what Beriault Inc. allegedly learned or how anything it did had any effect on the events giving rise to Plaintiffs' losses, which are alleged to have occurred during the preceding two or more decades.

Finally, with respect to Beriault individually, the Consolidated Complaint alleges that "under 26 CFR Reg. 408.2, the officers and directors of a fiduciary, are responsible to insure compliance with federal fiduciary requirements, and... Beriault had long been such an officer but had long failed to insure such compliance." (*Id.*).

13

The Consolidated Complaint does not describe any contract or other relationship between any plaintiff and the TD Ameritrade Parties or the Beriault Parties. Nor does it describe any other purported basis for imposing upon the TD Ameritrade Parties or the Beriault Parties any duties whatsoever with regard to any Plaintiff.

## ARGUMENT

**I.    Rule 12(b)(6) Standards Require Dismissal Of The Consolidated Complaint**

The legal standards applicable to this motion to dismiss under Rule 12(b)(6) -- including discussion of *Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1949-50 (2009), and *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 545 (2007) -- are set forth in the Omnibus Motion by all Defendants, and Movants will not repeat those standards here.

Further, the agreements and transactions involving Fiserv, Inc., TD Ameritrade Online, and Beriault Inc. are referred to in the Consolidated Complaint and are central to Plaintiffs' claims against these companies, and the documents embodying those transactions may be considered on a motion to dismiss. *See* footnote 3, *supra* (setting forth legal authority concerning consideration of such documents on a motion to dismiss). The Consolidated Complaint makes a series of allegations regarding those agreements and transactions, which are plainly based on the public disclosures regarding the agreements and transactions. (Cons. Compl. ¶¶ 38-42, 99-105). Further, the agreements and the closing of the transactions are disclosed in publicly available documents, such as SEC filings by Fiserv, Inc. and other public sources, of which this Court may take judicial notice. *See* footnote 3, *supra*.

14

II.    **Under Well-Established Principles Of Corporate Law, None Of The Five Movants Could Be Liable Based on Plaintiffs' Status Allegations In Relation To Plaintiffs' IRA Investments With Madoff**

As set forth below, Plaintiffs' Status Allegations fail to state a claim against any of the five Movants.

A.    **TD Ameritrade Parties**

The conclusory allegations that TD Ameritrade Online and TD Ameritrade Holding are responsible for the liabilities of FTC are devoid of factual support and legal merit.  That TD Ameritrade Online purchased the stock of FTC does not render TD Ameritrade Online liable for FTC's liabilities.  Nor does the fact that TD Ameritrade Holding is the parent corporation of TD Ameritrade Online render TD Ameritrade Holding liable for TD Ameritrade Online's liabilities.

1.    **A parent corporation is not liable for the liabilities of its subsidiary**

A corporation is treated as a legal entity separate from its shareholders, directors and officers.  *See, e.g., In re Phillips v. Englewood Post No. 322 Veterans of Foreign Wars of the United States*, 139 P.3d 639, 643 (Colo. 2006).  This separation permits shareholders to invest with the assurance that they will not be held liable for the debts of the corporation. *Id.; see also Micciche v. Billings*, 727 P.2d 367, 372 (Colo. 1986).  In fact, insulation from liability is an inherent purpose of incorporation.  *In Re Phillips*, 139 P.3d at 643; *see also Leonard v. McMorris*, 63 P.3d 323, 330 (Colo. 2003).

That a parent owns all of the stock of the subsidiary, standing alone, is an insufficient basis to depart from the general rule that the corporation and its shareholder are treated as distinct legal persons. *See, e.g., Lowell Staats Mining Co. v. Pioneer Uravan, Inc.*, 878 F.2d 1259, 1262-1263 (10th Cir. 1989) (applying Colorado law); *CNH*

*America LLC. v. Kinzenbaw*, C.A. No. 08-945(GMS), 2009 WL 3737653, at *1 (D. Del. Nov. 9, 2009).

Here, Plaintiffs allege nothing more than TD Ameritrade Online is liable as a shareholder of FTC for the liabilities of FTC and TD Ameritrade Holding is liable as a shareholder of TD Ameritrade Online for the liabilities of TD Ameritrade Online. These claims fail as a matter of law.

