# EXHIBIT 2

# Self-Directed
# Individual Retirement Account
*Application*

Provided by


**RETIREMENT ACCOUNTS, INC.**

Retirement Accounts, Inc. (RAI)
717 17th Street, Suite 1700
Denver, Colorado 80202-3323
(303) 294-5959

Please direct mail to:
P.O. Box 173785
Denver, CO 80217-3785
1-800-325-4352
www.retirementaccountsinc.com

## Self-Directed Individual Retirement Account
## Instructions and Fee Schedule

### How To Open Your Self-Directed Traditional IRA

To establish your self-directed Traditional IRA, please complete the attached Self-Directed Traditional IRA Application. After completion, **detach the Application and make a copy for your records.** Keep your copy of the Application along with these Instructions, the Plan and Trust Agreement and the Disclosure Statement.

Mail the Application to RAI with the following:

- Your contribution and/or fee payment check made payable to "Retirement Accounts, Inc. FBO 'Your Name'";

- A completed IRA Transfer Form and a copy of your most recent statement from your prior custodian (only if transferring another IRA to RAI);

- A completed IRA Transfer/Rollover Form (only if making an eligible rollover contribution in cash).

Use this Application to establish a Traditional IRA. Please use RAI's Roth IRA Application to establish a Roth IRA.

### Information for All IRA Program Fee Schedules

- Establishment and Annual Administration Fees for the Simple Fee Schedule are payable in advance. Flexible Fee Schedule Administration Fees are billed and become payable semi-annually. Fees are not prorated upon establishment or termination.

- Transactions include, but are not limited to, those purchases and IRA distributions which RAI must execute. RAI does not levy additional charges for activity within a brokerage account.

- Termination Fees, if not included with a request to terminate or transfer, will be deducted from available Peak Money Market Account funds. If unavailable in cash, Termination Fees will be billed.

- Extra Services required by and/or of RAI and not covered herein may require special fees.

- Until paid, fees shall constitute a charge against and are payable from the IRA assets. Fees not received within 30 days of billing may be deducted from the account. In the absence of cash or money market shares within the account, RAI may liquidate any investment required to collect fees. RAI reserves the right to sell any past due receivables to a collection and credit reporting agency.

- The fee schedule may be changed by RAI with 30 days' written notice.

### April Deadline

Your signed Application must be received by RAI in Denver on or before your tax-filing due date, with no extensions (generally April 15th), to be eligible to receive contributions for that tax year. You may also transmit the completed and signed Application by telecopier ("fax") to (303) 294-5899 on your tax-filing due date only. If you transmit your Application by fax on your tax-filing due date, your original Application must then be received by RAI in Denver no later than the following business day.

However, your contribution check must still be postmarked to RAI on or before your tax-filing due date (no extensions).

### Account Owner Information

Please type or print clearly the information requested in the space provided. You, as the IRA "Account Owner," are referred to as the "Participant" throughout the IRA Plan and Trust Agreement.

# Self-Directed Individual Retirement Account
## Instructions and Fee Schedule *(continued)*

### Beneficiary Designation

If you die before your IRA balance has been fully distributed, your IRA will be distributed to your designated primary beneficiary(ies), or, if deceased, to your designated contingent beneficiary(ies). You may designate as many beneficiaries, contingently or successively, as you wish; use a separate sheet of paper if necessary. If your spouse is not your primary beneficiary and if the IRA includes or will include property in which your spouse possesses a community property interest, have your spouse complete and sign the Spousal Consent on the IRA Application. If you do not make a beneficiary designation, your IRA will be distributed according to the default provisions of the IRA Plan and Trust Agreement.

### Operationally Compatible Investment Policy

Basic guidelines for this policy are set by the IRS; other investment restrictions are set by RAI for administrative purposes. We reserve the right **not** to honor an Account Owner's investment authorization if adequate information has not been provided or if RAI cannot meet special administrative requirements of the investment. Please refer to the valuation reporting policy and special investment authorization forms for illiquid assets as defined herein. RAI does not recommend or comment on the investment merits or management of any operationally compatible investment identified herein.

### Peak Money Market Account

The Peak Money Market Account is an FDIC-insured money market savings account which pays a rate of interest that is adjusted periodically to market conditions. Funds in the Peak Money Market Account are invested in a portfolio of professionally-managed, well-diversified securities.

### Mutual Funds

Mutual fund purchases and liquidations will be processed upon RAI's receipt of the Account Owner's instructions.

### Publicly-Traded Securities

Publicly-traded securities with price quotes readily obtainable from a recognized Securities Exchange, the Nasdaq, or over-the-counter "pink sheets" may be purchased through the Account Owner's brokerage firm. The Account Owner agrees to notify RAI (or cause the Designated Representative to notify RAI), by telephone, before the trade date of any pending securities transaction and to request delivery of assets or cash to settle the trade. RAI must approve the use of its registration on a brokerage account prior to any trades being placed in that account.

### Dividend Reinvestment Programs

Dividend Reinvestment Programs (DRPs) of common stock will be purchased by RAI (generally, working with the issuing company/transfer agent) upon receipt of the written instructions from the Account Owner or the Account Owner's designated agent.

### Certificates of Deposit (Cds)

Certificates of deposit issued by commercial banks or savings and loans which are able to provide RAI with quarterly updates of accrued interest may be purchased upon receipt of written instructions from the Account Owner or Account Owner's designated agent. Upon maturity, RAI should receive written instructions as to how to proceed.

### Annuities

Fixed and variable annuities issued by commercial insurance companies will be purchased by RAI upon receipt of the completed "Investment Authorization" form and annuity application completed by the Account Owner or the Account Owner's designated agent. RAI should be named as owner and beneficiary, and the Account Owner should be named as the annuitant. **Federal excise tax must be paid when purchasing a Swiss Annuity. Please contact an RAI Customer Service Representative for proper procedures.** There is a $50 per year fee for holding and/or sales of Swiss Annuities.

### Real Estate Investment Trusts

Real estate investment trusts (REITs) must meet certain administrative requirements before they can be held in an RAI retirement plan. Any such requirement or information must be provided by the investment sponsor. RAI does not conduct due diligence and does not review or retain investment related information. Any required subscription or enrollment documents must be provided by the Account Owner along with an "Investment Authorization" form signed by the Account Owner or the Account Owner's designated agent. If and when the offering is publicly traded, RAI will require additional handling instructions from the Account Owner, the Account Owner's Designated Representative, or the investment sponsor.

### Limited Partnership Interests

Limited partnership interests must meet certain administrative requirements before they can be held in an RAI retirement plan. Any such requirement or information must be provided by the general partner. RAI does not conduct due diligence and does not review or retain investment related information. Any required subscription or enrollment documents must be provided by the Account Owner along with an "Investment Authorization" form signed by the Account Owner or the Account Owner's designated agent.

### Mortgage Notes

Account Owner must complete RAI's Mortgage Note Authorization Form before purchasing a trust deed. An independent third party servicing agent (not RAI) must be designated to service the deed and enforce default proceedings if necessary.

### Offshore Investments

Offshore investments must meet certain administrative requirements before they can be held in an RAI retirement plan and are limited to those that have been determined to be Operationally Compatible by RAI's Compliance Department. RAI does not

# Self-Directed Individual Retirement Account
## Instructions and Fee Schedule *(continued)*

conduct due diligence and does not review or retain investment related information. Any required subscription documents must be provided by the Account Owner along with an "Authorization Form for Offshore Investments" signed by the Account Owner or the Account Owner's designated agent.

### Private/Restricted Equity Investments and Debt Instruments

Private offerings must meet certain administrative requirements before they can be held in an RAI retirement plan. Any such requirement or information must be provided by the investment sponsor. RAI does not conduct due diligence and does not review or retain investment related information. Any required subscription or enrollment documents must be provided by the Account Owner along with an "Investment Authorization" form signed by the Account Owner or the Account Owner's designated agent. Debt instruments require an independent third party servicing agent (not RAI).

### Secondary Market Transactions

Illiquid assets may be bought/sold between "disinterested" parties provided Account Owners complete RAI's Secondary Market Investment Authorization Form. Applicable fees and further instructions are noted on the form.

### Viatical Investment Programs

Viatical Investment Programs are limited to those programs which have been determined to be Operationally Compatible investments by RAI's Investment Administration Analysts. If the program has not been reviewed for Operational Compatibility, the Account Owner must provide a copy of all applicable documents (agreements, disclosure statements, notes, security instruments and other documents) for review.

**The following investments may not be permitted within RAI's IRA plans:**
- Commodities and/or commodity futures contracts
- Short sales or positions
- Margin accounts and/or debit interest
- Real property, except as part of an investment listed herein
- Precious metals, stones, jewelry, art objects and other "collectibles" except as provided herein
- Foreign currencies and securities (unless traded ADR)
- Index options
- Life insurance
- General partnerships
- Joint ventures
- "S" corporation stock
- Private debt instrument without a Trust Indenture or Servicing Agreement
- Assets purchased on installment

### Designated Representative Information

If you are appointing a Designated Representative (D/R), he or she should help you complete this portion of the Application. Please indicate the D/R, if any, whom you are authorizing to execute transactions for your account according to the "Terms and Conditions of Appointment of Designated Representative."

Terms and Conditions of Appointment of Designated Representative:

By execution of the Adoption Agreement, the D/R has been appointed subject to the following terms and conditions:

1. The D/R is the authorized agent of the Account Owner and is not an agent of RAI.

2. The D/R is authorized to execute transactions for the plan and to direct RAI to execute transactions for the plan on behalf of the Account Owner. Such direction may include making or receiving payment pursuant to the D/R's investment directions or upon receipt of security transaction confirmations.

3. RAI shall be fully protected in relying on and acting on any notice, instruction, direction or approval received from the D/R, and RAI shall be under no duty to make any investigation or inquiry with respect to any notice, instruction, direction or approval received from the D/R.

4. The Account Owner may remove a D/R by written notice to RAI on the form provided by RAI; however, the removal of a D/R shall not have the effect of canceling any notice, instruction, direction or approval from that D/R received by RAI before RAI receives the written notice of the removal of the D/R.

5. The Account Owner may appoint a new D/R by written notice to RAI on the form provided by RAI; however, RAI shall not rely and/or act on any notice, instruction, direction or approval from the appointed D/R received by RAI before RAI receives the written notice of the appointment of the D/R.

6. RAI shall have no liability for any loss or diminution of the plan assets resulting from the changes in the market value of an asset; or resulting from reliance or action taken in reliance upon notice, instruction, direction or approval received from an Account Owner or the D/R; or by reason of any exercise or failure to exercise investment direction authority by an Account Owner or by the D/R; or by reason of RAI's refusal on advice of counsel to act in accordance with any exercise of investment direction by an Account Owner or the D/R; or by reason of any other act or failure to act by an Account Owner or by the appointed D/R; or by reason of any prohibited transaction or plan disqualification occurring as a result of any action taken or not taken by RAI in reliance on direction from an Account Owner or the D/R.