>    **2.    Plaintiffs have not asserted a claim for piercing the corporate veil and have not alleged facts that would support such a claim**

The Consolidated Complaint does not include any claim that the corporate form of organization of FTC and TD Ameritrade Online should be pierced and disregarded. Nor does the Consolidated Complaint include any factual allegations that would be sufficient to support a claim that the corporate form of organization of FTC and TD Ameritrade Online should be pierced and disregarded.[9]

To state a veil piercing claim under Colorado law, plaintiffs must allege facts showing that: (i) the parent corporation is the alter ego of the subsidiary; (ii) the corporate form of the subsidiary was used to perpetrate a fraud or abused to defeat a rightful claim of creditors; and (iii) equity requires disregarding the corporate form. All three elements must be pleaded and satisfied. *In re Phillips*, 139 P.3d at 643.

To state a veil piercing claim under Delaware law, plaintiffs must allege facts showing that the corporation was a sham entity created by the parent corporation to

---

[9] Colorado courts follow the choice of law principle that the law of the state of incorporation sets the standards for a claim of piercing the corporate veil. *Echostar Satellite Corp. v. Ultraview Satellite, Inc.*, No. 01-cv-00739-JLK, 2009 WL 1011204, at *7 (D. Colo. April 15, 2009). FTC was organized under the laws of Colorado; thus, Colorado law would apply to any claim of piercing the corporate veil of FTC. TD Ameritrade Online is organized under the laws of Delaware; thus, Delaware law would apply to any claim of piercing the corporate veil of TD Ameritrade Online.

defraud investors and creditors. *Crosse v. BCBSD, Inc.*, 836 A.2d 492, 497 (Del. 2003).

Plaintiff must show some fraud, injustice or inequity in the use of the corporate form. *Id.*

*See also CNH America LLC*, 2009 WL 3737653 at *1; *Trevino v. Merscorp, Inc.*, 583 F.

Supp. 2d 521, 529-529 (D. Del. 2008).

Plaintiffs have failed to allege any such facts. The Consolidated Complaint

contains no allegation that, after it purchased FTC, TD Ameritrade Online used FTC as

a facade or sham or to perpetrate a fraud or that there was any fraud or injustice in the

use of the corporate form. In fact, there is no allegation in the Consolidated Complaint

that the corporate form was abused in any way. Likewise, the Consolidated Complaint

contains no allegations that TD Ameritrade Holding used TD Ameritrade Online as a

sham or to perpetrate a fraud, that there was any fraud or injustice in the use of the

corporate form, or that the corporate form was abused in any way.

### 3. "Successor liability" principles do not apply to TD Ameritrade Online's acquisition of FTC because the acquisition was effected through a stock purchase, not an asset purchase

Plaintiffs also make a conclusory statement that TD Ameritrade Online is a

"successor in interest of FTC." (Cons. Compl. ¶ 41). But successor liability principles

do not apply to a stock purchase transaction. Court decisions addressing successor

liability claims consistently involve asset purchases -- as opposed to stock purchases.

*See, e.g., Alcan Aluminum Corp. v. Elec. Metal Prods., Inc.*, 837 P.2d 282, 283 (Colo.

Ct. App. 1992) (an asset purchase); *Johnston v. Amsted Indus., Inc.*, 830 P.2d 1141,

1142-1143 (Colo. Ct. App. 1992) (an asset purchase); *Ruiz v. ExCello Corp.*, 653 P.2d

415 (Colo. Ct. App. 1982) (an asset purchase*); Florom v. Elliott Mfg.*, 867 F.2d 570,

574-575 (10th Cir. 1989) (an asset purchase).

Indeed, courts have noted the inapplicability of successor liability principles to a stock purchase transaction. *See Sunnyside Dev. Co., LLC v. Opsys Ltd.*, No. C 05 0553 MHP, 2007 WL 2462142, at *6 (N.D. Cal. Aug. 29, 2007) (explaining that successor liability "requires the purchase of assets, not merely the purchase of stock... which is not simply a matter of form over substance"); *Cargo Partner AG v. Albatrans, Inc.*, 352 F.3d 41, 44-45 (2d Cir. 2003) (finding successor liability principles apply to asset purchases as opposed to stock purchases).

The transaction in which TD Ameritrade Online acquired FTC was a stock purchase. There is no basis pleaded for successor or any other liability by the TD Ameritrade Parties to Plaintiffs.