7. The Account Owner, by execution of this Appointment, waives and will hold RAI harmless from any and all claims including but not limited to damages, court costs, legal fees and costs of investigation arising as a result of changes in market value of

## Self-Directed Individual Retirement Account
### Instructions and Fee Schedule *(continued)*

any asset; resulting from reliance or action taken in reliance upon notice, instruction, direction or approval received from an Account Owner or the D/R; or by reason of any exercise or failure to exercise investment direction authority by an Account Owner or by the D/R; or by reason of RAI's refusal on advice of counsel to act in accordance with any exercise of investment direction by an Account Owner or the D/R; or by reason of any other act or failure to act by an Account Owner or by the D/R; or by reason of any prohibited transaction or plan disqualification occurring as a result of any action taken or not taken by RAI in reliance on direction from an Account Owner or the D/R.

8. RAI shall reflect the name and business address of the Account Owner's appointed D/R (if any) on each quarterly account statement and shall assume the D/R information reflected on the account statement is accurate unless the reason of RAI's refusal on advice of counsel to act in accordance with any exercise of investment direction by an Account Owner or the D/R; or by reason of any other act or failure to act by an Account Owner or by the D/R; or by reason of any prohibited transaction or plan disqualification occurring as a result of any action taken or not taken by RAI in reliance on direction from an Account Owner or the D/R.

### Trade Authorization by Phone (TAP)

By checking the "yes" box on the IRA Application, you authorize RAI to honor transaction requests in your retirement account that are placed by telephone. When requesting a transaction by telephone, RAI must be provided with your Social Security number for identification purposes and you agree that RAI is not responsible for determining whether or not a caller is authorized, other than verifying that such caller has provided your Social Security number as reflected in RAI's records. It is important to keep your RAI account number and your Social Security number confidential so that unauthorized transaction requests cannot be made in your account by telephone. You further agree that RAI is not responsible for unauthorized transactions in your account that were placed by telephone.

Transaction requests may include the purchase, liquidation or exchange of mutual funds. All transaction requests on non-mutual fund assets must be submitted on an RAI Investment Authorization form and must be signed by the Account Owner.

RAI reserves the right not to honor transaction requests by telephone if you do not have Trade Authorization by Phone (TAP) on file with RAI, if there are insufficient funds or shares in the account, or if RAI receives incomplete information to process the requested transaction.

### Recorded Phone Lines

RAI has installed automatic telephone recording equipment on certain telephone lines. By signing the IRA Application, you give RAI consent to record and play back such calls.

### Valuation Reporting Policy

Each account statement you receive reflects the reported value of your assets, all transactions that have taken place and all fees (if any) that have been charged against your account. RAI reports the value of account assets as accurately as possible using the resources available to it. The values listed on your RAI account statement may differ from the values listed on your brokerage account or other investment sponsor statements.

Individual values for securities that have publicly-quoted prices are reported based solely on such quoted prices, which are obtained from a quotation service or other source generally available to the public. RAI does not guarantee the accuracy of prices obtained from quotation services, nor the length of availability of such prices.

Values for illiquid assets are generally reported at their original offering price to investors. RAI classifies illiquid assets into two types: Illiquid equity investments and illiquid debt investments. Investments that RAI has classified as illiquid equities include, but are not limited to, Non Service Priced Limited Partnerships, Private Common and Preferred Stocks, and Private Real Estate Investment Trusts. On an annual basis (or more frequently, if requested), RAI requests updated valuation information from such persons as general partners of limited partnerships, officers of private corporations and sponsors of other assets it has classified as illiquid equity investments. RAI will normally adjust the reported value of an illiquid equity investment if the general partner, officer or sponsor provides RAI with an updated value. If, two years from April 1, 1999 or the date the illiquid asset first becomes administratively feasible for RAI (whichever is later), RAI has not received an updated value from the asset sponsor, it will begin reporting the value as "N/A" or "Not Available." RAI does not request updated valuation information for assets it classifies as illiquid debt investments. RAI will normally adjust the reported value of an illiquid debt investment, however, if it receives updated valuation information from the investment sponsor. Investments that RAI has classified as illiquid debt include, but are not limited to, Mortgage Notes, Limited Partnership Notes, and other Private Debt Offerings. Information regarding whether an illiquid asset has been classified as equity or debt is available upon request. A "Pricing Source" code may appear on the front of your account statement indicating the source of the price(s) being reported for illiquid assets.

RAI does not conduct appraisals of investments and it does not seek to verify any values provided to it. The reported value of any asset may differ materially from its actual value. RAI does not guarantee the accuracy of reported values, or whether you will be able to obtain the value indicated on your account statement in the event of a sale. The account statement (and the reported values therein) should not be used as a basis for making, retaining or disposing of an investment. Please contact your D/R with additional questions.

Values reported as N/A indicate that updated valuation information was not available at the time of reporting, or that the asset had no value.

## Self-Directed Individual Retirement Account
### Instructions and Fee Schedule (continued)

### Statement Review Period

Please review the activity and balances on your RAI account statement for accuracy. You must report any discrepancies to RAI in writing within 60 days of the date of the account statement. If we do not receive your written exceptions or objections within the stated period, RAI shall be relieved of all liability for the report, act or procedure.

### Arbitration Statement

The Account Owner hereby agrees that all claims and disputes of every type and matter which may arise between the Account Owner and Retirement Accounts, Inc. shall be submitted to binding arbitration pursuant to the Commercial Arbitration rules of the American Arbitration Association, that such arbitration proceedings and hearings shall take place only in Denver, Colorado; and that, to the extent not preempted by federal law, Colorado statutory law (including without limitation the statutes governing the award of damages in arbitration) and Colorado common law shall control during arbitration. The Account Owner expressly waives any right he/she may have to institute or conduct litigation or arbitration in any other forum or location, or before any other body, whether individually, representatively or in another capacity. Arbitration is final and binding on the parties. An award rendered by the arbitrators may be entered in any court having jurisdiction over the parties. Under the rules of the American Arbitration Association, there may be no right to prearbitration discovery, including depositions or written questions and document production. The arbitrator's award is not required to include factual findings or legal reasoning, and any party's right to appeal or seek modification of rulings by the arbitrator(s) is strictly limited.

## Fee Schedule By IRA Program/Billing Tier

| | SIMPLE FEE SCHEDULE | FLEXIBLE FEE SCHEDULE |
|---|---|---|
| Establishment | $25 | $50 |
| Annual Administration | $58 | .4% of Asset Value (Minimum $75 - Maximum $2,000) |
| Transactions | 8 Free Per Year ($10 for Each Additional) | 8 Free Per Year ($10 for Each Additional) |
| Safekeeping | None | $10 Per Asset |
| Swiss Annuity Safekeeping and/or Sale | $50 | $50 |
| Transfer/Termination | | |
| Partial | $50 | $50 |
| Complete | $100 | $150 (Plus Admin. & Transaction Fees) |
| Program Conversion | N/A (For upgrade to Flexible) | $15 (For downgrade to Simple) |
| Returned Checks | $20 | $20 |
| Wire Fee | $35 | $35 |
| Overnight Fee (International or special delivery may be higher) | $10 - $35 | $10 - $35 |
| Eligible Third-Party Financial Service & Investment Types (Only if Operationally Compatible.) | • Annuities<br>• Brokerage Cash Trading Accounts<br>• Certificates of Deposit<br>• Dividend Reinvestment Programs<br>• Life Settlement Contracts<br>• Money Market Accounts<br>• Mutual Funds<br>• Public Offering Limited Partnerships<br>• Private Offering Limited Partnerships<br>• Real Estate Investment Trusts<br>• Savings Accounts<br>• Unit Trusts<br>• Viatical Investment Programs | • Mortgage Notes<br>• Simple IRA eligible investment types may also be held in the Flexible IRA.<br>*(RAI reserves the right to place select investments that present extraordinary administrative requirements under the Flexible IRA fee schedule.)* |

# Self-Directed Individual Retirement Account
## Instructions and Fee Schedule *(continued)*

### Privacy Policy

Retirement Accounts, Inc. ("RAI") recognizes that its customers have an expectation that RAI and its affiliates will maintain the confidentiality of customers' nonpublic personal information. As a result, RAI has adopted this Privacy Policy concerning information that you provide and information that is obtained in servicing your account.

Information about you is collected for purposes of administering your account or accounts with us. We collect information about you for specific business purposes and not for resale or transfer to unaffiliated parties. The information we collect, the source of the information and the purposes it is used for are explained below. If you close your account or it becomes inactive, RAI will adhere to the privacy policies and practices described in this notice.

### Information Collected

Nonpublic personal information is collected and retained by RAI for purposes of administering your account. It is not furnished to third parties for any purpose other than to administer the account. The information we collect can be summarized as follows:

1. *Account Establishment Information.* This is information furnished by you on forms creating your account with RAI and its affiliated companies. Examples are your name and address, Social Security number and beneficiary designations (if applicable).

2. *Account Transaction Information.* This includes information obtained from you and the various entities that comprise the assets in your account. It includes correspondence and phone contacts with us concerning the account, account assets, and our services. If the account was transferred from another financial institution, it may contain records from that institution.

### Nonpublic Information That Is Disclosed

All information in your account may be disclosed to any person or entity you have authorized pursuant to your account establishment documents. In addition, information may be disclosed to affiliated or nonaffiliated third parties to further your goals in establishing an account with RAI. Categories of information that are disclosed are as follows:

1. *Identifying Information.* Examples of this information include your name, address and Social Security or tax identification number.

2. *Transaction Information.* Examples include your directives to purchase or sell an asset in your account and the receipt of income to the account or distributions from the account.

### Parties To Whom We May Disclose Nonpublic Information

RAI may disclose both identification and transaction information to affiliated and nonaffiliated parties for the following reasons:

1. *Financial Services Providers.* Examples are brokers, transfer agents, mutual fund companies or other representatives of the seller or purchaser of the asset or a firm that provides valuations for securities.

2. *Non-financial Companies.* Examples are companies that mail reports and prospectuses to you, statement printers and tax form providers.

RAI does not disclose nonpublic personal information about our clients to any party, except as permitted by law.

### How RAI Protects the Confidentiality of Your Nonpublic Personal Information

RAI and its affiliates value the trust you place in us. To maintain that trust, we have put into place safeguards to protect the privacy of your nonpublic personal information. We do not sell or trade your information with nonaffiliated companies. When information is provided to third party providers to service the account, safeguards are in place to make certain that the information is used only for the purpose it is provided.

Internally, RAI maintains its records on secured computers. Prospective employees are screened for criminal convictions and drug use. Once hired, employees are advised of RAI privacy policies and of the confidential nature of the information they handle. Employees are limited to accessing only that customer information that is necessary to perform their job functions.