**B.    Fiserv, Inc.**

The claims asserted against Fiserv, Inc. also fall far short of meeting the standards for pleading a claim against a parent corporation or successor.

The Consolidated Complaint alleges no more than that, at some point, Fiserv, Inc. was the parent company of the Trust Companies. While the Consolidated Complaint defines Fiserv, Inc. as one of the "Trustee Defendants" and asserts claims against it as if it were in the same position vis a vis the class members as the Trust Companies it allegedly owned, there is no specific allegation that Fiserv, Inc. entered into agreements to provide services for customers' IRA accounts, such as those of Plaintiffs -- in stark contrast to the allegations that the Trust Companies entered into such contracts. (Cons. Compl. ¶ 51). Therefore, this pleading does not state a claim for relief against Fiserv, Inc.

Further, based on the legal authority set forth above, merely because Fiserv, Inc. is, or was, the shareholder of other entities does not make it liable for the alleged acts of

those entities. *See, e.g., Lowell Staats*, 878 F.2d at 1263. There are no allegations that Fiserv, Inc. engaged in any acts that would justify piercing the corporate veil. Under the facts as pleaded, Fiserv, Inc. could have no liability to Plaintiffs.

### C.   Beriault Parties

The claims against Beriault Inc. and Beriault fail for similar reasons. The Consolidated Complaint alleges only that, on May 24, 2007, Beriault agreed to purchase TIB and, thus, become its parent company. (Cons. Compl. ¶ 39). Indeed, the Consolidated Complaint does not allege that this agreement was ever consummated. (*Id.*). This conclusory allegation does not state a claim for liability on the part of either Beriault or Beriault Inc. Even if the transaction set forth in the May 2007 agreement were consummated, it would simply be a stock acquisition, and under the principles set forth above, the acquisition of TIB by Beriault Inc. would not create liability for TIB's obligations; it would merely make Beriault Inc. the parent of TIB, which, as set forth above, does not give rise to liability for TIB's obligations.[10]

As also described above, the original May 24, 2007 agreement with Beriault Inc. was modified, and Beriault Inc. in April 2009 entered into the Asset Purchase Agreement with Lincoln Trust Company, which this Court may consider on this motion. *See* footnote 3, *supra*. An asset purchase, unlike a stock purchase, can give rise to successor liability under certain circumstances, but no such circumstances are pleaded here.

A purchaser of assets does not acquire liabilities unless one of the four traditional exceptions to that rule is met. *See Florom*, 867 F.2d at 574-575 (applying Colorado

---

[10] Beriault Inc., TIB and Lincoln Trust Company are all Colorado companies; thus, Colorado law applies. *See* footnote 9, *supra*.

law).[11]  When a corporation acquires the assets of another corporation, it does not

become liable for the debts and liabilities of the transferor, except where: (1) there is an

express or implied assumption of liability; (2) the transaction results in a merger or

consolidation of the two corporations; (3) the purchaser is a mere continuation of the

seller; or (4) the transfer is for the fraudulent purpose of escaping liability.  *See Alcan*

*Aluminum Corp.*, 837 P.2d at 283 (citing *Ruiz*, 653 P.2d 415); *Johnston*, 830 P.2d at

1142-1143 (also citing *Ruiz*).[12]

The Consolidated Complaint includes no allegations regarding the April 2009

agreement at all, much less any allegations that could support one of the four

exceptions to the no-successor-liability rule for an asset purchase.  And, as further set

forth above, before that transaction could close, the seller was required by the Colorado

Banking Commission to transfer all of the Madoff accounts to a third party not in any

way affiliated either with the buyer or seller.  Thus, Beriault Inc. never acquired any

Madoff accounts, further negating any possible claim of successor liability by Plaintiffs.

Beriault himself is even further removed from liability, since he is merely alleged

to be the sole shareholder of Beriault Inc.  As with the TD Ameritrade Holding claim

above, this claim fails because the claim against Beriault Inc. fails, and further because

---

[11] Governing law for claims of successor liability in connection with asset purchases is determined based on the "most significant contacts" test. *Ede v. Mueller Pump Co.*, 652 F. Supp. 658-659 (D. Colo. 1987), *disagreed with on different grounds, Florom*, 867 F.2d at 579-80.  *See also In re AE, Inc. v. Goodyear Tire & Rubber Co.*, 168 P.3d 507, 510 (Colo. 2007) (Colorado uses the "most significant relationship test" for resolution of most choice of law disputes).  Colorado clearly has the most significant relationship with the Beriault Parties' transaction, as the assets purchased are in Colorado and the buyer and seller are incorporated in Colorado.