### Have You . . .

☐ Read the Instructions?

☐ Supplied all of the information requested on the Application and signed it?

☐ Made a copy of your completed Application for your records? Remember to keep the Instructions, your copy of the Application and the Plan and Trust and Disclosure Statement for your records.



**RETIREMENT ACCOUNTS, INC.**

Retirement Accounts, Inc.
717 17th Street, Suite 1700
Denver, Colorado 80202-3323
1-800-325-4352

Please direct mail to:
P.O. Box 173785
Denver, CO 80217-3785

# Self-Directed Individual Retirement Account Application
Adoption Agreement

## Establishment and Appointment

I, the undersigned Account Owner, hereby establish a Traditional Individual Retirement Account ("IRA") under the Retirement Accounts, Inc. ("RAI") IRA Plan and Trust Agreement which is incorporated within this Adoption Agreement by this reference. I designate Retirement Accounts, Inc. as Trustee of this IRA and make the following declarations.

### Account Owner Information *(please type or print)*

Full Name

Mailing Address

City/State/Zip

Home Telephone   (     )

Business Telephone  (     )

Social Security Number

Birth Date

### Your Beneficiary Designation

I designate the following persons as primary and contingent beneficiaries to receive my interest in this Traditional IRA according to the terms of the IRA Plan and Trust Agreement, hereby revoking any such prior designations made by me. *(Attach additional sheets if necessary and indicate % for each beneficiary.)*

**1. Primary Beneficiary**

Full Name

Mailing Address

City/State/Zip

Birth Date

Social Security Number

Relationship

Share %

### Consent of Spouse for Community Property Assets

The following must be completed only:

1. If the Account Owner is married and has designated any Primary Beneficiary other than his/her spouse; and

2. If the Account Owner's IRA includes or will include property in which his/her spouse possesses a community property interest or other type of property interest. (As of this printing the community property states are Arizona, California, Idaho, Louisiana, Nevada, New Mexico, Texas, Washington and Wisconsin.)

I, the undersigned spouse of the Account Owner named above, hereby consent to and accept the beneficiary designation, without regard to whether I survive or predecease my spouse.

Signature of Spouse
X

Date

**2. Contingent Beneficiary** *(in case of death of primary beneficiary)*

Full Name

Mailing Address

City/State/Zip

Birth Date

Social Security Number

Relationship

Share %

### Designated Representative Information

The following person is hereby appointed as my Designated Representative (D/R) for this Plan subject to the provisions contained in any applicable sections of the Instructions for the Traditional IRA Application.

D/R's Name

Firm Name

Firm Address

City/State/Zip

# Self-Directed Individual Retirement Account
## Application *(continued)*

D/R's Phone Number (     )

Broker/Dealer

Broker/Dealer's Address

City/State/Zip

### IRA Program Fee Schedule Selection

❏ Simple Fee Schedule

❏ Flexible Fee Schedule

**Are you establishing an IRA-SEP?**  ❏ Yes  ❏ No

### Cash Investment

I direct RAI to automatically deposit all contributions, rollovers, transfers, earnings and other cash into the FDIC-insured Peak Money Market Account. I understand that my cash is available whenever needed for other investments or withdrawals.

### Trade Authorization by Phone (TAP)

I have read the Trade Authorization by Phone (TAP) section of the Instructions to the Traditional IRA Application, and I direct RAI to honor transaction requests made by telephone, on behalf of my account, in accordance with that Authorization.

❏ Yes  ❏ No

*(If left blank, telephone trading requests will be accepted.)*

### Check Enclosure Summary
### (Contribution Description)

| | |
|---|---|
| IRA Contribution for 20____ | $ |
| IRA Contribution for 20____ | $ |
| Employer SEP Contribution for 20____ | $ |
| Employer SEP Contribution for 20____ | $ |
| Cash Rollover Contribution | $ |
| Establishment Fee* ($25 Simple, $50 Flexible) | $ |
| Annual Administration Fee (Simple*: $58; Flexible: .4% of asset value billed biannually) | $ |
| Total Enclosed *(Make checks payable to Retirement Accounts, Inc.)* | $ |

*(\*) These fees must be paid at the time of application.*

### Your Acknowledgement and Signature

I, the undersigned, hereby acknowledge that I have read and understand all of the terms and conditions of the Instructions and Fee Schedule, Self-Directed Traditional IRA Application/Adoption Agreement, IRA Plan and Trust Agreement and IRA Disclosure Statement (collectively, "Plan Documents") and that I have retained the Plan Documents including a copy of this completed Adoption Agreement. I further acknowledge that I understand and agree to the Arbitration Statement and the Trustee's IRA Fee Schedule that are part of the Plan Documents and consent to have my conversations with RAI recorded.

Account Owner's Signature
**X**

Date

Please make a copy of this Application for your records.

---

Retirement Accounts, Inc. hereby accepts appointment as Trustee of this IRA.

Retirement Accounts, Inc. By:

Account Number *[To be completed by Trustee.]*

TAP  ❏ Yes  ❏ No

---

# IRA Plan And Trust Agreement



**RETIREMENT ACCOUNTS, INC.**

Retirement Accounts, Inc.
717 17th Street, Suite 1700
Denver, Colorado 80202-3323
303-294-5959

## Article I - Establishment of Trust

This plan and trust is created for the exclusive benefit of the Participant who adopts the plan and his beneficiaries. No person shall have any beneficial interest in the Participant's Account except the Participant, or in the case of the Participant's death, his Beneficiary. This plan is intended to qualify under Code Section 408(a) as an individual retirement account. Retirement Accounts, Inc. is Sponsor of this Retirement Accounts, Inc. Individual Retirement Account Prototype Plan and Trust, under which it will act as Trustee. By its acceptance of the Adoption Agreement, Retirement Accounts, Inc. agrees to perform the obligations imposed upon the Trustee under the Plan.

## Article II - Definitions

The following words and phrases, when used herein, shall have the following meanings, unless a different meaning is required by the context:

2.1 **Account** means the account which the Trustee shall maintain for the Participant under the Plan.

2.2 **Beneficiary** means a person designated in writing by a Participant or by the Plan, who is or who may become entitled to receive benefits under the Plan. See Article VI.

2.3 **Code** means the Internal Revenue Code of 1986, as amended.

2.4 **Compensation** means wages, salaries, professional fees, or other amounts derived from or received for personal services actually rendered (including, but not limited to, commissions paid a salesman, compensation for services on the basis of a percentage of profits, commissions on insurance premiums, tips and bonuses) and includes earned income, as defined in Code Section 401(c)(2) (reduced by the deduction the self-employed individual takes for contributions made to a self-employed retirement plan). For purposes of this definition, Section 401(c)(2) shall be applied as if the term trade or business for purposes of Section 1402 included service described in subsection (c)(6). Compensation also shall include any amount includible in the Participant's gross income under Code Section 71 with respect to a divorce or separation instrument described in Code Section 71(b)(2)(A). Compensation does not include amounts derived from or received as earnings or profits from property (including, but not limited to, interest and dividends), amounts not includible in gross income or amounts received as a pension or annuity or as deferred compensation.

2.5 **Participant** means the individual who executes an Adoption Agreement to this Plan and who makes a deductible or nondeductible contribution (a regular IRA contribution), or on whose behalf contributions are made, as permitted by Code Section 219 to the Trust or who makes a Qualifying Rollover Contribution to the Trust.

2.6 **Plan** means the individual retirement account established by the Participant, subject to acceptance by the Trustee, in the form of this Plan and Trust Agreement (and all subsequent amendments), including the Adoption Agreement under which the Participant has elected to participate in this Plan.

2.7 **Qualifying Rollover Contribution** means a distribution amount which the Participant is permitted to roll over to the Plan under Code Section 402(c), 403(a)(4), 403(b)(8), or 408(d)(3).

2.8 **Sponsor** means First Trust Corporation doing business as Retirement Accounts, Inc.

2.9 **Trust** means all property of every kind held or acquired by the Trustee under this Plan.

2.10 **Trustee** means Retirement Accounts, Inc.

2.11 Throughout this plan and trust the masculine gender shall include the feminine, and the singular shall include the plural, as the context requires.

## Article III - Plan Contributions

3.1 **General**
The Participant assumes full responsibility for determining that amounts contributed to his Account do not exceed the allowable contribution limits under law. Except for Qualifying Rollover Contributions, all contributions must be made in cash. The Participant's Beneficiary may not make any type of contribution to the Trust, or have any contribution made on his behalf.

3.2 **Individual Contributions**

(a) The total of a Participant's contributions to his Account shall not exceed $2,000 for any taxable year unless the contribution is a Qualifying Rollover Contribution or a SEP contribution as described in Section 3.3 below.

(b) The Trustee may accept a Qualifying Rollover Contribution on behalf of the Participant provided that the Participant acknowledges in writing, in a form acceptable to the Trustee, that the assets, as contributed, satisfy the definition of a Qualifying Rollover Contribution. Any noncash rollover assets are subject to review and acceptance by the Trustee.

3.3 **Employer Contributions**
In accordance with the applicable deduction limitations of the Code, in the case of a Simplified Employee Pension Plan (SEP) as defined in Code Section 408(k), the Participant's employer shall not make any contribution to the Account on behalf of a Participant which for the taxable year exceeds the lesser of $30,000 (or, if greater, one-fourth of the defined benefit dollar limitation under Code Section 415(b)(1)(A)) or 15% of such Participant's Compensation.

## Article IV - Participants' Accounts

The Trustee shall establish and maintain a separate Account in the name of the Participant and credit the Participant's contributions to that Account. If a Participant wishes to make any combination of regular IRA contributions, SEP contributions, and Qualifying Rollover Contributions, the Trustee shall accept each type of contribution for deposit into the same Account for the Participant unless the Participant directs the Trustee, by signing an additional Adoption Agreement, to maintain a separate Plan in the Participant's name for a specific type(s) of contribution(s). The interest of any Participant in the balance of his Account is at all times 100% nonforfeitable. Such balance, however, shall be subject to the fees and expenses of the Trustee. Neither a Participant nor a Beneficiary shall assign or alienate any benefit provided under the Plan, and the Trustee shall not recognize any such assignment or alienation.

## Article V - Distribution of Account

5.1 **Participant's Right To Withdraw**
A Participant shall have the right to withdraw all or any part of his Account at any time upon written notice to the Trustee using a form acceptable to the Trustee. The Trustee shall make distributions under the Plan in cash or property, at fair market value as reflected by the Trustee.

5.2 **Required Distribution - Before Death**

(a) Participant's entire Account must be distributed or distribution must commence on or before the Required Beginning Date. The Required Beginning Date is the April 1 of the calendar year immediately following the calendar year in which the Participant attains age 70½. Not later than the Required Beginning Date, the Participant, in such form and at such time as may be acceptable to the Trustee, may elect to have the balance in his Account distributed in:

(1) A single sum payment; or

(2) Periodic payments over a fixed time not extending beyond the life expectancy of the Participant or the joint life and last survivor expectancy of the Participant and his designated Beneficiary.