[12] Under Delaware law, the test for successor liability is substantially the same.  *See Ross v. Desa Holdings Corp.*, C.A. No. 05C-05-013 MMJ, 2008 WL 4899226, at *4 (Del. Super. Ct. 2008).

there are no facts alleged that would justify piercing the corporate veil to hold Beriault

liable for any obligations of the company whose stock he owns.

### III.   Plaintiffs Fail To Plead Facts Supporting Any Claims For Aiding And Abetting Liability Against Movants

Plaintiffs' other claims against the Non-Trust Company Defendants are based on

the theory of aiding and abetting breach of fiduciary duty.  To allege such a claim, a

plaintiff must plead breach by a fiduciary of a duty owed to a plaintiff, the defendant's

knowing and substantial participation in that breach and damages resulting from the

breach.  *See, e.g., Nelson v. Elway*, 971 P.2d 245, 249-250 (Colo. Ct. App. 1998);

*Holmes v. Young*, 885 P.2d 305, 308 (Colo. Ct. App. 1994); *Sender v. Mann*, 423 F.

Supp. 2d 1155, 1175-1176 (D. Colo. 2006).[13]

Plaintiffs do not allege <u>any</u> facts regarding purported knowledge by Fiserv, Inc. of

an underlying breach of duty by a fiduciary, or regarding substantial assistance by

Fiserv, Inc.  Plaintiffs do make conclusory statements that the TD Ameritrade Parties

and the Beriault Parties acquired knowledge of an underlying breach by the other

Defendants through conducting due diligence reviews in connection with the May 2007

acquisition agreements, and that they assisted those Defendants by not disclosing such

breaches. (Cons. Compl. ¶¶ 99-107).  These claims fail first because, as set forth in the

Omnibus Motion, there is no underlying breach by the Trust Companies, an

---

[13] Under Colorado choice of law principles, the "most significant relationship test" determines the relevant state law for aiding and abetting breach of fiduciary duty.  *Natural Wealth Real Estate, Inc. v. Cohen*, No. 05-cv-01233-LTB-MJW, 2007 WL 201252, at *5 (D. Colo. Jan. 23, 2007).  As discussed above, Colorado has the most significant relationship to the allegations at issue; thus, Movants cite Colorado law.  To the extent Delaware law is deemed relevant, it is similar to Colorado law on aiding and abetting. *See In re Santa Fe Pacific Corp. Shareholder Litig.*, 669 A.2d 59, 72 (Del. 1995).

indispensable element of such a claim.  And, apart from this deficiency, Plaintiffs fail to adequately allege the requisite knowledge or substantial assistance by the Movants.

### A.      Plaintiffs Fail To Allege Sufficient Knowledge

As to the knowledge element, "actual knowledge" of a breach is required; it is not enough to plead reckless or negligent conduct providing the defendant with constructive knowledge of a potential breach of fiduciary duty.  *See Sender*, 423 F. Supp.2d at 1176. Plaintiffs cannot rely upon "conclusory and sparse allegations that the aider and abetter knew or should have known about the primary breach of fiduciary duty." *Meisel v. Grunberg*, No. Civ. 11610 (PKL), 2009 WL 2777165, at *10 (S.D.N.Y. Aug. 31, 2009) (internal quotations omitted).

Here, the only alleged "knowledge" is based on allegations that the TD Ameritrade Parties and Beriault Parties performed due diligence in connection with the May 2007 acquisition agreements. Significantly, any alleged knowledge acquired by these Non-Trust Company Defendants in 2007 would be irrelevant for all investments made prior to 2007, and would also be insufficient to establish proximate causation of loss as between any Plaintiffs, with the possible exception of Plaintiff Giuseppe Santinello (who invested in 2008), and the TD Ameritrade Parties and Beriault Parties. Aside from that deficiency, the Consolidated Complaint is devoid of any fact allegations indicating what these Defendants learned; it merely speculates regarding what they might have learned from their due diligence, or, in the case of the Beriault Parties, recites Beriault's position within Fiserv, Inc.  This does not plead actual knowledge.