(b) If no such election is made by the Participant by the Required Beginning Date, when payment of the Account does begin an election shall be deemed to have been made by the Participant for periodic payments over a fixed time equal to the single life expectancy of the Participant. Notwithstanding the above, if the Participant informs the Trustee in writing on a form acceptable to the Trustee that distribution to such Participant under this Section for any calendar year is to equal an amount less than is payable under an election or deemed election, if applicable, the Trustee shall comply with the Participant's request. The Participant shall be responsible for computing the amount and form of the distribution required to be paid to him each year from his Account, for determining the date by which the amount should be paid, and for timely providing this information to the Trustee in writing in a form acceptable to the Trustee.

**IRA Plan And Trust Agreement** *(continued)*

(c) Even though distribution of the Account may have commenced pursuant to one of the above options, the Participant may receive a distribution of all or any portion of the balance in his or her Account upon written notice in a form acceptable to the Trustee. Distributions under this section are considered to have begun if the distributions are made on account of the Participant reaching his or her Required Beginning Date. If the Participant receives distributions prior to the Required Beginning Date and the Participant dies prior to the Required Beginning Date, distributions will not be considered to have begun.

5.3 **Distribution Upon Death**

(a) If the Participant dies on or after the Required Beginning Date, the remaining portion of the Participant's Account shall be distributed to the Participant's Beneficiary at least as rapidly as under the method of distribution used prior to the Participant's death.

(b) If the Participant dies before the Required Beginning Date, the Beneficiary, in such form and at such time as may be acceptable to the Trustee, may elect that the entire remainder of the Participant's Account be paid in accordance with the following provisions:

(1) The entire Account balance will be distributed no later than December 31st of the year containing the fifth anniversary of the Participant's death.

(2) If the Account balance is payable to a designated nonspouse Beneficiary, in accordance with the written election of such Beneficiary received by the Trustee no later than December 31 of the year following the date of the Participant's death, the Account balance will be distributed in substantially equal installments over the life expectancy of the designated Beneficiary commencing no later than the December 31st of the calendar year immediately following the calendar year in which the Participant's death occurred. The designated Beneficiary may elect at any time to increase the frequency or the amount of such payments.

(3) If the Participant's surviving spouse is the only designated Beneficiary in pay status at the time this election is made, the spouse may elect to receive substantially equal payments over the life expectancy of such spouse commencing at any date prior to the later of (i) December 31 of the calendar year following the calendar year in which the Participant died or (ii) December 31 of the calendar year in which the Participant would have attained age 70½. Such election must be made by the earlier of (i) the date payments are required to commence above, or (ii) December 31 of the calendar year which contains the fifth anniversary of the date of death of the Participant. The surviving spouse shall not be entitled to make the election under this paragraph (3) if the Participant dies on or after the Required Beginning Date. The surviving spouse may elect at any time to increase the frequency or the amount of such payments. For purposes of this Section 5.3(b)(3), the Trustee will treat any amount(s) paid to a Participant's child in accordance with a Participant's or surviving spouse's election as if it had been paid to the surviving spouse if the remaining Account balance becomes payable to the surviving spouse when the child reaches the age of majority.

(4) If the Participant's surviving spouse is the designated Beneficiary, the spouse may not elect to treat the Account as his own IRA. Such surviving spouse may not make a regular or SEP IRA contribution to the Account nor may he make a Qualifying Rollover Contribution to the Account. A surviving spouse Beneficiary may take distribution of the Account and, if eligible, roll it over into his own IRA.

(c) If the Beneficiary fails to timely make an election under subsection (b) above, when payment of the Account to the Beneficiary does begin the Trustee may assume that an election was deemed to be made by a spouse Beneficiary for payment under Section 5.3(b)(3) above and for a nonspouse Beneficiary, the election will be deemed to be payment under Section 5.3(b)(1) above. Notwithstanding the above, if the Beneficiary informs the Trustee in writing on a form acceptable to the Trustee that distribution to such Beneficiary under this Section for any calendar year is equal to an amount less than the minimum required above, the Trustee shall comply with the Beneficiary's request. The Beneficiary shall be responsible for computing the amount and form of the distribution required to be paid to him each year from the Plan, the date by which the amount should be paid, and for timely providing this information to the Trustee in writing in a form acceptable to the Trustee.

5.4 **Calculation of Life Expectancy**

For purposes of the calculation of life expectancy under this Article V, the Trustee will use the expected return multiples specified in Tables V and VI of Treas. Reg. Section 1.72-9. The Trustee, upon the Participant's or the surviving spouse's written consent on or before the time of the first distribution, may recalculate annually the life expectancy of the Participant or of the Participant's surviving spouse. In the case of any other designated Beneficiary, or if the Participant or his surviving spouse does not make a written request for recalculation of life expectancy, the Trustee shall calculate life expectancy at the time payments first commence and shall base payments for any 12-consecutive month period on the calculated life expectancy minus the number of whole years passed since the calendar year payments first commenced.

5.5 **Transfer of Assets To and From This Plan** The Trustee is authorized to receive and add to the Trust the assets of another IRA or an IRA annuity (described in Code Section 408) that are transferred to this plan and which the Participant has determined are eligible for such transfer. The Participant may direct the Trustee in writing to transfer all or any portion of the Participant's Account to another individual retirement account established by or on behalf of the Participant provided that the trustee of that plan has provided written acceptance of such assets.

5.6 **Transfer of Account Because of Divorce** Notwithstanding Article IV, in the event the Participant and the Participant's spouse obtain a separation instrument, a final decree of divorce, or dissolution of their marriage, the Participant may direct the Trustee in writing to transfer the appropriate portion of the assets in the Participant's Account to the Participant's former spouse's IRA, provided the transfer is in accordance with the final decree of divorce or in accordance with a written instrument incident to the divorce, separation, or the dissolution of marriage.

5.7 **Minimum Distribution - General Rules**

(a) Notwithstanding any provisions of the IRA Plan and Trust to the contrary, the distribution of a Participant's Account shall be made in accordance with the minimum distribution requirements of Code Section 401(a)(9) and the applicable Treasury regulations, all of which are herein incorporated by reference. The amount to be distributed each year, beginning with the first calendar year for which distributions are required and then for each succeeding calendar year, shall not be less than the quotient obtained by dividing the individual's benefit by the lesser of (1) the applicable life expectancy or (2) if the individual's spouse is not the designated beneficiary, the applicable divisor determined from the table set forth in Q&A-4 or Q&A-5, as applicable, of Section 1.401(a)(9)-2 of the Proposed Income Tax Regulations. Distributions after the death of the individual shall be distributed using the applicable life expectancy as the relevant divisor without regard to proposed regulations Section 1.401 (a)(9)-2.

(b) A Participant/Beneficiary may satisfy the minimum distribution requirements by receiving a distribution from one IRA that is equal to the amount required to satisfy the minimum distribution requirements for two or more IRAs. For this purpose, the owner of two or more IRAs may use the "alternative method" described in IRS Notice 88-38 to satisfy the minimum distribution requirements described above.

## Article VI - Participant Administrative Provisions

6.1 **Beneficiary Designation**

The Participant may from time to time designate, in writing, any person (including a trust) or persons, contingently or successively, to whom the Trustee shall pay his Account on event of his death. The Trustee shall prescribe the form for the written designation of Beneficiary and, upon receipt of the form by the Trustee, it shall become effective on that date and shall revoke all designations filed prior to that date by the Participant. The Beneficiary designation form on file with the Trustee as of the date of distribution shall be considered the effective designation. A designated Beneficiary shall not have the right to designate a Beneficiary or Beneficiaries to receive the balance, if any, of the Participant's Account upon the death of such designated Beneficiary. Upon the death of the last Primary Beneficiary, the Contingent Beneficiary named by the Participant shall become entitled to any remaining death benefits under this plan regardless of whether the Primary Beneficiary survived the Participant and regardless of whether death benefit payments had commenced to the Primary Beneficiary. If more than one Beneficiary has been named in either the Primary or Contingent class of Beneficiary, then any death benefits payable to such class shall be paid pro rata to Beneficiaries within the class unless the Participant specified otherwise at the time such Beneficiaries were named. Upon the death of one or more designated Beneficiaries within a class, the Beneficiaries of that class living at the time of distribution shall share pro rata any death benefits payable to such class, unless the Participant specified otherwise.

6.2 **No Beneficiary Designation**

If a Participant fails to designate a Beneficiary in accordance with this Article VI, or if all designated Beneficiaries die before the complete distribution of the Participant's Account, then upon the date of the death of the last to die of the Participant and all designated Beneficiaries, the Participant's beneficiary shall be deemed to be his spouse (if legally married to the Participant on the date of death and if living on the date of distribution), or, if no such spouse, the estate of the last to die of the Participant and the designated Beneficiaries.

**IRA Plan And Trust Agreement** *(continued)*

### 6.3 Participant Information
The Participant, or if the Participant is deceased, the Beneficiary, shall furnish the Trustee whatever information is necessary for the Trustee to prepare any report required under Code Section 408(i) and the Treasury Regulations issued under that Code Section. The Trustee may assume the truth of any statement made by the Participant/Beneficiary under the provisions of the Adoption Agreement. The Trustee shall be under no duty of inquiry with respect to any statement made by the Participant/Beneficiary and shall have no liability with respect to any action taken in reliance upon any such statement. Any notice from the Trustee to any person provided for in this Plan shall be effective if sent by first class mail to such person at the person's last known address.

## Article VII - Investment of Trust/ Participant and Trustee Powers

### 7.1 Investment Responsibility
Subject to Section 7.2, the Participant has the sole authority and discretion, fully and completely, to select and to direct the investment of all assets in his Account. The Participant accepts full and sole responsibility for the success or failure of any selection made. Upon the death of the Participant, the Beneficiary assumes all rights, responsibilities, and liabilities for investment of the Account. Throughout this Article VII, whenever "Participant" is used, "Beneficiary" shall be substituted, as appropriate, if the Participant has died.

### 7.2 Appointment of Agent
By notifying the Trustee on a form acceptable to the Trustee, the Participant, and after the Participant's death, the Beneficiary, may delegate the investment responsibility for all or any portion of the Participant's Account to an authorized agent, provided that the assets managed by such agent are held within the United States. The Trustee shall assume that the appointed agent is at all times qualified to act in that capacity. The Trustee shall further assume the agent possesses the authority to direct the investment and/or to manage the trading of the Trust until such time as the Participant notifies the Trustee in writing that he has appointed another agent or that the Participant has assumed responsibility for directing invest- ment of the Trust.