Rather than allege any specifics as to the knowledge the TD Ameritrade Parties allegedly acquired, the Consolidated Complaint attempts to insinuate they had knowledge of something because the TD Ameritrade Parties decided not to acquire the

Plaintiffs' IRA accounts when TD Ameritrade Online purchased the stock of FTC. (Cons. Compl. ¶ 102). The attempted implication is that TD Ameritrade Online sought to exclude the accounts with Madoff because it knew that the Trust Companies were breaching their duties in connection with Plaintiffs' accounts. This implication itself is merely a speculative conclusion, not a well-pleaded fact. It represents little more than an attempt to posit that because the self-directed IRA accounts that invested with Madoff were part of the bulk of the IAS Business that was not included in the acquisition, that must mean that TD Ameritrade Online knew that FTC was breaching its duties to IRA account holders that invested with Madoff -- as opposed to meaning that there were business reasons that TD Ameritrade Online was not interested in acquiring such a business line   This is sheer speculation that does not meet the plausibility standard of *Iqbal* or *Twombly*.

Moreover, the publicly filed contract documents themselves negate this theory. They make clear that, far from being a Madoff-specific exclusion, the exclusion involved certain businesses, accounts, assets and liabilities, which were to be transferred from FTC prior to the sale to TD Ameritrade Online. (Siegel Dec., Ex. 20, TD Ameritrade Stock Purchase Agreement, §§ 3.1.5; 7.1, Definitions of "Customers," "Target Businesses," "Excluded Business," "AS Business," IRPS Business," "IAS Business" and "Acquired IAS Accounts"). Indeed, the contract documents make clear that the IAS business (with the exception of certain accounts that satisfied specified criteria) was not the only business that was not acquired by TD Ameritrade Online. FTC's balance forward business and daily valuation business were also excluded from FTC prior to the stock sale. (*Id.* § 7.1, Definition of "Excluded Business"). Thus, Plaintiffs' speculation

does not suggest any knowledge on the part of the TD Ameritrade Parties of any breach of duty by the Trust Companies with respect to the Plaintiffs' accounts.

The knowledge allegations against the Beriault Parties do not fare any better merely because it is alleged that Beriault was an executive involved in the operation of FTC. (Cons. Compl. ¶ 105 (a)). This allegation does not equate to pleading his awareness of any actual facts, as required to plead actual knowledge, and Plaintiffs plead no such awareness.

Indeed, having earlier suggested that TD Ameritrade Online must have had knowledge of some breach of duty by the Trust Companies based on the fact that TD Ameritrade Online did not acquire Plaintiffs' IRA accounts, Plaintiffs proceed on precisely the opposite premise with respect to Beriault and Beriault Inc., who are alleged to have had the same knowledge yet agreed to acquire such accounts. Plaintiffs' attempt to have it both ways on this issue reflects their inability to plead actual facts supporting knowledge.

In *Kirschner v. Bennett*, 648 F. Supp.2d 525, 544 (S.D.N.Y. 2009), a bankruptcy trustee brought claims on behalf of customers of Refco, a foreign exchange financial services company, including claims of breach of fiduciary duty for misappropriating assets. The plaintiff also brought an aiding and abetting breach of fiduciary duty claim against Refco's auditor, accounting firm and legal counsel (collectively, "professional defendants"). The plaintiff alleged that the professional defendants helped Refco obtain fraudulent loans in order to falsify the company's financial position, which furthered its ongoing fraud, including the misappropriation of customers' assets. The court, however, dismissed the aiding and abetting claim because the plaintiff failed to allege

facts showing that the professional defendants had actual knowledge of the misappropriation of the specific customer assets.  648 F. Supp. at 545-546.

Here, the Consolidated Complaint falls well short of this standard, since it does not even attempt to plead any facts that would show knowledge by the TD Ameritrade Parties or Beriault Parties of any breaches of fiduciary duty by the Trust Companies to the named Plaintiffs.