### 7.3 Trustee and Sponsor Limitation on Liability
Neither the Trustee nor the Sponsor shall be liable for the acts or omissions of the Participant or his agent. The Trustee and/or Sponsor shall not have any responsibility nor any liability for any loss of income or of capital, nor for any unusual expense which the Trustee may incur, relating to any investment, or to the sale or exchange of any asset which the Participant or his authorized agent directs the Trustee to make. Neither the Trustee nor the Sponsor will act as an investment advisor to a Participant and shall not have any duty to question the Participant's or his authorized agent's directions regarding the purchase, retention, or sale of any asset. Neither the Trustee nor the Sponsor shall incur any liability by reason of any action taken or not taken by the Participant or his authorized agent resulting from Retirement Accounts, Inc. transmitting or not transmitting to the Participant or his authorized agent any information of any kind and from wherever derived concerning the authorized agent or concerning any investment. The Trustee does not assume or incur any liability by reason of, or have any duty or responsibility to inquire into, or take action with respect to, any acts performed or omitted to be performed by the former trustee of any Plan which has transferred all or any portion of its assets to Retirement Accounts, Inc.

### 7.4 Trustee's Interim Responsibility
The Participant or the Participant's authorized agent shall direct the Trustee with regard to the investment of any cash in the Account. In the event such instructions are not received by the Trustee, the Participant shall be deemed to have directed the Trustee to invest such cash in the cash investment option elected by the Trustee, which may include a savings instrument of the Trustee.

### 7.5 Trustee's Right Not to Follow Investment Directions
The Trustee shall not follow a direction to invest the Trust in life insurance contracts, nor in collectibles (within the meaning of Code Section 408(m)) if the investment would result in a taxable distribution to the Participant. In addition, margin transactions and writing uncovered calls or puts are not permitted. Certain investments or classes of investments may pose administrative burdens to the Plan or Trustee, and therefore, the Trustee also reserves the right not to process or accept such investments. The decision not to act on investment directions that the Trustee deems unacceptable for administrative reasons should in no way be construed as a determination concerning the prudence or advisability of investing in the asset.

### 7.6 Investment of Trust
The Trustee, as trustee of the Trust assets entrusted to it under the Plan, shall not commingle the Trust with any other property it holds except in a common trust fund or common investment fund. Subject to the rules imposed by the Trustee, and subject to investment directions given by the Participant or the Participant's authorized agent, the Trustee is authorized and empowered, but not by way of limitation, with the following powers, rights and duties:

(a) To hold or invest any part or all of the Trust in any asset permissible under law as an investment for an individual retirement account;

(b) To manage, sell, contract to sell, grant options to purchase, convey, petition, divide, subdivide, exchange, transfer, abandon, improve, repair, insure, lease for any term even though commencing in the future or extending beyond the term of the Trust, and otherwise deal with all property, real or personal, in such manner for such considerations and on such terms and conditions as are in accordance with the written direction the Trustee receives;

(c) To borrow money, to lend money, to assume indebtedness, extend mortgages and encumber by mortgage or pledge;

(d) To have with respect to the Trust all of the rights of an individual owner, including the power to give proxies, to participate in any voting trusts, mergers, consolidations or liquidations, and to exercise or sell stock subscriptions or conversion rights which rights the Trustee may at its discretion exercise or transmit to the Participant for exercise by the Participant;

(e) To retain in cash so much of the Trust as the Participant or his authorized agent directs, or, as is provided under 7.4, pending other instructions from the Participant or his authorized agent, and to deposit such cash held in the Trust in a savings instrument at a reasonable rate of interest, including specific authority to invest in an individual savings account, an individual certificate of deposit, a money market account, or in other savings instruments of the Trustee as defined in Code Section 1504;

(f) To transfer all or any part of the trust funds from one type of savings instrument offered by the Trustee to another type of savings instrument offered by the Trustee, to the extent permitted by the applicable governmental regulations and the procedures of the Trustee; and

(g) To purchase and to hold annuity contracts and exercise all rights of ownership of the contracts.

### 7.7 Trustee's Powers
Subject to the investment directions of the Participant or the Participant's authorized agent, the Trustee shall have the power or duty:

(a) To hold any securities or other property in the Trust in the name of the Trustee or its nominee, or in another form as it may deem best, with or without disclosing the trustee relationship;

(b) To retain any funds or property subject to any dispute without liability for the payment of interest and to decline to make payment or delivery of the funds or property until a court of competent jurisdiction makes final adjudication;

(c) To charge against and pay from the Trust all taxes of any nature levied, assessed, or imposed upon the Trust, and to pay all reasonable expenses and attorney fees which may be necessarily incurred by the Trustee with respect to the foregoing matter;

(d) To file any tax or information return required of the Trustee, and to pay any tax, interest or penalty associated with any such tax return;

(e) To act pursuant to written blanket settlement authorization given by the Participant on transactions executed by his designated agent. The Trustee is authorized to honor all trade confirmations received from such agent;

(f) To furnish or cause to be furnished to the Participant an annual calendar year report concerning the status of the Account, including a statement of the assets of the Trust held at the end of the calendar year; and

(g) To begin, maintain or defend any litigation necessary in connection with the administration of the Plan, except that the Trustee shall not be obliged or required to do so unless indemnified to its satisfaction.

### 7.8 Prohibited Transactions
Neither the Participant nor his Beneficiary shall borrow any money from the Trust, nor shall such parties pledge any part of the Trust as security for a loan. Furthermore, neither the Participant nor the Trustee nor any other party shall engage, either directly or indirectly, in any prohibited transaction within the meaning of Code Section 4975 with respect to any portion of the Participant's Account.

### 7.9 Delegation By Trustee
The Trustee may designate or employ any person or persons to carry out any powers or responsibilities of the Trustee.

**IRA Plan And Trust Agreement** *(continued)*

### Article VIII - Fees and Expenses of the Trustee

The Participant shall be charged by the Trustee for its services under this Plan in accordance with the Plan's current fee schedule. The Trustee may substitute a different fee schedule at any time upon not less than 30 days written notice to the Participant. Further, the Trustee shall be entitled to reimbursement for all reasonable expenses and for any extraordinary services incurred in the administration of the Account, including but not limited to, fees for legal services rendered to the Trustee. The Trustee shall pay all expenses (including any tax, interest or penalty on a tax) reasonably incurred by it in its administration of the Plan from the Trust unless the Participant pays the expenses. The Trustee may establish a reasonable reserve from the assets of the Trust with which to pay its compensation or expenses of administration. The Trustee may deduct its fees and expenses from the cash available in the Participant's Account; however, fees will continue to accrue and be payable even if the Trust contains no assets. The Participant shall pay any debit balance or the obligation owing to the Trustee on demand. If cash is not available and in the event fees are not paid or expenses reimbursed within 30 days after written notice of the amount due is sent to the Participant, the Trustee may at its discretion liquidate plan investments and withdraw unpaid fees and expenses from the Trust to make such payments. The Trustee may receive a service fee from the depository bank for any Account for necessary administrative services that the Trustee performs in establishing and maintaining records for such Account. If the Participant dies before distribution of his entire Account, the Beneficiary shall assume responsibility for all fees and expenses associated with this Account, and shall be covered by this Article VIII as if the Beneficiary was the Participant.

### Article IX - Amendment and Termination

**9.1 Amendment**
It shall be the responsibility of the Sponsor to maintain the qualification of this Prototype Plan and Trust Agreement under IRS Code Section 408(a). The Sponsor shall have the right at any time and from time to time to amend or terminate this Prototype Plan consistent with the provisions of applicable law without obtaining the consent of the Participant. The Participant and the Trustee shall be furnished a copy of any such amendment. If the Participant dies before distribution of his entire Account, the rights and responsibilities of the Participant under this Article IX shall be assumed by the Beneficiary.

**9.2 Termination**
The Participant shall have the right, at any time, to terminate this Plan and the Trust created under this agreement. The Plan shall terminate upon the first to occur of the following:

(a) The date determined by the Participant's written notice given to the Trustee at least 60 days prior to termination;

(b) Upon the written request of the Participant to terminate the Plan after the Trustee has distributed all assets in the Participant's Account; or

(c) On the date the Participant's Plan ceases to be an individual retirement account within the meaning of Code Section 408(a).

As soon as administratively practicable after this date, the Trustee shall distribute all of the assets in the Trust in single sum payment to the Participant. The Plan will not be considered terminated if the Trustee has not authorized the removal of assets from the Plan.

**9.3 Resignation or Removal of Trustee**
The Trustee may resign at any time with or without cause upon written notice to the Participant. Resignation will take effect 30 days after the date the notice is sent, unless a successor trustee is duly appointed before that date. The Trustee may be removed at any time with or without cause by the Participant or by the Sponsor on 60 days' written notice to the Trustee. Such effective date may be changed upon written mutual agreement. The Participant's or Sponsor's notice of removal of the Trustee to be effective must include notice of the appointment of a successor trustee and a written acceptance of such appointment by the successor trustee. If by the effective date of either the Trustee's resignation, removal, or such longer time as the Trustee may agree to, the Participant has not appointed a successor trustee which has duly accepted such appointment, the Trustee shall terminate the Participant's Account which shall be effective by distributing all assets in it in a single sum in cash or in kind to the Participant, subject to the Trustee's right to reserve funds as provided below. Upon the resignation or removal of the Trustee, the Trustee shall be entitled to deduct from the Trust such reasonable amount as it deems necessary to provide for expenses in the settlement of its account, the amount of compensation due to it, and any taxes or other sums chargeable against the Trust for which it may be liable. If the Trust is not sufficient for such purposes, the Trustee shall have the right to a settlement of its account, which, at the option of the Trustee, may be by judicial settlement in an action the Trustee institutes in a court of competent jurisdiction; or by a settlement agreement between the Trustee and the recipient. Upon settlement under this Section 9.3, all right, title and interest of the Trustee in the assets of the Trust shall vest in the successor trustee. At that time, all future liability of the Trustee shall terminate under the Plan; provided, however, the Trustee shall execute, acknowledge and deliver all documents and written instruments necessary to transfer and convey the right, title and interest in the assets of the Trust, to the successor trustee.

### Article X - Miscellaneous

**10.1 No Responsibility for Participant Action**
Neither the Sponsor nor the Trustee shall have any obligation or responsibility with respect to any act of, or failure to act, on the part of a Participant or his duly authorized agent, or, if the Participant is deceased, on the part of the Beneficiary or his duly authorized agent. Neither the Sponsor nor the Trustee is required to determine the correctness of the amount of any Participant contribution, nor either required to determine whether a Participant's rollover contribution satisfies the definition of Qualifying Rollover Contribution. The Trustee or the Participant or the Beneficiary may waive any notice required to be received by it under this Plan.

**10.2 Trust Not Guaranteed**
Neither the Sponsor nor the Trustee in any way guarantee the Trust from loss or depreciation. The liability of the Trustee to make any payment from the Trust at any time and all times is limited to the then available assets of the Trust.