## B.    Plaintiffs Fail to Allege Substantial Assistance

The Consolidated Complaint is also devoid of allegations of substantial assistance necessary to support aiding and abetting claims.  At most, Plaintiffs here plead inaction by Movants.  Inaction, however, is no basis for finding substantial assistance as required to plead an aiding and abetting claim where, as here, Movants had no duty to act.

In *Liberty Savings Bank, FSB v. Webb Crane Serv., Inc.,* No. Civ. A03CV2218REBCBS, 2005 WL 1799300, at *3 (D. Colo. July 27, 2005), *aff'd mem.,* 2007 WL 1548994, at *4 (10th Cir. May 30, 2007), the District Court drew on the Second Circuit's opinion in *In re Sharp Int'l Corp.,* 403 F.3d 43, 50 (2d. Cir. 2005) to rule that substantial assistance is satisfied "only when 'the alleged aider and abettor affirmatively assists, helps conceal or fails to act *when required to do so,* thereby enabling the breach to occur.'"  It held that where one lender to a company pressured the borrower to increase its security and find other sources of funding to finish a project that would help repay the lender, even where the lender knew that the borrower was finishing the project by improperly using money borrowed from a second lender, "such actions by [the first lender] do not constitute substantial inducement or assistance.

Rather, they constitute actions by [the first lender] to ensure the payment of a legitimate debt...." *Liberty Savings,* 2005 WL 1799300 at *5.

As the *Sharp* court made plain: "[A] company in a position to thwart or expose a breach of fiduciary duty may protect its interest by doing neither, sitting tight and being quiet." 403 F.2d at 52. There, the lender was allegedly "in a position to blow the whistle" on borrowers' misconduct, but instead "arranged to extricate itself from the risk"; the court concluded that such "silence and forbearance did not assist the fraud *affirmatively*" and dismissed the complaint. *Id.* at 52-53 (emphasis in original).

The authority reflects long-standing tort principles concerning if and when there is a duty to aid: "An alleged tortfeasor has a duty to take affirmative action for another's aid or benefit only where there is a 'special relationship' between the actor and the injured party or the actor committed itself to the performance of an undertaking, gratuitously or by contract...." *Hamon Contractors, Inc. v. Carter & Burgess, Inc.*, Nos. 07CA0987, 07CA0988 and 07CA2342, 2009 WL 1152160, at *12 (Colo. Ct. App. June 11, 2009); *see, e.g., Lego v. Schmidt*, 805 P.2d 1119, 1122-23 (Colo. Ct. App. 1990).

Plaintiffs fail to allege the existence of any such "special relationship" with, or commitment by, any of the Non-Trust Company Defendants (with which the named Plaintiffs had no contractual or other relationship). Accordingly, the Non-Trust Company Defendants owed no duties to Plaintiffs. *See also Western Innovations, Inc. v. Sonitrol Corp.*, 187 P.3d 1155 (Colo. Ct. App. 2008) (distinguishing between "misfeasance" and "nonfeasance", and affirming dismissal of negligence claim against fire alarm monitoring company that had no contractual relationship with plaintiffs but rather contracted with a third party and at most engaged in nonfeasance).

Here, Plaintiffs plead no more than that Movants allegedly learned of breaches by the Trust Companies in conducting due diligence but did not "blow the whistle" by somehow disclosing such breaches to Plaintiffs -- with whom Movants had no relationship. As in *Liberty* and *Sharp*, this is not substantial assistance, and the claim must be dismissed.

This deficiency is particularly glaring in light of Plaintiffs' allegation that "upon receipt of the assets, the third party (Madoff) immediately commingled and took them." (Cons. Compl. ¶20). Thus the transfers alleged to have caused Plaintiffs' losses occurred years before TD Ameritrade Online or Beriault Inc. had any role in considering a possible purchase in 2007.