**10.3 Indemnity of Trustee and Sponsor**
The Participant, and, upon the death of the Participant, the Beneficiary (hereinafter, "Participant"), agrees to indemnify and hold harmless the Trustee and Sponsor (hereinafter, "Trustee") from and against all losses, expenses, settlement payments, or judgments incurred by, or entered against the Trustee as the result of any threatened or asserted claim against the Trustee that pertains in any way to: (1) the Trustee's activities with the Participant; (2) the Participant's investments; and/or (3) a situation or matter associated with this Trust or Plan. The Participant's indemnification obligation also includes the responsibility to reimburse the Trustee for all attorney's fees and costs incurred by the Trustee in: (1) responding to threatened claims by any party; (2) defending (including on appeal) against asserted claims by any party; and/or (3) prosecuting (including on appeal) a claim or counterclaim against the Participant requesting payment of the indemnification obligation set forth herein. <u>The Participant's indemnification obligation applies to any threatened or asserted claim against the Trustee, including specifically, a claim that is threatened or asserted by the Participant against the Trustee.</u> The Participant's indemnification obligation hereunder also applies to any threatened or asserted claims brought by the Participant against the Trustee resulting from wrongful conduct by the Participant's Designated Representative (or other agent of the Participant), including, but not limited to, fraud, forgery, or any other illegal act engaged in by the Designated Representative or other agent retained by the Participant.

**10.4 Controlling Provisions**
Any provision of this Plan and Trust Agreement, or of a Participant's Adoption Agreement, shall be wholly invalid if it is inconsistent, in whole or in part, with Code Section 408(a) and the regulations under that Code. This Plan shall be governed by and construed, administered, and enforced according to the laws of the State of Colorado except to the extent preempted by Federal law.

**10.5 Successors**
The Plan shall be binding upon all persons entitled to benefits under the Plan, their respective heirs and legal representatives, and upon the Trustee and its successors.

## Your Updated Traditional IRA Disclosure Statement

Recent legislation and revised IRS regulations have resulted in several changes that affect your Traditional IRA. For example, contribution limits have been raised and there are new rules for Required Minimum Distributions.

These and other changes are reflected in your updated Traditional IRA Disclosure Statement, which is attached for your reference. The changes are not yet reflected in the Traditional IRA Plan and Trust Agreement, which will be updated at a later date when certain regulations have been finalized.

Please keep this Traditional IRA Disclosure Statement on file with your other plan documents. Thank you.

# IRA
# Disclosure Statement

This report summarizes the requirements for the First Trust Corporation Individual Retirement Account (IRA), to which the Participant contributes and to which an employer may contribute on the Participant's behalf under a simplified employee pension. The details under which the IRA is governed are specified by law and as covered in the IRA Plan and Trust Agreement. This Disclosure Statement is only a summary of the rules. This report does not include explanatory information specifically related to the requirements of the simplified employee pension (SEP).

## A. Revocation of Account

The Participant may revoke the IRA at any time within seven days after he has executed the IRA Adoption Agreement. Upon revocation, the Trustee will return to the Participant the current fair market value of the amount contributed to the IRA without penalty, service charge, or administrative expense.

To revoke the IRA, the Participant must personally deliver or mail a written notice of revocation to the Trustee postmarked within seven days of executing the IRA Adoption Agreement. Mail the notice by first class mail to First Trust Corporation, P.O. Box 173301, Denver CO 80217-3301.

## B. Statutory Requirements

An IRA must satisfy certain requirements of the Internal Revenue Code. The IRA Plan and Trust Agreement incorporates those requirements. In brief, the Internal Revenue Code requires the IRA be governed by a written instrument; the Trustee, except in the case of a rollover contribution, will accept only cash contributions; with certain limited exceptions only a bank or trust company act as Trustee of the IRA; no investment be made in life insurance contracts; the Participant's interest in the IRA be nonforfeitable at all times; with certain exceptions the Participant's IRA not be commingled with other property; and distribution of the Participant's interest in the IRA be made under specific guidelines.

## C. Contributions by the Participant

**Eligible Participant**

Any individual who has compensation and who will not have reached age 70½ by the end of the year is eligible to establish an IRA even though the individual is an active participant in an employer sponsored retirement plan. Section 2.4 of the IRA Plan and Trust defines the term compensation.

2. Time of Contribution/Establishing of IRA

In order to make an IRA contribution for a particular taxable year, the Participant must send his contribution in cash postmarked to First Trust Corporation not later than the individual's tax filing date (without extensions) for that year. An individual may establish a new IRA for a particular taxable year by signing an IRA Adoption Agreement and returning it to First Trust, so that it is received on or before the due date of the individual's tax return for that taxable year, excluding extensions.

3. General Contribution Limitations

For taxable years beginning in 2002 through 2004, an eligible Participant may contribute to his IRA the lesser of $3,000 or 100% of compensation. For taxable years beginning in 2005 through 2007, the amount is the lesser of $4,000 or 100% of compensation, and in 2008, the amount is the lesser of $5,000 or 100% of compensation. In taxable years after 2008, the $5,000 contribution limit will be adjusted for cost-of-living as explained below in Section 5, however, in no case may the contribution exceed 100% of compensation.

In the case of a married couple filing a joint return for taxable years beginning in 2002 through 2004, up to $3,000 can be contributed to each spouse's IRA, even if one spouse has little or no taxable compensation. This means that the total combined contributions that can be made to both IRAs in 2002 through 2004 can be as much as $6,000. In taxable years beginning in 2005 through 2007, the total combined contributions can be as much as $8,000 and in 2008, the total can be as much as $10,000. Again, in taxable years after 2008, the $5,000 contribution limit will be adjusted for cost-of-living.

An individual cannot make contributions to his IRA for the year he reaches age 70½ or any later year. However, for any year he has compensation, he can continue to make contributions of up to $3,000 (for taxable years beginning in 2002 through 2004), $4,000 (for taxable years beginning in 2005 through 2007), or $5,000 (for taxable years after 2008), to a spousal IRA until the year his spouse reaches age 70½.

4. Catch-Up Contributions

For taxable years beginning in 2002 through 2005, an eligible Participant, who has turned age 50 before the close of the taxable year, may contribute an additional $500 to his IRA. For taxable years beginning in 2006 and thereafter, the amount is increased to $1,000.

5. Cost of Living Adjustments

For taxable years beginning after 2008, the $5,000 contribution limit will be increased by a dollar amount equal to the cost-of-living adjustment (determined under Internal Revenue Code Section 1(f)(3) for the calendar year in which the taxable year begins) multiplied by the $5,000 contribution limit and rounded down to the next lowest multiple of $500.

6. General Deduction Limitations

A contribution to the IRA may or may not be fully deductible for Federal income tax purposes. However, these deduction limits do not affect the allowable contributions (see paragraph 9 below).

For a single individual who is not considered an "active participant" in a retirement plan (see paragraph C(7)), or for a married couple filing jointly or separately where neither spouse is an active participant, each individual's allowable contribution for the year will be deductible, regardless of AGI (see paragraph C(8)) or filing status. Go on to paragraph C(9) if contribution is fully deductible.

For tax years beginning on or after January 1, 1998, for a single taxpayer who is considered an active participant, or for a married couple filing jointly where both spouses are active participants: 1) each individual's IRA contribution will be deductible if AGI falls below the Threshold Level (see paragraph C(8)); 2) if AGI falls within the Applicable Phaseout Range from C(8) each individual's contribution will be partially deductible; 3) if AGI is over the Applicable Phaseout Range, no deduction will be permitted. (Note: Consult IRS Publication 590 or a tax advisor for a full discussion of the rules for married couples filing separately.)

Beginning in 1998, for a married couple filing jointly where one spouse is an active participant and one is not, the spouse who is an active participant uses the Applicable Phaseout Ranges table from paragraph C(8) to determine whether or not his individual contribution is fully deductible. The spouse who is not an active participant may make a fully deductible contribution if combined AGI falls below $150,000 for the year. The deduction is eliminated when combined AGI goes above $160,000, and is phased out within those two limits using the formula in paragraph C(8).

7. Active Participant

Effective for tax years beginning on or after January 1, 1998, an individual is an active participant for a year only if he is considered to be covered by a retirement plan, regardless of whether or not his spouse, if married, is considered an active participant. An individual is covered by a retirement plan for a year if the employer or union has a retirement plan under which money is added to his account or the individual is eligible to earn retirement credits. Form W-2 for the year, starting with the 1987 tax year, should indicate plan participation status.

## IRA Disclosure Statement *(continued)*

8. **Adjusted Gross Income (AGI)**

   If an individual is an active participant, he must look at Adjusted Gross Income for the year (if the couple files a joint tax return, use combined AGI) in determining to what extent an IRA contribution is deductible. The individual's tax return will show how to calculate AGI for this purpose. For these purposes, a taxpayer is not considered married for any year if the taxpayer and his spouse (a) did not live together at any time during the taxable year, and (b) did not file a joint return for the taxable year. If a Participant is at or below a certain AGI level, called the Threshold Level, he is treated as if he were not an active participant and therefore can make a deductible contribution under the same rules as a person who is not an active participant.

   If the individual is single, the Threshold Level for 2002 is $34,000. For 2002, the Threshold Level if the individual is married and files a joint return is $54,000. If the individual is married but files a separate tax return, the Threshold Level for 2002 and beyond is $0. When AGI reaches the applicable Threshold Level for the tax year, the deduction is gradually phased out until it is eliminated for Participants with AGI above the Applicable Phaseout Range in effect for that year.

   | Applicable Phaseout Ranges | | |
   |---|---|---|
   | Year | Single Taxpayer | Married Couples Filing Joint Returns |
   | 2002 | $34,000 - 44,000 | $54,000 - 64,000 |
   | 2003 | $40,000 - 50,000 | $60,000 - 70,000 |
   | 2004 | $45,000 - 55,000 | $65,000 - 75,000 |
   | 2005 | $50,000 - 60,000 | $70,000 - 80,000 |
   | 2006 | $50,000 - 60,000 | $75,000 - 85,000 |
   | 2007 & beyond | $50,000 - 60,000 | $80,000 - 100,000 |

   Within the individual's Applicable Phaseout Range, the individual will still be able to make a deductible contribution but it will be limited in amount. The amount by which AGI exceeds the Threshold Level (AGI minus the Threshold Level) is called Excess AGI. The Maximum Allowable Deduction Limit is $3,000 (for years 2002 - 2004), $4,000 (for years 2005 - 2007), and $5,000 (for years 2008 and after) plus any catch-up contributions and/or cost-of-living adjustments. The deduction limit for each Spousal IRA also is reduced for AGI above the applicable dollar amount. An individual can calculate the deductible portion of his IRA contribution — the "Deduction Limit" — as follows:

   $$\frac{\$10,000 - \text{Excess AGI}}{\$10,000} \times \text{Maximum Allowable Deduction Limit} = \text{Deduction Limit}$$

   **Example 1:** Ms. Smith, a single person, is an active participant and has an AGI of $37,555 for 2002. She calculates the deductible portion of her IRA contribution as follows:

   - Her AGI is $37,555
   - Her Threshold Level is $34,000 for 2002
   - Her Excess AGI is (AGI - Threshold Level) or ($37,555 - $34,000) = $3,555
   - Her Maximum Allowable Deduction is $3,000

   So, her IRA deduction limit is:
   $$\frac{\$10,000 - \$3,555}{\$10,000} \times \$3,000 = \$1,920$$

   So, $1,920 of her $3,000 contribution will be deductible in 2002.