Plaintiffs attempt to support their claims against Beriault by pointing to his position as an executive of the FTC business and his continued service during a transition period. But that position does not give rise to any duty of disclosure. Plaintiffs refer generally to 26 CFR § 408.2, and make a conclusory statement that officers of trust companies have duties to ensure compliance with federal fiduciary requirements and that Beriault had failed to fulfill this obligation. But the Consolidated Complaint alleges no facts (well pleaded or otherwise) with respect to any act or omission by Beriault that would support this conclusion. Nor, even here, do Plaintiffs allege that 26 CFR § 408.2 created a fiduciary duty or any duty of disclosure to Plaintiffs on the part of Beriault personally or Beriault Inc. (Cons. Compl. ¶ 107).[14]

---

[14] To the extent that these allegations are intended to state a claim of breach of fiduciary duty under state or federal law against Beriault, there are no well-pleaded allegations that support such a claim against him or any other Defendant, and in addition there is no private right of action under IRC § 408 or Regulations thereunder. Indeed, the court in *Sirna v. Prudential Securities, Inc., et al.*, Nos. 95 CIV. 8422 (LAK), 95 CIV. 9016 (LAK), 96 CIV. 4534 (LAK), 1997

At its heart, then, the claim against Beriault and Beriault Inc. is based solely on the theory that they could have blown the whistle but did not -- the same kind of inaction held insufficient by courts in *Liberty* and *Sharp*.

Thus, because the Consolidated Complaint fails to plead knowledge on the part of the Non-Trust Company Defendants, and because it fails to plead substantial assistance on their part -- and either failure warrants dismissal -- the aiding and abetting claims must be dismissed.

## CONCLUSION

For all the reasons stated herein, Movants respectfully request that all claims against them be dismissed with prejudice pursuant to Federal Rule of Civil Procedure 12(b)(6).

---

WL 53194, at *2 (S.D.N.Y. Feb. 10, 1997) stated that it would be "frivolous" to contend there is a private right of action under § 408. *See* Omnibus Motion at pp. 26-29.

Dated:  January 11, 2010

SHERMAN & HOWARD L.L.C.

/s/ *Kenneth B. Siegel*
Kenneth B. Siegel, Esq.
Brian G. Eberle, Esq.
Tamir I. Goldstein, Esq.
633 Seventeenth Street, Suite 3000
Denver, CO  80202
Telephone:  (303) 297-2900
ksiegel@shermanhoward.com
beberle@shermanhoward.com
tgoldstein@shermanhoward.com

John Michael Clear
Darci Madden
BRYAN CAVE LLP
One Metropolitan Square - Suite 3600
211 North Broadway
St. Louis, MO 63102
Telephone:  (314) 259-2000

N. Louise Ellingsworth
Catesby Major
BRYAN CAVE LLP
1200 Main Street, Suite 3500
Kansas City, MO 64105
Telephone:  (816) 374-3200

Eric Rieder
BRYAN CAVE LLP
1290 Avenue of the Americas
New York, New York
Telephone:  (212) 541-2057

Attorneys for Defendants

## CERTIFICATE OF SERVICE

I hereby certify that on January 11, 2010, a true and correct copy of the foregoing was served via the Court's ECF system or was deposited in the United States Mail, postage prepaid, and addressed to:

Brian K. Matise, Esq.
David K. TeSelle, Esq.
BURG SIMPSON ELDREDGE HERSH &
JARDINE, P.C.
40 Inverness Drive East
Englewood, CO  80112

James S. Notis, Esq.
Kelly A. Noto, Esq.
Mark C. Gardy, Esq.
GARDY & NOTIS, LLP
440 Sylvan Avenue, #110
Englewood Cliffs, NJ  07632

Jacob H. Zamansky, Esq.
Edward H. Glenn, Jr., Esq.
ZAMANSKY & ASSOCIATES LLC
50 Broadway, 32nd Floor
New York, NY  10004

Thomas G. Shapiro, Esq.
Michelle H. Blauner, Esq.
Ian J. McLoughlin, Esq.
SHAPIRO HABER & URMY LLP
53 State Street
Boston, MA  02109

Steven N. Berk, Esq.
CHAVEZ & GERTLER LLP
1225 Fifteen Street, NW
Washington, D.C.  20005

Christopher Lovell, Esq.
LOVELL STEWART HALEBIAN LLP
61 Broadway, Suite 501
New York, NY  10006

Robert J. Dyer III, Esq.
Jeffrey A. Berens, Esq.
Kristin A. Martinez, Esq.
DYER & BERENS LLP
682 Grant Street
Denver, CO  80203-3507

Douglas R. Hirsch, Esq.
Charles Dufresne, Esq.
SADIS & GOLDBERG LLP
551 Fifth Avenue, 21st Floor
New York, NY  10176

*s/Donna Baros*

30