   **Example 2:** Mr. and Mrs. Young file a joint tax return. Each spouse earns more than $3,000 and both are active participants. They have a combined AGI of $62,125 for 2002. They may each contribute to an IRA and calculate their deductible contributions to each IRA as follows:

   - Their AGI is $62,125
   - Their Threshold Level is $54,000 for 2002
   - Their Excess AGI is (AGI - Threshold Level) or ($62,125 - $54,000) = $8,125
   - The Maximum Allowable Deduction for each spouse is $3,000

   So, each spouse may compute his or her IRA deduction limit as follows:
   $$\frac{\$10,000 - \$8,125}{\$10,000} \times \$3,000 = \$540$$

   **Example 3:** Mr. and Mrs. Olde file a joint tax return. George Olde is an active participant, while Marge Olde is not. The couple has combined AGI for 2002 of $180,000. Neither can make a 2002 deductible IRA contribution.

   Now assume those same facts but combined AGI is $156,425. No portion of George's 2002 contribution will be deductible because AGI is over the Phaseout Range for active participants. However, Marge may calculate the deductible portion of her 2002 contribution as follows:

   - Combined AGI is $156,425
   - Threshold Level is $150,000 for Marge
   - Excess AGI is (AGI - Threshold Level) or ($156,425 - $150,000) = $6,425

   $$\frac{\$10,000 - \$6,425}{\$10,000} \times \$3,000 = \$1,050$$

   So, $1,050 of Marge's $3,000 contribution is deductible while $0 of George's contribution is deductible.

9. **Nondeductible Annual Contributions**

   Even if the individual may not make a fully deductible contribution, he may still make the maximum allowable contribution to the IRA. The amount of the contribution which is not deductible will be a nondeductible contribution to the IRA. An individual may also choose to make a contribution nondeductible even if he could have deducted part or all of the contribution. Interest or other earnings on the IRA contribution, whether from deductible or nondeductible contributions, will not be taxed until taken out of the IRA and distributed to the Participant.

   If the individual makes a nondeductible contribution to an IRA, he must report the amount of the nondeductible contribution to the IRS as a part of his tax return for the year, using Form 8606 attached to the Form 1040.

   An individual may make a contribution up to the applicable limit at any time during the year, without having to know how much will be deductible. When the individual fills out his tax return, he then may figure out how much is deductible. If some portion of the contribution is not deductible, the individual may decide either to withdraw the nondeductible amount, or to leave it in the IRA and designate that portion as a nondeductible contribution on his tax return. If the individual decides to remove the nondeductible portion, it must be withdrawn before the tax filing deadline (plus extensions) and the amount withdrawn must include any earnings on such amount. The earnings are treated as income in the year in which the contribution was made and are subject to a 10% penalty tax if applicable. See paragraph F(2) below. Distributions of nondeductible contributions that are paid out after the tax-filing deadline are subject to the taxation rules for regular distributions including extensions. See paragraph G(1).

### D. Rollover Contribution by the Participant

1. **Eligible Participant**

   An individual is eligible to establish a rollover IRA with the Trustee if the contribution the Participant wishes to make satisfies the definition of Qualifying Rollover Contribution. Unlike the rules relating to deductible IRA contributions, an eligible Participant may establish a rollover IRA with the Trustee even if he does not have any compensation or income other than the funds with which the Participant wishes to establish the rollover IRA. The Qualifying Rollover Contribution may consist of cash and/or property, including, in the case of a qualified retirement plan, the proceeds from the sale of property received.

2. **No Contribution Limitation**

   There is no limit on the amount of the rollover contribution an eligible Participant may make to the IRA.

## IRA Disclosure Statement *(continued)*

3. **Qualifying Rollover Contribution**

   Under Section 2.7 of the IRA Plan and Trust, Qualifying Rollover Contribution means a contribution which constitutes (a) an eligible rollover distribution from a qualified retirement plan (including an annuity plan), (b) a distribution from an individual retirement account, (c) an eligible rollover distribution from a tax sheltered annuity, (d) the redemption proceeds of an IRA retirement bond or (e) a distribution of all or part of the accumulated deductible employee contributions held under a qualified plan. In addition to the definitional requirements of the Qualifying Rollover Contribution, the Participant must make the contribution of the property (including the cash) representing the Qualifying Rollover Contribution to the IRA within 60 days of the Participant's receipt of the property and cash, if any, from the plan; or, in the case of a direct rollover, must instruct the distributing trustee to move the assets directly to the IRA. Any property (other than cash) the Participant contributes to the rollover IRA must be the same property the Participant received in the distribution, or in the case of a qualified retirement plan the cash proceeds from the sale of such property, with the exception of that portion of the distribution from a qualified retirement plan representing the amount of any employee nondeductible contributions made by the Participant, which may not be rolled over. However, the Qualifying Rollover Contribution may include any earnings on the employee contributions. To the extent a Participant contributes only a part of a Qualifying Rollover Contribution to his IRA, the Participant must report the balance as ordinary income in the taxable year in which the distribution was made.

   Beginning January 1, 1998, the premature distribution penalty tax will also be waived if a Participant under 59½ takes distribution from the IRA (a) to pay for qualified higher education expenses (as defined in IRS Code Section 72(t)(2)(7)) for the taxable year, or (b) to pay the expenses for the purchase of a first home as defined in IRS Code Section 72(t)(2)(8).

4. **IRA Rollover or Conduit Individual Retirement Account**

   The purpose of the conduit individual retirement account is to enable an individual who has received an eligible rollover distribution from a qualified retirement plan to deposit/rollover the amount of the distribution to the qualified retirement plan of a subsequent employer.

   If the individual makes any contributions other than rollover contributions to an IRA Rollover or conduit account, that account will lose its status as a conduit and the individual also will lose the ability to roll over that amount into another employer's qualified retirement plan. To accomplish the purpose of a conduit IRA, the Participant takes a total distribution from the IRA and rolls over all or a portion of that distribution within 60 days to the subsequent employer's qualified retirement plan. Of course, the subsequent employer must consent to the rollover.

5. **Rollover to Another IRA**

   An individual may roll over all or a portion of the IRA balance from one IRA to another IRA once every 12-month period. This rollover provision permits an individual to change periodically the sponsor of his IRA without adverse Federal income tax; that is, the amount rolled over is not includible in gross income at the time of the rollover. Tax-free transfers may be made between IRA trustees more frequently.

6. **Trustee's Acceptance of the Rollover Contribution**

   Before making a rollover contribution to this IRA, the Participant should consult his tax advisor not only with respect to the technical requirements of such rollovers but also with respect to the economics of the rollover. The Trustee emphasizes that it assumes no responsibility to determine whether the Participant's contribution to the IRA satisfies the definition of Qualifying Rollover Contribution.

### E. Tax Status of Account/Reporting

1. **Approved Form**

   This IRA has been approved as to form by the Internal Revenue Service. The Participant should not consider the Revenue Service approval as to form as a determination by the Revenue Service of the merits of the Sponsor's Individual Retirement Account Plan.

2. **Account Tax Exempt/Required Report**

   Under an IRA plan approved as to form, the Participant's IRA is tax-exempt. Accordingly, unless the Participant's IRA loses its tax-exempt status, the earnings within the IRA accumulate without reduction for Federal income tax. Other parts of this Disclosure Statement explain the income tax consequences of distributions from the IRA to the Participant or to the Participant's Beneficiary. A Participant will report distributions from (and contributions to) the IRA on his Federal tax Form 1040. Nondeductible IRA contributions are reported on Form 8506 attached to his Form 1040. A Participant must report any special IRA penalty tax on Form 5329 as an attachment to Form 1040 for the taxable year of the penalty. Special IRA penalty taxes which require the filing of Form 5329 are the excise tax on excess contributions, the penalty tax for making certain distributions to the Participant prior to attaining age 59½ and the tax on the failure to take distribution of the minimum amount by a Participant who has attained age 70½.

3. **State Income Tax**

   Though the Participant's IRA is exempt from Federal income tax, the Participant should consult with his tax advisor regarding proper reporting of IRA earnings and contributions for state income tax purposes.

### F. Operation and Special Limitations on the IRA

1. **Excess Contribution**

   In the event a Participant makes an excess contribution during a taxable year (i.e., a contribution which exceeds the allowable limitations, a contribution by a Participant who attained age 70½ before the close of the taxable year or a contribution which does not satisfy the law's requirements for rollover contributions), the Trustee will refund the excess upon request. There are two rules which govern the return to the Participant of an excess contribution. First, the Participant need not include the refund of the excess contribution in income if: (a) The Participant receives the refund by the date (including extensions) prescribed by law for filing the Participant's income tax return for the taxable year of the excess contribution; (b) The Participant does not take a deduction for the amount of the excess contribution; and (c) The Participant receives with the refund the net income attributable to the excess contribution. The Participant must report this net income in the taxable year in which he made the excess contribution.

   The second rule relates to a return of an excess contribution after the due date (including extensions) for filing the Participant's income tax return for the taxable year of the excess contribution. In this instance, the Participant need not include the refund of the excess contribution in income if: (a) The contribution was not a rollover contribution (there is a special rule for excess rollover contributions); (b) The aggregate of contributions for the taxable year of the excess contribution does not exceed the applicable limits for the taxable year; and, (c) The Participant did not take a deduction for the excess amount for the taxable year for which he made the excess contribution, or amends his income tax return to eliminate the deduction.

   Under this second rule, the net earnings do not accompany the refund. See paragraph 2 below.

   In the case of an excess rollover contribution, the Participant need not include the refund of the excess contribution in gross income to the extent the amount of the excess contribution was attributable to his reasonably relying on erroneous information the law required the Participant's employer or other party to furnish the Participant as respects the determination of the amount of a Qualifying Rollover Contribution.

2. **Penalty Tax-Excess Contribution**

   Any excess contribution not returned to the Participant by the date (including extensions) prescribed by law for filing the Participant's income tax return for the year of the excess contribution is subject to a nondeductible 6% excise tax for that taxable year. The law continues to impose this penalty tax for each subsequent taxable year the funds remain in the IRA or are not utilized as an allowable contribution for a taxable year subsequent to the taxable year of the excess contribution. The Participant may utilize an excess contribution as a contribution in a subsequent year by undercontributing in the subsequent year. However, underutilizing the contribution limitations in the subsequent year will not eliminate the excise tax

## IRA Disclosure Statement (*continued*)

for any preceding taxable year. Accordingly, a Participant should timely request from the Trustee a return of an excess contribution to avoid the imposition of the excise tax for the year of the excess contribution.

3. **Withdrawal of Funds/Premature Distribution**

   The Participant, without penalty, may withdraw funds from the IRA after attaining age 59½, or prior to age 59½ under a substantially equal periodic payment procedure. If the Participant withdraws any funds prior to age 59½ for any reason other than death or disability, or for an allowable return of an excess contribution, or under a substantially equal payment procedure, the Participant must include the proportionate amount (as calculated in paragraph G(1) below) of the withdrawal in income and pay a penalty tax of 10% of the amount includible in income. The current income taxation and 10% penalty tax apply unless the Participant rolls over the funds (other than an excess contribution) to another qualified IRA or, if permitted by law, to a qualified retirement plan.

   Beginning January 1, 1997, the premature distribution penalty tax will also be waived if a Participant under age 59½ takes distribution from the IRA (a) to pay for medical expenses which have exceeded 7.5% of the Participant's adjusted gross income, or (b) to pay for health insurance premiums if the Participant has separated from employment and has received unemployment compensation under a federal or state program for at least 12 weeks.

   Beginning January 1, 1998, the premature distribution penalty tax will also be waived if a Participant under 59½ takes distribution from the IRA (a) to pay for qualified higher education expenses (as defined in IRS Code Section 72(t)(2)(7)) for the taxable year, or (b) to pay the expenses for the purchase of a first home as defined in IRS Code Section 72(t)(2)(8).The law also treats a Participant as having received a distribution (deemed distribution) of the entire IRA if the IRA loses its exempt status for having engaged in a prohibited transaction or if the Participant assigns his IRA to another person by gift or for another purpose. However, the law does not consider a transfer or assignment of an IRA pursuant to a divorce decree or pursuant to a written instrument incident to divorce or legal separation as a taxable transfer. The 10% penalty tax also may apply to a deemed distribution occurring prior to age 59½.

   For purposes of the IRA provisions, the law considers an individual disabled if he is unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or to be of long continued and indefinite duration. Furthermore, a substantially equal periodic payment procedure means that distributions are made in substantially equal installments (at least annual) over life or joint life expectancy and continue until the later of the date the Participant attains age 59½ or the date five years after installment distributions began.

4. **No Borrowing on Account**

   The Participant may not utilize the IRA for any purpose other than retirement benefits. The use of the IRA as security for a loan will result in a deemed distribution of the IRA to the extent of the portion used as security. This deemed distribution would subject the Participant to current income taxation and to the 10% penalty tax on the taxable portion of the IRA deemed distributed unless the Participant has attained 59½.

5. **Nonforfeitable Interest**

   The Participant's interest in his IRA is nonforfeitable.

---

### G. Retirement Benefits

1. **Federal Tax Aspects of Distribution**

   Retirement funds accumulated in an IRA are taxable to the Participant when distributed, as determined under the formula explained below. The special qualifying lump sum distribution treatment afforded certain types of retirement plans is not available for an IRA distribution, even if the original contribution to the IRA was a rollover contribution which would have qualified for that special treatment if the Participant had not rolled over the lump sum distribution.

   Because nondeductible IRA contributions are made using income which has already been taxed (that is, they are not deductible contributions), the portion of an IRA distribution which is deemed to consist of nondeductible contributions will not be taxed again when received by the individual. For example, if you make any nondeductible IRA contributions, each distribution from your IRAs will consist of a nontaxable portion (return of nondeductible contributions) and a taxable portion (return of deductible contributions, if any, and account earnings).

   Thus, you may not take a distribution which is entirely tax-free. The following formula is used to determine the nontaxable portion of distributions for a taxable year:

   $$\frac{\text{Remaining Nondeductible Contributions}}{\text{Year-end total IRA account balances}} \times \text{Requested distribution} = \text{Nontaxable portion}$$

   To figure the year-end total IRA balances, treat all IRAs as a single IRA. This includes all regular IRAs, as well as simplified employee pension (SEP) IRAs, and rollover IRAs. Distributions taken during the year also must be added back.

   Example: An individual makes the following contributions to his or her IRAs:

   | Year  | Deductible | Nondeductible |
   |-------|------------|---------------|
   | 1996  | $2,000     | $ 0           |
   | 1997  | 1,800      | 0             |
   | 2000  | 1,000      | 1,000         |
   | 2002  | 900        | 2,100         |
   | TOTAL | $5,700     | $3,100        |

   - Deductible Contributions: $5,700
   - Nondeductible Contributions: $3,100
   - Earnings on IRAs: $1,320
   - Total Account Balance of IRAs as of 12/31/2002: $10,120 (including distributions in 2002)

   In 2002 the individual takes a distribution of $3,000. The nontaxable portion of the distribution for 2002 is figured as follows:

   $$\frac{\$3,100}{\$9,000} \times \$3000 = \$1,020$$

   Thus, $1,020 of the $3,000 distribution in 2002 will not be included in the individual's taxable income. The remaining $1,980 will be taxable for 2002.

2. **Required Distribution**

   Distributions from the IRA must begin not later than a Participant's Required Beginning Date which is April 1 following the calendar year in which the Participant reaches are 70½. The Participant may choose to receive the funds in his account in a single sum or in installments. In the event the Participant chooses installment payments, the fixed term of the distribution may not exceed the life expectancy of the Participant (or the joint life expectancy of the Participant and his designated spouse-Beneficiary if the spouse is more than 10 years younger than the Participant).

   Generally, by December 31 following the year in which the Participant dies, distributions to the designated Beneficiary (if an individual) must have begun. An individual beneficiary may receive payment of the Participant's IRA over a fixed term measured by the Beneficiary's life expectancy. If distributions to an individual Beneficiary have not begun by December 31 following the year in which the Participant died, the entire account must then be distributed by December 31 of the year containing the fifth anniversary of the Participant's death. Please consult your tax advisor and see the plan document for details of these distribution rules, including the rules that cover a spouse-Beneficiary.

3. **Minimum Distribution**

   If retirement distributions are not made at or before the time required, the law imposes a nondeductible 50% penalty tax on the difference between the required distribution and the actual distribution. The recipient of the distribution must pay this penalty tax. For example, the distribution period of

## IRA Disclosure Statement *(continued)*

a Participant at age 70 (under the Uniform Distribution Period Table) is 26.2 years. If the first annual installment was calculated to be $10,000, but at the request of the Participant the Trustee made distribution to the Participant of only $4,000 for that year, the law would impose a nondeductible penalty tax on the Participant of $3,000 (50% x ($10,000 - $4,000)). If the underpayment of the required amount is due to reasonable error and reasonable steps are taken to remedy the error, the Internal Revenue Service may waive the penalty for the taxable year of the underpayment.

A Participant may also calculate the required amount for each of his IRAs and take those amounts from any one or more of his IRAs. This is referred to as the "alternative method."

4. **Federal Gift Tax/Estate Tax**

The Participant's designation of a Beneficiary for his IRA does not constitute a gift for Federal gift tax purposes. The balance in a Participant's IRA at the time of the Participant's death is includible in his gross estate for Federal estate tax purposes.

### H. Prohibited Transactions

To ensure the proper use of the funds deposited in the IRA, neither the Trustee nor any other party may engage directly or indirectly in a prohibited transaction with respect to the Participant's IRA, as defined in IRS Code Section 4975. If a prohibited transaction affecting a Participant's IRA occurs, the IRA will lose its tax-exempt status. Furthermore, the Participant must include the entire IRA balance in his gross income for the taxable year in which the prohibited transaction occurs.

### I. Tax Advice

This Disclosure Statement together with the Plan and Trust Agreement should answer most questions concerning the IRA. If a Participant has additional questions regarding IRAs, he should consult his tax advisor. Also, the Participant may obtain additional information regarding IRAs from any District Office of the Internal Revenue Service. See in particular IRS Publication 590.

### J. Administrative Expense

The IRA Plan and Trust Agreement provides that the Trustee will receive reasonable annual compensation for the administration of the Participant's IRA. A Trustee's fee schedule is printed on the IRA Adoption Agreement and is available upon request. The Trustee may change its fee schedule upon 30 days' written notice to the Participant.

### K. Investment of the IRA and Financial Disclosure

As stated in Article VII of the IRA Plan and Trust Agreement, the assets of the IRA will be invested only in accordance with directions from the Participant or his duly authorized agent. First Trust Corporation does not offer investment advice to the Participant. The investments available include a wide range of assets. The assets of the IRA at any given time may contain one or more of the permitted assets depending on which investments the Participant has selected. It is therefore impossible to estimate the value of the IRA assets of the Participant at any given future point in time. Identification of an investment category as administratively feasible or not does not constitute a determination by First Trust of the prudence or advisability of the investment nor does First Trust provide investment advice or recommend or evaluate the merits or suitability of any investment.

▷ FIRST TRUST CORP

717 17TH STREET
SUITE 2600
DENVER, CO 80202

Person to Contact: Ms. Wiggins

Telephone Number: (202) 622-8380

Refer Reply to: E:EP:Q:8

Date: 04/22/93

Dear Applicant:

In our opinion, the amendment to the form of the prototype trust, custodial account or annuity contract identified above does not adversely affect its acceptability under section 408 of the Internal Revenue Code, as amended by the Tax Reform Act of 1986.

Each individual who adopts this approved plan will be considered to have a retirement savings program that satisfies the requirements of Code section 408, provided they follow the terms of the program and do not engage in certain transactions specified in Code section 408(e). Please provide a copy of this letter to each person affected.

The Internal Revenue Service has not evaluated the merits of this savings program and does not guarantee contributions or investments made under the savings program. Furthermore, this letter does not express any opinion as to the applicability of Code section 4975, regarding prohibited transactions.

Code section 408(i) and related regulations require that the trustee, custodian or issuer of a contract provide a disclosure statement to each participant in this program as specified in the regulations. Publication 590, Tax Information on Individual Retirement Arrangements, gives information about the items to be disclosed.

The trustee, custodian or issuer of a contract is also required to provide each adopting individual with annual reports of savings program transactions.

Your program may have to be amended to include or revise provisions in order to comply with future changes in the law or regulations.

If you have any questions concerning IRS processing of this case, call us at the above telephone number. Please refer to the Letter Serial Number and File Folder Number shown in the heading of this letter. Please provide those adopting this plan with your phone number, and advise them to contact your office if they have any questions about the operation of this plan.

You should keep this letter as a permanent record. Please notify us if you terminate the form of this plan.

Sincerely yours,

John Swieca
Chief, Employee Plans
Qualifications Branch

19