**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLORADO**
**Judge Christine M. Arguello**

Civil Action No. 09-cv-00752-CMA-CBS
(Consolidated with 09-cv-01222-CMA-CBS and 09-cv-01356-CMA-CBS)

ROCHELLE MANDELBAUM, individually and as executrix of
THE ESTATE OF DONALD MANDELBAUM;
GIUSEPPE SANTINELLO;
ANNE J. DEL CASINO, and
ROBERT AND STEPHANIE HALIO,
on behalf of themselves and other persons similarly situated,

      Plaintiffs,

v.

FISERV, INC.,
FISERV TRUST COMPANY,
RETIREMENT ACCOUNTS, INC.,
NTC & CO.LLP,
TRUST INDUSTRIAL BANK, and
LINCOLN TRUST COMPANY,

      Defendants.

---

## ORDER DISMISSING CLAIMS

---

This matter is before the Court on the following motions filed by Defendants[1] Fiserv, Inc., Fiserv Trust Company, Retirement Accounts, Inc., NTC & Co. LLP, Trust Industrial Bank, and Lincoln Trust Company: (1) Motion to Dismiss All Claims As to All Defendants (Doc. # 78),[2] (2) Defendants' Motion to Dismiss All Claims Based on SLUSA (the Securities Litigation Uniform Standards Act of 1998) (Doc. #79),[3] and (3) Motion to Dismiss Defendant Fiserv, Inc. (Doc. # 80.)[4]  The Motions are fully-briefed.  On August 9, 2010, the parties presented oral argument in connection with the Motions to Dismiss.  ("August 9 Motions Hearing.")  (Doc. # 109.)  This matter is also before the Court on Defendants' Motion for Reconsideration of Order Regarding Election of Arbitration Rights (Doc. # 111), to which Plaintiffs' responded (Doc. # 113) and Defendants replied (Doc. # 116).

---

[1]  The following Defendants have been dismissed by Stipulation of Dismissal and Order (Doc. ## 86 and 87): Robert Beriault, Robert Beriault Holdings, Inc., TD Ameritrade Online Holding Corp., and TD Ameritrade Holding Corporation.  Accordingly, this Order will not address further the claims against the dismissed Defendants.  All Defendants, except for TD Ameritrade Online Holding Corp. and TD Ameritrade Holding Corp., are identified in the Complaint as the "Trustee Defendants."  (Doc. # 69, ¶ 51(j).)  Throughout this Order, this Court will refer to the "Trustee Defendants" as "Defendants."  Also, Plaintiffs inconsistently use the word, "Fiserv" to refer to "Fiserv, Inc." (Doc. # 69, ¶ 31), "Fiserv Trust Company" (*Id.*, ¶ 32), or "All the foregoing Defendants" (*Id.*, ¶ 40).  Because the entity to which the word "Fiserv" refers is wholly unclear, the Court will at all times throughout this Order refer to "Fiserv" in quotes.

[2]  Plaintiffs responded on March 9, 2010 (Doc. #90), and Defendants replied on April 30, 2010.  (Doc. # 99.)

[3]  Plaintiffs responded on March 8, 2010 (Doc. #89), and Defendants replied on April 20, 2010 (Doc. # 98).

[4]  Plaintiffs responded on March 9, 2010 (Doc. #90), and Defendants replied on April 20, 2010 (Doc. # 96).

Having reviewed the various briefs and relevant case law and heard the parties'
arguments, the Court GRANTS Defendants' Motion to Dismiss All Claims As to All
Defendants (Doc. # 78), GRANTS the Motion to Dismiss Defendant Fiserv, Inc. (Doc.
# 80), and GRANTS Defendants' Motion to Dismiss All Claims Based on SLUSA (Doc.
# 79).  Additionally, Defendants' Motion for Reconsideration of Order Regarding
Election of Arbitration Rights (Doc. # 111) is DENIED AS MOOT.

## I.  <u>BACKGROUND</u>[5]

Plaintiffs filed their initial class action complaint on April 2, 2009.  (Doc. # 1.)  The
complaint was amended on April 22, 2009.  (Doc. # 4.)  On June 30, 2009, the instant
action was consolidated with two other actions involving common questions of law and
fact, 09-cv-01222-CMA-CBS and 09-cv-01356-CMA-CBS (the "Consolidation Order").
(Doc. # 28.)  Pursuant to the Consolidation Order, an amended consolidated class
action complaint was filed on November 6, 2009.  (Doc. # 65.)  The complaint was again
amended on November 10, 2009 (the "Complaint").  (Doc. # 69.)  Plaintiffs assert that
this Court has original jurisdiction over all claims, including state claims, pursuant to the
Class Action Fairness Act of 2005 and 28 U.S.C. § 1332(d)(2)(A).

---

[5]  Unless otherwise noted, the following facts are taken from the Second Amended
Consolidated Class Action Complaint (Doc. #69).

This putative class action concerns allegations of various holders of self-directed individual retirement accounts ("IRAs")[6] administered by Defendants Fiserv, Inc.[7], Fiserv Trust Company, Retirement Accounts, Inc., Trust Industrial Bank, Lincoln Trust Company, NTC & Co. LLP (and Beriault Holdings, Inc. and Beriault, who have since been voluntarily dismissed).  As set forth in various agreements underlying the IRAs ("IRA Agreements"), Plaintiffs, the account owners, made all investment decisions.  The Trustee Defendants gave no financial or investment advice, conducted no valuations or due diligence, and charged only nominal annual fees to prepare tax paperwork and provide specified, limited administrative services.  (Doc. # 78 at 10.)  Pursuant to instructions received from Plaintiffs, the Defendants sent Plaintiffs' funds to Bernard Madoff's brokerage firm, Bernard L. Madoff Investment Securities LLC ("BMIS"), for investment in securities.  The Plaintiffs' funds were ultimately lost in Bernard Madoff's notorious Ponzi scheme.

## A.    RELEVANT PROVISIONS IN THE IRA AGREEMENTS

The various IRA Agreements contain clearly-stated and explicit provisions that indemnify the Trustee Defendants from liability resulting from any claims arising from the accounts at issue.  These IRA Agreements also clearly state that the Plaintiff

---

[6]  Notably, the at-issue IRAs are independent IRAs, rather than part of an employee benefit plan.

[7]  Although the Complaint implicates Fiserv, Inc. by name, *see*, *e.g.*, Doc. # 69, ¶ 31, the Complaint does not allege any specific claims against Fiserv, Inc.  Due to the absence of specific allegations against Defendant Fiserv, Inc., Defendants have filed a Motion to Dismiss Fiserv, Inc, as noted above.  (Doc. # 80.)

investors are solely responsible for making investment decisions in connection with their

funds and that the Trustee Defendants will not provide any investment advice.  The

pertinent provisions of the various IRA Agreements[8] are set forth in Appendix A,

attached hereto.

## B.    PLAINTIFFS' CONTENTIONS

Plaintiffs contend that the Defendants owed, and failed to fulfill, certain duties as

fiduciaries/trustees of Plaintiffs' IRAs, which duties included the duty to hold, preserve,

and keep safe the trust's res, and to avoid commingling of the trust res with other

assets.  (Complaint, Doc. # 69, ¶¶ 9, 10.)  Plaintiffs assert that these duties arise from

the contractual agreements and federal and state common law.  In particular, Plaintiffs

contend that Defendants:

(1)   turned the trust assets over to a third party (Bernard Madoff), rather than

hold the assets in trust (Doc. # 81-3, at 12);

(2a)   failed to verify whether and how Bernard Madoff continued to hold the

assets;

(2b)   failed to take steps consistent with the investment industry's customs and

standards such as keeping track, maintaining custody over, and keeping safe the trust

assets;

(2c)   failed to maintain title to the (non-existent) assets;

_____

[8]  Copies of the IRA Agreements were not attached to the Complaint, but were attached
to a Declaration (Doc. # 81) in support of Defendants' Motion to Dismiss All Claims (the
"Omnibus Motion to Dismiss") (Doc. # 80).

(3)   knew from prior experience with other questionable funds the importance of holding and preserving trust assets;

(4)   enabled Madoff's theft of the assets, due to their lack of oversight;

(5)   were engaged in a "*quid pro quo*" arrangement with Madoff, which caused them to disregard various red flags concerning Madoff's fraudulent activities; and

(6)   received information about the questionable nature of Madoff's operations.

(Complaint, Doc. # 69, ¶¶ 11, 14, 20, 21, 62(a)-(c), 169(a)-(d), 174-81).

Plaintiffs assert the following 32 claims against Defendants:

A.   Breach of Contract:
   (1)   Claims 1 & 21: Based on Federal Common Law
   (2)   Claims 6, 11, 16 & 26: Based on State Common Law

B.   Ordinary and Gross Negligence
   (1)   Claims 2 & 22: Based on Federal Common Law
   (2)   Claims 7, 12, 17, & 27: Based on State Common Law

C.   Breach of Fiduciary Duty
   (1)   Claims 3 & 23: Based on Federal Common Law
   (2)   Claims 8, 13, 18, & 28: Based on State Common Law
   (3)   Claims 32: Based on ERISA

D.   Aiding and Abetting Breach of Fiduciary Duty
   (1)   Claims 4 & 24: Based on Federal Common Law
   (2)   Claims 9, 14, 19 & 29: Based on State Common Law

E.   Unjust Enrichment
   (1)   Claims 5 & 25: Based on Federal Common Law
   (2)   Claims 10, 15, 20 & 30: Based on State Common Law

F.   Implied Right of Action Under Federal Law, Including Section 408 of the Internal Revenue Code: Claim 31

## II.  STANDARD OF REVIEW

In reviewing a Rule 12(b)(6) motion to dismiss for failure to state a claim, a court "accept[s] all the well-pleaded allegations of the complaint as true" and "construe[s] them in the light most favorable to the plaintiff."  *David v. City & County of Denver*, 101 F.3d 1344, 1352 (10th Cir. 1996).  The Court must decide "whether the complaint contains 'enough facts to state a claim to relief that is plausible on its face.'"  *Ridge at Red Hawk, L.L.C. v. Schneider*, 493 F.3d 1174, 1177 (10th Cir. 2007) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 563 (2007)).  "The plausibility standard is not akin to a probability requirement, but it asks for more than a sheer possibility that" the alleged claim might have occurred.  *Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1950 (2009) (citation and quotation marks omitted).  "[T]he complaint must give the court reason to believe that *this* plaintiff has a reasonable likelihood of mustering factual support for *these* claims."  *Ridge at Red Hawk, L.L.C.*, 493 F.3d at 1177.

In evaluating the plausibility of a given claim, the Court "need not accept conclusory allegations" without supporting factual averments.  *S. Disposal, Inc., v. Tex. Waste Mgmt.*, 161 F.3d 1259, 1262 (10th Cir. 1998).  "[T]he tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions.  Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."  *Iqbal*, 129 S.Ct. at 1949.

In evaluating a Rule 12(b)(6) motion to dismiss, courts may consider not only the complaint itself, but also documents incorporated into the complaint by reference.

*Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308 (2007); *TMJ Implants, Inc.*

*v. Aetna, Inc.*, 498 F.3d 1175, 1180 (10th Cir. 2007).  Although the various IRA

Agreements were not attached to the Complaint, they are referred to in the Complaint,

they are central to Plaintiffs' claims, and their authenticity is not in dispute.  As such, this

court may consider the various IRA Agreements.  *Alvarado v. KOB-TV, L.L.C.*, 493 F.3d

1210, 1215 (10th Cir. 2007) (internal quotation omitted).

### III.  <u>MOTION TO DISMISS DEFENDANT FISERV, INC. (Doc. # 80)</u>

In the Complaint, Plaintiffs have not made any specific allegations against Fiserv,

Inc.  Rather, Plaintiffs refer generally to all defendants, including Fiserv, Inc., as

"Trustee Defendants" or the "Fiserv Defendants" and lodge general allegations against

such defendants, including the following, as examples:

- The Trustee Defendants systematically violated such minimum federal fiduciary standards for more than fifteen years which foreseeably lost the trust res of each Plaintiff and member of the Class.  These continuous violations occurred notwithstanding the Trustee Defendants' represent-ation in their brochures and on their website that they provided "a safe environment" for IRAs.  (Doc. # 69, ¶ 3.)

- Class members entered a standardized form contract that was drafted and created by the Trustee Defendants.   (*Id.*, ¶ 8).

- Under this standardized form contract and federal law, the Trustee Defendants owed minimum federal fiduciary duties to each Class member. These included, among others, the duties to hold, to preserve and to keep safe the trust's res.  Also, these duties required the Trustee Defendants to avoid the commingling of the Trust res with other assets.  (*Id.*, ¶ 9.)

- The Trustee Defendants systematically breached these duties and violated federal law.  They failed to keep safe, preserve and sufficiently hold the Trust res and assets.  And they failed to avoid the commingling of such assets.  (*Id.*, ¶ 10; *see also* ¶¶ 87-88.)

8

• The Trustee Defendants and other Defendants are each liable for aiding and abetting the Trustee Defendants' breach of their fiduciary duties because they knew and materially assisted the numerous breaches of the Trustee Defendants. (*Id.*, ¶ 98.)

• Another red flag ignored by the Trustee Defendants was that Madoff failed to trade through an independent broker and, instead, self-cleared all Fund activities through his wholly-owned company BMIS. (*Id.*, ¶ 179.)

Defendant Fiserv, Inc. contends that it must be dismissed from this action because: (1) there are no specific allegations against it, (2) it is not a party to any of the at-issue contracts, (3) there are no allegations that it engaged in conduct that would justify piercing the corporate veil, and Plaintiffs have simply lodged claims against it because, at some point, it was the parent company of, at least, Defendants First Trust Corporation, NTC & Co. LLP, Trust Industrial Bank, Lincoln Trust Company, and Retirement Accounts, Inc., and (4) to the extent that a Fiserv, Inc. subsidiary had knowledge of an underlying breach of fiduciary duty, a subsidiary's knowledge cannot be imputed to the parent. (Doc. # 69, ¶¶ 34-37; # 80 at 12, 24-25, 27.)

In response, Plaintiffs present three main arguments. First, they assert that Fiserv, Inc. has been doing business under or through Fiserv's Investment Support Services ("FISS"), which they contend is either a trade name or an unincorporated division of Fiserv, Inc., and is the custodian for Plaintiffs' IRAs. Second, Plaintiffs contend that "Fiserv Inc. is properly named as the extant legal Defendant for one or more discontinued or alienated subsidiaries." (Doc. # 90 at 98, citing *H&H Distribs., Inc. v. BBC Int'l, Inc.*, 812 P.2d 659, 663 (Colo. Ct. App. 1990) (parent company would be

9

liable for subsidiary's breach of contract where one was an instrumentality of the other).)
Third, Plaintiffs state that they have alleged an aiding and abetting claim against Fiserv,
Inc.

For the following reasons, the Court finds that Plaintiffs have failed to state
a claim against Fiserv, Inc.  First, pursuant to a September 19, 2006 filing with the
Colorado Secretary of State, Fiserv Investment Support Services ("FISS") is the trade
name for Fiserv Trust Company, **not** Fiserv, Inc.  (Doc. # 97-1.)  Further, a 2005 IRA
contract, which Plaintiffs referenced in the Complaint (Doc. # 69, ¶ 51(g)) and which
Defendants presented at the August 9 Motions Hearing, reflects that Fiserv Trust
Company, not Fiserv, Inc., has been using the Fiserv Investment Support Services
name; the Contract contains both the "FISERV INVESTMENT SUPPORT SERVICES"
name and "© Fiserv Trust Company."  Therefore, to the extent that Plaintiff has asserted
allegations against FISS, those allegations are limited to Fiserv Trust Company and do
not extend to Fiserv, Inc.

Second, Plaintiffs have failed to allege that Fiserv, Inc. was a party to any of the
at-issue Agreements.   A "parent company has a separate corporate existence and is
treated separately from the subsidiary in the absence of circumstances justifying
disregard of the corporate entity."  *Benton v. Cameco Corp.*, 375 F.3d 1070, 1081
(10th Cir. 2004) (quoting *Quarles v. Fuqua Indus.*, 504 F.2d 1358, 1362 (10th Cir.
1974)).  Further, "[i]t is a general principle of corporate law deeply ingrained in our
economic and legal systems that a parent corporation . . . is not liable for the acts of

10

its subsidiary[.]" *United States v. Bestfoods*, 524 U.S. 51, 61 (1998) (internal quotations

omitted).  A disregard for the corporate entity and piercing the corporate veil is

warranted when "the corporate structure is used so improperly that the continued

recognition of the corporation as a separate legal entity would be unfair[.]"  *Micciche v.*

*Billings*, 727 P.2d 367, 372-73 (Colo. 1986).  In the instant case, Plaintiffs have not

alleged any facts that support piercing the corporate veil.  Accordingly, the Court finds

no basis to conclude that Fiserv, Inc. should be held liable for the contracts entered into

by its subsidiaries.

Third, Plaintiffs have not alleged any facts demonstrating that Fiserv, Inc. aided

and abetted the other Defendants.  Although Plaintiffs have made some general and

vague allegations of aiding and abetting activity on the part of the "Trustee Defendants,"

Plaintiffs failed to identify how Fiserv, Inc. engaged in aiding and abetting a breach of

fiduciary duty.  *See*, *e.g.*, Doc. # 69, ¶ 98 ("The Trustee Defendants and other

Defendants are each liable for aiding and abetting the Trustee Defendants' breach

of their fiduciary duties because they knew and materially assisted the numerous

breaches of the Trustee Defendants."); *id.*, ¶ 133 ("The Trustee Defendants' foregoing

repeated breach of contract and extreme departure from the standards of ordinary care

. . .  also constitutes a breach of fiduciary duty which violates State common law . . . ");

*id.*, ¶ 136 ("Each Defendant aided and abetted such breach of fiduciary duty . . . ").

Accordingly, the Court finds that the Plaintiffs have failed to allege sufficient facts

to support any cause of action against Defendant Fiserv, Inc.  Merely because Fiserv,

Inc. is the parent corporation of the other Defendants does not make it liable for its

subsidiaries' alleged conduct.  As such, the Court GRANTS Defendant Fiserv, Inc.'s

Motion to Dismiss and dismisses, without prejudice, all claims against Fiserv, Inc.

## IV.   DEFENDANTS' MOTION TO DISMISS ALL CLAIMS AS TO ALL DEFENDANTS ("OMNIBUS MOTION TO DISMISS") (Doc. # 78)

As noted above, Plaintiffs have asserted "federal common law" claims against

Defendants for breach of contract (Claims 1 and 21), ordinary and gross negligence

(Claims 2 and 22), breach of fiduciary duty (Claims 3 and 23), aiding and abetting

breach of fiduciary duty under federal law (Claims 4 and 24), and unjust enrichment

and restitution (Claims 5 and 25).  Plaintiffs have also asserted a claim for "Implied

Right of Action Under Federal Law, Including Section 408 of the Internal Revenue

Code" (Claim 31).  Finally, Plaintiffs have asserted a breach of fiduciary duty claim

under ERISA (Claim 32).  For the reasons discussed below, the Court grants

Defendants' Motion to Dismiss these claims.

## A.   FEDERAL COMMON LAW

"Federal common law" is

a rule of decision that amounts, not simply to an interpretation of a federal statute or a properly promulgated administrative rule, but rather, to the judicial 'creation' of a special federal rule of decision . . . .  cases in which judicial creation of a special federal rule would be justified . . . are . . . **few and restricted**.  Whether latent federal power should be exercised to displace state law is primarily a decision for Congress, not the federal courts.  Nor does the existence of related federal statutes automatically show that Congress intended courts to create federal common-law rules, for Congress acts against the background of the total *corpus juris* of the states.  Thus, normally, when courts decide to fashion rules of federal common law, the guiding principle is that **a significant conflict between**

> **some federal policy or interest and the use of state law . . . must first**
> **be specifically shown**.  Indeed, such a conflict is normally a precondition.

*Atherton v. F.D.I.C.*, 519 U.S. 213, 218-19 (1997) (internal quotations and citations

omitted) (emphasis added); *see also Boyle v. United Techs. Corp.*, 487 U.S. 500, 507

(1988) (state law will be displaced where a significant conflict between federal policy or

interests and state law exists or application of state law would frustrate federal law's

specific objectives); *Tex. Indus., Inc.*, *v. Radcliff Materials, Inc.*, 451 U.S. 630 (1981)

(declining to apply federal common law to a suit involving the rights and obligations of

private parties).

**B.    PLAINTIFFS' REQUEST THAT THE COURT CREATE FEDERAL**
**COMMON LAW**

Plaintiffs premise their request that the Court create federal common law on two

grounds: (1) the IRA Agreements' incorporation by reference of section 408 of

theInternal Revenue Code,[9] 26 U.S.C. § 408[10] and (2) purported inconsistencies

between applicable federal and state statutes.

1.    <u>Extent To Which Plaintiffs' Rights Stem From A Federal Source</u>

Plaintiffs contend that their federal common law claims stem, in part, from 26

U.S.C. § 408.  However, the Court finds that section 408 does not create a federal

---

[9]  *See, e.g.*, (Doc. # 81-3 at 13, ¶ 10.4) ("Any provision of this Plan and Trust Agree-
ment, or of a Participant's Adoption Agreement, shall be wholly invalid if it is inconsistent, in
whole or in part, with the Code Section 408(a) of the regulations under [the Internal Revenue
Code, 26 U.S.C. § 408].  This Plan shall be governed by and construed, administered, and
enforced according to the laws of the State of Colorado except to the extent preempted by
Federal law.").

[10]  "For purposes of this section, the term 'individual retirement account' means a trust
created or organized in the United States for the exclusive benefit of an individual or his
beneficiaries, but only if the written governing instrument creating the trust meets [certain
requirements]."  26 U.S.C. § 408(a).

common law for three reasons: (1) an implied cause of action is a matter of legislative intention and the tax code lacks any wording that creates a private right of action against errant fiduciaries of pension and individual retirement accounts, (2) fiduciary duty claims traditionally fall under state law, and (3) section 408 does not impose a specific duty of care requiring an IRA custodian to prevent a customer from making unwise investment decisions or to exceed the agreed-upon duties set forth in the IRA Agreements.

A number of courts have considered and rejected the argument that an implied private cause of action exists under 26 U.S.C. § 408.  As an example, the Southern District of Texas considered this issue in *Scionti v. First Trust Corp.*, No. H-95-5493, 1999 U.S. Dist. LEXIS 23253 (S.D. Tex. June 24, 1999) (unpublished).  After looking at other courts' decisions, the *Scionti* court came to the conclusion that "no private cause of action for an alleged breach of the tax code" exists. *Id.* at *63.  The Southern District of New York came to the same conclusion noting that "the Supreme Court has made it abundantly clear that the existence of an implied cause of action is a matter of legislative intention."  *Sirna v. Prudential Secs., Inc.* No. 95-cv-8422, 1997 WL 53194, at *3 (S.D.N.Y. 1997) (unpublished).  The court further noted that "[s]ection 408 of the Code does no more than establish a framework whereby individuals may obtain favorable tax treatment [for their retirement savings]," and "there is nothing in the wording or effect of the statute to suggest that Congress intended to create, via the tax code, a private right of action against errant fiduciaries."  *Id.*

14

The Court finds persuasive the aforementioned decisions.  Additionally, parties cannot create, or ask the Courts to create, federal common law through incorporation of federal law into their contract, especially where, as here, the at-issue law does not create a private cause of action.  *See Hines v. Fiserv, Inc.*, No. 8:08-cv-2569, 2010 WL 1249838, at *2-*3 (M.D. Fla. Mar. 25, 2010) (unpublished).  In the instant case, as in *Hines*, the underlying IRA Agreements for Plaintiffs' IRA custodial accounts exculpated the Defendant trustees from any fiduciary duty to investors.

For these reasons, the Court finds that the incorporation by reference of section 408 into the underlying IRA Agreements does not create any federal common law claims.  Additionally, because no implied private right of action exists under section 408, Plaintiffs' thirty-first claim for an implied right of action under federal law fails.

>2. Federal Public Policy Interests and Purported Inconsistencies Between Applicable Federal and State Statutes

Plaintiffs ask the Court to create federal common law to promote ERISA's policy against exculpatory clauses under 29 U.S.C. § 1110(a).  However, ERISA does not govern the underlying IRA Agreements because they are not employer-sponsored; rather, they are maintained by Plaintiffs.  *See* 29 C.F.R. § 2510.3-2(d)(1) ("the terms 'employee pension benefit plan' and 'pension plan' shall not include an individual retirement account described in section 408(a) of the [Internal Revenue] Code."); *Charles Schwab & Co., Inc. v. Debickero*, 593 F.3d 916, 919 (9th Cir. 2010) (IRA plan that lacked any employer oversight or any ongoing employer commitment is outside ERISA's scope); *Sirna v. Prudential Secs., Inc.*, No. 95 CIV 8422, 1997 WL 53194, at *1

15

(S.D.N.Y. Feb. 10, 1997) (unpublished) (noting that ERISA excludes IRAs); *see also*

*Russell v. Chase Inv. Servs. Corp.*, No. 09-cv-360, 2010 WL 419938, at *2-*4 (N.D.

Okla. Jan. 28, 2010) (unpublished) (dispute between beneficiaries and trustee of an IRA

is not subject to ERISA).  Thus, to the extent that ERISA promotes a public policy

against exculpatory clauses, such public policy does not apply to Plaintiffs' IRA

Agreements.  *See Metz v. Indep. Trust Corp.*, 994 F.2d 395, 399 (7th Cir. 1993)

(rejecting similar public policy argument where at-issue IRA Agreements were not

governed by ERISA).

       Because Plaintiffs' IRA Agreements fall outside the scope of ERISA and no

private right of action exists under section 408, this dispute is distinguishable from

Plaintiffs' cited cases, in which courts found preemption of state law in favor of federal

policies or interests.  *See*, *e.g.*, *Boyle v. United Tech. Corp.*, 487 U.S. 500, 508 (1988)

(preempting state defamation law in favor of federal privilege in light of the federal

government's overriding interest in promoting its effective functioning where defamation

claims arose from statements made in the course of a federal official's duties); *Int'l*

*Ass'n Machinists v. Cent. Airlines, Inc.*, 372 U.S. 682, 687-692 (1963) (finding

preemption of state contract law where suit implicated the federal government's interest

in minimizing interruptions to the nation's transportation system caused by strikes or

other labor disputes and achieving uniformity in the resolution of such disputes); *Snider*

*v. Circle K Corp.*, 923 F.2d 1404, 1407 (10th Cir. 1991) (creating federal common law in

employment agreement dispute where discrimination claims implicated an act of Congress, namely Title VII).

Plaintiffs also assert that the creation of federal common law is necessary to remedy a conflict between state law and federal law, as articulated in section 408 of the Internal Revenue Code.  However, the circumstances of the instant case do not support the creation of federal common law.  "Conflict preemption requires that the state law materially impede or thwart the federal law or policy."  *Ramsey Winch, Inc. v. Henry*, 555 F.3d 1199, 1204 (10th Cir. 2009).  "[S]tate law is pre-empted where it regulates conduct in a field that Congress intended the Federal Government to occupy exclusively."  *English v. Gen. Elec. Co.*, 496 U.S. 72, 79 (1990).  In the instant case, Plaintiffs do not and cannot allege that state law stands as "an obstacle to the accomplishment and execution of the full purposes and objectives of Congress" in enacting section 408.  *Id.*  As previously noted, section 408 serves the limited purpose of providing a framework pursuant to which IRAs can qualify for tax deferment, and Plaintiffs have cited to no authority in which Congress intended federal law to occupy the field with respect to the bargained-for rights and obligations of parties to an IRA agreement.  For these reasons, the Court finds no conflict between federal and state law in this case.

3.      Federal Interest Arising From IRS's Approval of Model IRA Agreements

Plaintiffs contend that a significant federal interest over IRAs arises from the Internal Revenue Service's approval of a model IRA custodial agreement, namely Form

17

5305-A and, therefore, federal law trumps state law.  However, this basis for creation of

federal law also fails.

The model agreement explicitly provides that state law governs, at least in part,

the relationship between the IRA account holder and account administrator and that the

parties might choose to limit each others' duties and responsibilities through exculpatory

provisions.  In particular, the specific instructions for Article VIII of Form 5305-A,

provides:

> Article VIII.  Article VIII [allowing parties to insert additional provisions] and
> any that follow it may incorporate additional provisions that are agreed to
> by the depositor and custodian to complete the agreement.  They may
> include, for example, definitions, **investment powers**, voting rights,
> **exculpatory provisions**, amendment and termination, removal of the
> custodian, custodian's fees, **state law requirements** . . . .

(IRS Form 5305-A, *available at* http://www.irs.gov/pub/irs-pdf/f5305a.pdf (last visited

March 16, 2011) (emphasis added)).

Additionally, this action does not involve the authority and duties of the United

States as sovereign and is not of an interest or international nature such as to render

inapplicable state law.  Rather, the instant dispute concerns the rights and obligations of

private parties.  Accordingly, any federal interest is "highly abstract."  *Wallis v. Pan Am.*

*Petroleum Corp.*, 384 U.S. 63, 70-71 (1966) (declining to create federal common law).

Therefore, the Court grants Defendants' Omnibus Motion to Dismiss to the extent it

seeks dismissal of Plaintiffs' claims premised on federal common law, namely Claims 1

& 21 (breach of contract); Claims 2 & 22 (ordinary and gross negligence); Claims 3 & 23

(breach of fiduciary duty); Claims 4 & 24 (aiding and abetting breach of fiduciary duty);

Claims 5 & 25 (unjust enrichment); and Claim 31 for an implied right of action under federal law, including section 408 of the Internal Revenue Code.

## C.   PLAINTIFFS' BREACH OF FIDUCIARY DUTY CLAIM UNDER ERISA (Claim 32)

Plaintiffs have asserted a claim for Breach of Fiduciary Duty Under ERISA (Claim 32).  Dismissal of Claim 32 is warranted for two reasons.  First, Plaintiffs have not alleged that their IRAs involve employee pension benefit plans or that they are "participants" or "beneficiaries" of any such pension benefit plans.  Second, as previously discussed, such IRA plans are explicitly excluded from coverage under Title I of ERISA.   Further, at the August 9 Motions Hearing, Plaintiffs' counsel acknowledged that none of the named-Plaintiffs IRA accounts qualify as ERISA plans.  (August 9 Motion Hearing Transcript, Doc. # 110, 27:10-19.)  Therefore, Plaintiffs lack standing to sue under ERISA.  *Chastain v. AT&T*, 558 F.3d 1177, 1181 (10th Cir. 2009).

Accordingly, Defendants' Omnibus Motion to Dismiss Plaintiffs' claim for Breach of Fiduciary Duty Under ERISA (Count 32) is granted.  To the extent that non-named plaintiffs may be ERISA beneficiaries, such plaintiffs would not be proper class members in the instant litigation because they would not be similarly-situated with the plaintiffs who are not ERISA beneficiaries.[11]  *See* Fed. R. Civ. P. 23(a).

---

[11]  Counsel also indicated that some of the class members *may* be ERISA beneficiaries. (Doc. # 110, 27:10-19).

**D.**     **PLAINTIFFS' STATE LAW CLAIMS**

1.     <u>Ordinary and Gross Negligence Claims (Claims 7, 12, 17, and 27) and
Breach of Fiduciary Duty (Claims 8, 13, 18, and 28)</u>

In support of their negligence claims, Plaintiffs allege that Defendants' "extreme

departures from the standards of ordinary care also violate[d] state common law

prohibitions against negligence, and constitute[d] gross negligence." (*See*, *e.g.*, Doc.

# 69, ¶ 113.)  In particular, Plaintiffs contend that Defendants "negligently failed to

preserve, to retain control over, to hold, to safe-keep the Trust res which each [c]lass

member entrusted to Defendants," and failed to provide accurate account statements

and investigate red flags.  (*See*, *e.g.*, Doc. # 69, ¶¶ 87, 124, 133, 140, and 141.)

Similarly, in support of their breach of fiduciary duty claims, Plaintiffs point to the

aforementioned conduct, as well as to Defendants' purportedly extreme departures from

the standards of ordinary care and duties of good faith, extreme candor, loyalty,

honesty, and fair dealing.  (*Id.*, ¶¶ 93, 205.)

In order to state an actionable negligence claim, a plaintiff must establish four

elements: duty, breach, harm, and causation.  *Vigil v. Franklin*, 103 P.3d 322, 333

(Colo. 2004) (citing *Smith v. City and County of Denver*, 726 P.2d 1125, 1127 (Colo.

1986)).  "If the court concludes as a matter of law that no duty existed, a negligence

action cannot be maintained."  *Id.*  Likewise, in order to state an actionable claim

for breach of fiduciary duty, a plaintiff must allege that a fiduciary duty existed, the

defendant breached that duty, and the breach was the proximate cause of damages.

*Aller v. Law Officer of Carole C. Schriefer*, 140 P.3d 23, 26 (Colo. Ct. App. 2005).

20

As previously discussed, Plaintiffs have failed to identify any duties that exist independent of the IRA Agreements, and Plaintiffs' IRA Agreements fall outside the scope of section 408 of the Internal Revenue Code.  Additionally, the Colorado Revised Statutes do not govern Plaintiffs' IRAs.  *See* Colo. Rev. Stat. § 15-10-201(56) ("'Trust' excludes . . . security arrangements[.]"); *Id.* at § 15-10-201(46) ("'Security' includes any note; stock; treasury stock; bond; debenture; evidence of indebtedness . . . any interest or instrument commonly known as security . . . or any warrant or right to subscribe to or purchase, any of the items enumerated in this subsection").  Accordingly, the Court finds that Defendants' at-issue duties of care do not have an existence independent of the IRA Agreements, themselves.  *Cf. Hess Oil Virgin Islands Corp. v. UOP, Inc.*, 861 F.2d 1197, 1202 (10th Cir. 1988) ("A party may be liable in tort for breaching an independent duty towards another, even where the relationship creating such duty originates in the parties' contract.").  To the extent that Defendants might have had a pre-existing duty to provide accurate account statements, investigate red flags, and retain control over the trust assets, the IRA Agreements exculpate Defendants of any such duties.  Thus, Plaintiffs' negligence and breach of fiduciary duty claims fail as a matter of law.  *See Hines v. Fiserv, Inc.*, No. 08-cv-2569, 2010 WL 1249838, at *2 (M.D. Fla. Mar. 25, 2010) (unpublished) (dismissing with prejudice breach of fiduciary duty claim in light of agreement's express disclaimer of fiduciary duties); *see also Metz v. Indep. Trust Corp.*, 994 F.2d 395, 398 (7th Cir. 1993) (stating that a trust agreement defines the powers and duties granted to a trustee).

21

a)      *Whether the Exculpatory Provisions are Void As Against Public Policy*

Plaintiffs contend that the exculpatory provisions are void as against public policy under Colorado law because (1) the services Defendants provided involved critical contractual and fiduciary duties owed to the public, (2) the nature of the service – holding Americans' retirement savings – counsels against enforcing such exculpatory clauses, and (3) the contracts are one-sided form contracts, drafted entirely by "Fiserv," and were not bargained for at arms' length.  (Doc. # 90 at 29.)

However, the Tenth Circuit considered and rejected similar public policy arguments in *Allison v. Bank One-Denver*, 289 F.3d 1223 (10th Cir. 2002).  In that decision, the Tenth Circuit, applying the following four-factor test, upheld the validity of an indemnity provision contained within IRA-related custodial agreements and authorizations:

> Under Colorado law, an exculpatory agreement, which attempts to insulate a party from liability from his own negligence, must be closely scrutinized.  In determining the validity of such an agreement, Colorado courts consider four factors: (1) the existence of a duty to the public, (2) the nature of the service performed, (3) whether the contract was fairly entered into, and (4) whether the intention of the parties is expressed in clear and unambiguous language.

289 F.3d at 1240 (citing *Jones v. Dressel*, 623 P.2d 370, 376 (Colo. 1981) (internal quotation omitted)).  "A duty to the public contemplates a party engaged in performing a service of great importance to the public, which is often a matter of **practical necessity** for some members of the public."  *Brooks v. Timberline Tours, Inc.*, 941 F. Supp. 959, 962 (D. Colo. 1996) (quotation and citations omitted) (emphasis added).  Further, "[o]ne

22

of the more important factors in determining the existence of a duty to the public is the availability of choice in the market for the particular service," which "choice cuts against the very reason for holding an exculpatory provision invalid – that the weaker party lacks any realistic opportunity to look elsewhere for a more favorable contract." *Allison*, 289 F.3d at 1241 (internal citations and quotation omitted).

In the instant case, many choices exist for consumers, such as Plaintiffs, who seek IRA services.  Although the at-issue services may be of great importance to the public, the availability of choice in the market with respect to the person or entity to perform such service supports a finding that the exculpatory provisions should not be rendered void as against public policy.  Although Plaintiffs allege that "Madoff required IRA accounts to be handled through 'Fiserv,'" (Doc. # 65, ¶ 16(a)), the Plaintiffs, not "Fiserv" or Defendants, made the initial decision to invest their funds with Madoff. Therefore, although "Fiserv" had a monopoly on IRA investments with Madoff, the Court finds that such monopoly, alone, does not provide a basis to invalidate the at-issue exculpatory provisions.

Because Plaintiffs have not alleged any facts indicating that the IRA Agreements were unfairly entered into such that the exculpatory provisions should not be upheld, Defendants' Omnibus Motion to Dismiss is GRANTED to the extent it seeks dismissal of Plaintiffs' state law claims for breach of fiduciary duty (Claims 8, 13, 18, and 28) and negligence (Claims 7, 12, 17, and 27).

2.    Aiding and Abetting Breach of Fiduciary Duty
       (Claims 9, 14, 19, and 29)

The elements of aiding and abetting a breach of fiduciary duty are: (1) breach of a fiduciary duty owed to a plaintiff, (2) a defendant's knowing participation in the breach, and (3) damages.  *Nelson v. Elway*, 971 P.2d 245, 250 (Colo. Ct. App.1998).

In support of the aiding and abetting claim, Plaintiffs broadly allege that each Defendant: (1) knew of the breaches of fiduciary duty, (2) materially assisted same; (3) aided and abetted such breaches of fiduciary duty under federal common law; and (4) had knowledge of the failure to provide the required reports and materially assisted such failure.  (Compl., Doc. # 69, ¶¶ 137, 155; *see also* ¶¶ 194, 208.)  To the extent that Plaintiffs lodge any specific factual allegations in support of the aiding and abetting claim, such allegations are asserted against Defendants who have been dismissed from this action, namely TD Ameritrade Online Holding Corporation and Robert Beriault Holdings, Inc.  (*See* Compl., Doc. # 69, ¶¶ 100-103, 104-105, 118-120.)

Based on the fact that such allegations were lodged against the dismissed Defendants and the allegations against the remaining Defendants are otherwise vague, the Court finds that Plaintiffs' aiding and abetting allegations fail to satisfy the pleading requirements set forth in *Twombly* and Fed. R. Civ. P. 12(b)(6) and, therefore, should be dismissed without prejudice.  Accordingly, Defendants' Omnibus Motion to Dismiss is GRANTED to the extent it seeks dismissal of Plaintiffs' aiding and abetting breach of fiduciary duty claims under state law (Claims 9, 14, 19, and 29).

3.   Breach of Contract Claims (Claims 6, 11, 16, and 26)

In support of their breach of contract claims, Plaintiffs allege that Defendants breached their duties to hold any securities or other property in the trust, to exercise control over and preserve and maintain the trust assets, to avoid commingling of trust assets with other property except in a common trust fund or a common investment fund, and to furnish annual reports that accurately set forth statements of the assets held in trust at the end of each calendar year.  (Complaint, Doc. # 69, ¶¶ 109-111; 123-128; 142-146; 198-200.)

In order to state an actionable claim for breach of contract, a plaintiff must allege (1) the existence of a contract, (2) performance by the plaintiff or some justification for non-performance, (3) the defendant's failure to perform the contract, and (4) resulting damages to the plaintiff.  *W. Distrib. Co. v. Diodosio*, 841 P.2d 1053, 1058 (Colo. 1992). In the instant case, no dispute exists regarding the IRA Agreements' existence, and the parties agree that the IRA Agreements are unambiguous and that Colorado law governs the contract interpretation.  Therefore, the IRA Agreements must be enforced according to their express terms.  *See Hawkeye Sec. Ins. Co. v. Woodward*, 768 P.2d 1252, 1253 (Colo. Ct. App. 1988).  In the instant case, the express terms of the various Agreements provide that Defendants have no duty to conduct appraisals of investments or to verify any values reported to it.  (*See* Doc. # 81-2 at 5, #81-3 at 5.)

The Court finds that Defendants have fulfilled all their obligations as delineated in the Agreements: they provided account statements that contained the information from

BMIS, which they had no obligation to verify or audit; at Plaintiffs' direction, they transferred assets to BMIS; and they had no contractual obligation to prevent Madoff or BMIS from commingling Plaintiffs' assets.  *See Fraternity Fund, Ltd. v. Beacon Hill Asset Mgmt. LLC*, 376 F. Supp. 2d 443, 447-48 (S.D.N.Y. 2005) (granting motion to dismiss because fund administrator did not have any obligation to calculate or verify independently the value of securities reported to it); *Beddall v. State St. Bank & Trust Co.*, 137 F.3d 12, 20-21, n.3 (1st Cir. 1998) (holding that a trustee had no duty to value investment account assets under the express terms of the trustee's contract).

Plaintiffs' claims also fail to the extent they are premised on a failure to exercise control over, preserve and maintain, and avoid commingling of the trust assets. Plaintiffs complain that Defendants lost control over their assets when they were directed to Madoff for investment purposes.  However, Defendants transferred such assets, at the express direction of Plaintiffs.  Further, Plaintiffs admit that the assets were not commingled until after Defendants transferred them to Madoff.  (*See* Doc. # 69, ¶ 20) ("[U]pon receipt of the assets, the third party (Madoff) immediately commingled and took them").

Accordingly, Defendants' Omnibus Motion to Dismiss is GRANTED to the extent it seeks dismissal of Plaintiffs' breach of contract claims under state law (Claims 6, 11, 16, and 26).

4.  Unjust Enrichment (Claims 10, 15, 20, and 30)

In support of the unjust enrichment claims under state law (Claims 10, 15, 20, and 30), Plaintiffs contend that Defendants' "conduct [   ] requires them to make restitution as well as pay back their unjust enrichment under State law." (Doc. # 69, ¶¶ 122, 140, 158, 211).  Plaintiffs contend that Defendants' unjust enrichment claims concern extra-contractual benefits and, therefore, are excepted from the general rule that a party cannot recover for unjust enrichment when an express contract covers the same subject matter.  Alternatively, Plaintiffs assert that unjust enrichment claims are appropriate in the event that the entire IRA Agreements are invalidated and rendered unenforceable.  (August 9 Motion Hearing Transcript, Doc. # 110 at 110:18-111:9.)

For the following reasons, the Court finds that Plaintiffs' unjust enrichment claims should be dismissed.  First, Plaintiffs have an enforceable contract with Defendants; the at-issue agreements have not been invalidated and the provisions thereof are enforceable, thus precluding a claim for unjust enrichment.  *See Bedard v. Martin*, 100 P.3d 584, 591-92 (Colo. Ct. App. 2004) (finding that written contract for sale of property precluded unjust enrichment claim brought by buyer of land against seller, after buyer discovered that seller did not actually own the purchased property); *Interbank Invs., LLC v. Eagle River Water and Sanitation Dist.*, 77 P.3d 814, 816 (Colo. Ct. App. 2003) ("quasi-contractual recovery may be allowed when an express contract failed or rescinded").

27

Second, under Colorado law, a plaintiff seeking recovery for unjust enrichment must prove: (1) at the plaintiff's expense (2) the defendant received a benefit (3) under circumstances that would make it unjust for the defendant to retain the benefit without paying. *Salzman v. Bachrach*, 996 P.2d 1263, 1265-66 (Colo. 2000) (citing *DCB Constr. Co. v. Central City Dev. Co.*, 965 P.2d 115, 119-20 (Colo. 1998)).  In the instant case, the asserted quasi-contract through which Defendants allegedly received benefits was purportedly between Madoff and Defendants, not Plaintiffs and Defendants.  To the extent that Plaintiffs contend that the moneys Madoff paid Defendants came from Plaintiffs' investment assets, this basis for Plaintiffs' unjust enrichment claim is tangential and tenuously connects Plaintiffs to Defendants' extra-contractual benefit. *See In re Bayou Hedge Funds Inv. Litig.*, 472 F. Supp. 2d 528, 531-32 (S.D.N.Y. 2007) (finding unjust enrichment claim deficient to the extent that it was premised on the defendant's use of the plaintiff's misappropriated funds to pay legal fees to a third party).  Thus, the Court finds Plaintiffs' unjust enrichment claim deficient because Plaintiffs fail to allege, beyond vague and conclusory allegations, that the named Defendants directly received a benefit at Plaintiffs' expense.

Accordingly, Defendants' Omnibus Motion to Dismiss is GRANTED to the extent it seeks dismissal of Plaintiffs' unjust enrichment claims under state law (Claims 10, 15, 20, and 30).

## V.  DEFENDANTS' MOTION TO DISMISS ALL CLAIMS BASED ON SLUSA

Defendants ask the Court to dismiss this class action, without prejudice, because they contend that Plaintiffs' state law claims are barred under the Securities Litigation Uniform Standards Act of 1998 (SLUSA), 15 U.S.C. § 78bb(f).  In support of this request, Defendants assert that:

(1)     the Consolidated Complaint is a "covered" class action, as defined under the statute, because it is a class action complaint seeking damages on behalf of a putative class that consists of about 800 members,[12]

(2)     the Consolidated Complaint is brought under state law because Plaintiffs have lodged numerous state common law claims (*e.g.*, breach of fiduciary duty, breach of contract, negligence, aiding and abetting breach of fiduciary duty, and unjust enrichment),

(3)     the Consolidated Complaint alleges that Defendants engaged in misrepresentations or omissions of material fact or a fraudulent scheme, and

(4)     the allegations concern misrepresentations and omissions in connection with the purchase or sale of a covered security, such as S&P 100 index options and large-cap stocks that are hedged with equity index options.

As such, Defendants assert that Plaintiffs should be required to re-file a properly pled federal securities fraud class action or to pursue their claims in individual actions.

§ 78bb(f) of SLUSA states:

(1)     Class action limitations.  No covered class action based upon the statutory or common law of any State or subdivision thereof may be maintained in any State or Federal court by any private party alleging –

---

[12]  *See* Complaint, Doc. # 69, ¶¶ 66, 228.

29

> > (A)  a misrepresentation or omission of a material fact in connection with the purchase or sale of a covered security . . .

As set forth in § 78bb(f)(5)(B), a "covered class action" means –

> (i)  any single lawsuit in which –
> > (I)  damages are sought on behalf of more than 50 persons or prospective class members . . . ; or
> > (II)  one or more named parties seek to recover damages on a representative basis on behalf of themselves and other unnamed parties similarly situated . . . ;

* * *

SLUSA is not a preemption statute, *i.e.*, it does not preempt any state cause of action nor does it displace state law.  Rather, it denies plaintiffs the right to use the class-action device to vindicate certain claims.  *Merrill Lynch, Pierce, Fenner, & Smith, Inc. v. Dabit*, 547 U.S. 71, 87 (2006); *Anderson v. Merrill Lynch Pierce Fenner & Smith, Inc.*, 521 F.3d 1278, 1281 (10th Cir. 2008).

For SLUSA to apply, the transaction underlying the fraud claim need not be an actual securities transaction.  Rather, it is enough that the fraud alleged "coincide" with a securities transaction.  "The requisite showing . . . is deception in connection with the purchase or sale of any security, not deception of an identifiable purchaser or seller." *Dabit*, 547 U.S. at 85 (citing *United States v. O'Hagan*, 521 U.S. 642, 658 (1997)) (internal quotations omitted); *see also Instituto de Prevision Militar v. Merrill Lynch*, 546 F.3d 1340, 1348-51 (11th Cir. 2008) (finding that fraud allegations coincided with a securities transaction even though the gravamen of the complaint was that certain defendants, by their actions or inactions aided and abetted another entity's theft of the

plaintiff's funds).  "A narrow reading of the statute would undercut the effectiveness of

the [1995 Securities Litigation Reform Act][13] and thus run contrary to SLUSA's stated

purpose, [namely] to prevent certain State private securities class action lawsuits

alleging fraud from being used to frustrate the objectives of the [Reform Act]."  *Dabit*,

547 U.S. at 84.  In the instant case, the Court finds that Plaintiffs' state law claims are

barred by SLUSA.

## A.    STATE LAW AND COVERED CLASS ACTION

There is no dispute that this action meets the first and second SLUSA criteria:

Plaintiffs' claims are based upon the statutory or common law of Colorado, and the

prospective class action seeks damages on behalf of more than 800 prospective class

members.  Thus, the Court need only address whether this action meets the third and

fourth SLUSA criteria, *i.e.*, whether the action concerns covered securities and

misrepresentations of a material fact in connection with the purchase or sale of covered

securities.

## B.    "COVERED SECURITY" AND "IN CONNECTION WITH" THE PURCHASE OR SALE OF A COVERED SECURITY

Under SLUSA, a "covered security" is a security that is

(A)    listed, or authorized for listing, on the New York Stock Exchange or the American Stock Exchange, or listed, or authorized for listing, on the National Market System of the Nasdaq Stock Market (or any successor to such entities);

---

[13]  Private Securities Litigation Reform Act ("PSLRA"), Pub.L.No. 104-67, 109 Stat. 737 (1995) (codified as amendments to 15 U.S.C. §§ 78-78 and 18 U.S.C. § 1964).

> (B)     listed, or authorized for listing, on a national securities exchange (or tier or segment thereof) that has listing standards that the Commission determines by rule (on its own initiative or on the basis of a petition) are substantially similar to the listing standards applicable to securities described in subparagraph (A); or
>
> (C)     is a security of the same issuer that is equal in seniority or that is a senior security to a security described in subparagraph (A) or (B).

15 U.S.C. § 77p(f)(3).

Courts applying SLUSA generally have interpreted the "in connection" element broadly and have looked to the "essence" of a state law claim to avoid circumvention of the statute by artful drafting. *Rowinski v. Salomon Smith Barney Inc.*, 398 F.3d 294 (3d Cir. 2005). In *Rowinski*, the court articulated the following four guideposts[14] for deciding whether the "in connection with" element of SLUSA is satisfied:

> (1)     whether the covered class action alleges a "fraudulent scheme" that "coincides" with the purchase or sale of securities;
>
> (2)     whether the complaint alleges a material misrepresentation or omission "disseminated to the public in a medium upon which a reasonable investor would rely;"
>
> (3)     whether the nature of the parties' relationship is such that it necessarily involves the purchase or sale of securities; and
>
> (4)     whether the prayer for relief "connects" the state law claims to the purchase or sale of securities.

*Id.* at 302 (cited and discussed in *Backus v. Conn. Cmty. Bank, N.A.*, No. 3:09-cv-1256, 2009 WL 5184360, at *7-*8 (D. Conn. Dec. 23, 2009) (unpublished)).

---

[14] Not all four factors must exist; rather, they are considerations to be taken into account. *Backus v. Conn. Cmty. Bank, N.A.*, No. 3:09-cv-1256, 2009 WL 5184360, at *8 (D. Conn. Dec. 23, 2009) (unpublished).

Plaintiffs assert that SLUSA does not apply to their claims because the at-issue

account statements did not concern covered securities; rather, they argue that the

account statements concerned treasuries and cash, which were falsely reported to be

in Plaintiffs' accounts.  (Doc. # 89 at 10.)[15]  However, the mere fact that the account

statements reported cash values does not automatically render SLUSA inapplicable.

For SLUSA purposes, deception is deemed to have occurred "in connection with the

purchase or sale of any security" even if a security was not actually purchased, provided

the plaintiff had submitted funds to the defendant with the understanding that such

funds would be used to purchase securities.  *Schnorr v. Schubert*, No. 05-303, 2005 WL

2019878, at *5-*7 (W.D. Okla. Aug. 18, 2005) (unpublished) (applying SLUSA where the

plaintiff purchased what he believed to have been securities or the right to purchase

securities); *see also S.E.C. v. Zandford*, 535 U.S. 813, 819-20 (2002) ("a broker who

accepts payment for securities that he never intends to deliver, or who sells customers

securities with intent to misappropriate the proceeds," has acted "in connection with the

purchase or sale of any security").  Further, the actionable securities fraud conduct need

not have been committed by the defendants; rather, it may be committed by a third

party. *Barron v. Igolnikov*, No. 09 Civ. 4471, 2010 WL 882890, at *4 (S.D.N.Y. Mar. 10,

2010) (unpublished); *see also Instituto de Prevision Militar v. Merrill Lynch*, 546 F.3d

1340, 1352 (11th Cir. 2008) (applying SLUSA to claims against a defendant arising from

---

[15]  At the hearing, Defendants represented that part of Madoff's strategy was to convert all securities into treasuries and cash at year's end.  (Hearing Transcript, Doc. # 110 at 99:21-110:4.)

33

a third party's theft of investment funds); *Levinson v. PSCC Servs., Inc.*, No. 09-cv-00269, 2009 WL 5184363, at *6 (D. Conn. Dec. 23, 2009) (unpublished) (also applying SLUSA to claims arising from a third party's conduct).

Viewing the fraudulent scheme as a whole, the Court finds that Defendants' alleged conduct is connected to Madoff's execution of a Ponzi scheme tied to the purported purchase and sale of securities. *See Levinson*, 2009 WL 5184363, at *7 ("In determining whether misrepresentations coincided with the purchase or sale of securities, courts consider the allegedly fraudulent scheme as a whole."). Further, as alleged, the parties' relationship served the purpose of trading securities. *See Ajjarapu v. AE Biofuels, Inc.*, 728 F. Supp. 2d 1154, 1168-69 (D. Colo. July 23, 2010) (noting that courts have found that the at-issue conduct is in connection with a sale of securities where the parties' relationship was such that it would necessarily involve trading in securities); *Rowinski*, 398 F.3d at 302; *Backus v. Conn. Cmty. Bank, N.A.*, No. 3:09-cv-1256, 2009 WL 5184360, at *8 (D. Conn. Dec. 23, 2009) (unpublished) (finding that the "in connection" prong was satisfied because "[t]he custodian agreement governing the parties' dealings states that the relationship was created for the purpose of investment in securities"); *Dommert v. Raymond James Fin. Servs.*, No. 1:06-cv-102, 2007 WL 1018234, at *11 (E.D. Tex. Mar. 29, 2007) (unpublished) (finding that when "the purpose of the investment agreements was to utilize [the plaintiff's] assets and expand upon those assets, presumably with the purchase and sale of securities, the 'in connection with' prong [is] met").

In the instant case, the following allegations in Plaintiffs' Complaint demonstrate that Plaintiffs' state law claims concern covered securities:

(1) Plaintiffs sought Defendants' services to invest their IRA funds in securities selected by BMIS;

(2) Plaintiffs understood that Madoff was going to use Plaintiffs' funds to purchase securities for Plaintiffs' benefit, and Madoff misrepresented to "Fiserv" that such trades were completed;

(3) In periodic reports to Plaintiffs, "Fiserv" relayed and failed to verify incorrect information concerning securities transactions allegedly performed by Madoff and the values of Plaintiffs' IRA accounts;

(4) Plaintiffs relied upon the reports Defendants issued to make further investment decisions;

(5) Madoff and his firm traded securities on exchanges such as the New York Stock Exchange and NASDAQ;

(6) Madoff absconded with Plaintiffs' funds before any securities purchases were made; and

(7) In their Prayer for Relief, Plaintiffs seek "compensatory damages," including "disgorgement," which encompasses both reimbursement of investments lost and fees paid to Defendants.

Accordingly, the Court finds that Plaintiffs' state law claims concern covered securities.

## C.   MISREPRESENTATION OR OMISSION

Plaintiffs allege that Defendants issued account statements that misstated/ misrepresented the value of Plaintiffs' IRAs and misrepresented the safety of their investments, among other failures.  Plaintiffs also allege Defendants served as the exclusive channel for the investment of IRA funds with Madoff, and Defendants selected

Madoff to execute large volumes of lucrative stock trades, including 22% of trades listed on the New York Stock Exchange.  (Doc. # 88 at 49; *see also* Doc. # 90 at 31.)  In essence, Plaintiffs' complaint is that Defendants allowed or enabled Madoff to continue with his Ponzi scheme, which depleted Plaintiffs' funds and, therefore, prevented Plaintiffs from directing Defendants to remove their funds from Madoff's control.

In the instant case, Plaintiffs repeatedly allege that Defendants failed to fulfill their "obligations of good faith, fair dealing, loyalty, due care, extreme candor, and honesty," as trustee of Plaintiffs' IRA funds.  (Doc. # 69, ¶¶ 92, 116, 133, 151, 190, 205.)  Without using the words "misrepresentation" or "omission," Plaintiffs allege that Defendants misled them as to the investments made, failed to disclose the existence of conflicts of interest, and forwarded, without independently verifying, Madoff's inaccurate investment reports.[16]  Underlying these allegations is the implicit assertion that Defendants knowingly disseminated false account statements, *i.e.*, made material misrepresentations upon which Plaintiffs relied.  Plaintiffs attempt to prevent SLUSA's application to

---

[16]  *See, e.g.*, Doc. # 69 at ¶¶ 60 (alleging failures to perform audits); 137 ("[E]ach Defendant had knowledge of the failure to provide the required reports and materially assisted such failure."); 126 (alleging that the furnished annual reports failed to report that Plaintiffs' assets had been converted and dissipated); 144 ("The Trustee Defendants breached their contract by failing to furnish the required accurate annual report."); 148 (alleging "Defendants' foregoing repeated failure to furnish an accurate report"); 166 (alleging "fail[ure] to make every calendar year an accurate report concerning the status of IRA assets."); 174 ("[T]he Trustee Defendants failed to respond to repeated reports from Madoff that were impossible."); 180 ("[T]his arrangement should have altered the Defendants to the need for heightened scrutiny, monitoring, and verification of transactions, yet Defendants ignored this risk[.]"); 182 (alleging contractual failures to "state the status of the account on an annual basis"); 186 (alleging "Defendants' failure to render annual statements accurately reflecting the status of Class members' accounts"); 191 ("The Trustee Defendants breached these fiduciary duties by failing to furnish accurate statements.").

their claims by avoiding usage in their Complaint of certain "red flag" words, such as "fraud," "misrepresent," "omit," "induce," "intend," or "knowingly."  However, a court must look beyond the face of the Complaint to determine whether Plaintiffs have disguised a federal securities claim.  *See*, *e.g.*, *Backus v. Conn. Cmty. Bank*, No. 3:09-cv-1256, 2009 WL 5184360, at *10 (D. Conn. Dec. 23, 2009) (unpublished).

"The question under SLUSA is not whether the complaint uses the prohibited words: 'an untrue statement or omission of a material fact' or a 'manipulative or deceptive device or contrivance.'  It is whether the complaint covers the prohibited theories, no matter what words are used (or disclaimed) in explaining them." *Segal v. Fifth Third Bank, N.A.*, 581 F.3d 305, 311 (6th Cir. 2009) (citing *Rowinski v. Salomon Smith Barney Inc.*, 398 F.3d 294, 300 (2d Cir. 2005); *Dudek v. Prudential Secs.*, *Inc.*, 295 F.3d 875, 879-90 (8th Cir. 2002); *Behlen v. Merrill Lynch*, 311 F.3d 1087, 1094 (11th Cir. 2002)); *see also Dommert*, 2007 WL 1018234, at *8 (holding that the plaintiffs' allegations regarding the defendants' failure to disclose are indistinguishable from explicit allegations of omissions or misrepresentations and, therefore, SLUSA applies); *Xpedior Creditor Trust v. Credit Suisse First Boston (USA) Inc.*, 341 F. Supp. 2d 258, 266 (S.D.N.Y. 2004) (stating that SLUSA preempts a complaint that asserts "garden-variety state law claims that sound in fraud," but denying the preemption motion because neither misrepresentations nor a scheme to defraud were technical elements of nor factual allegations intrinsic to the claims alleged).

Plaintiffs' pleading tactics are similar to those at issue in *Segal v. Fifth Third Bank*, 581 F.3d 305, 311 (6th Cir. 2009) *cert. denied*, 130 S. Ct. 3326 (2010), in which the plaintiff, although disclaiming any allegation of misrepresentation or failure to disclose material facts, specifically alleged that "[t]he gravamen of this Complaint is that the defendants did not deal honestly, ethically, fairly, and/or in good faith with Fifth Third's Beneficiaries."  The Sixth Circuit, nonetheless, found that SLUSA applied to preclude the plaintiffs' claims because the plaintiff's complaint sounded in misrepresentation.  *Id.* at 311-12; *see also Merrill Lynch, Pierce, Fenner, & Smith, Inc. v. Dabit*, 547 U.S. 71 (2006) (finding SLUSA barred state law claims premised on the defendants' allegedly knowing dissemination of misleading corporation and stock valuation research); *Romano v. Kazacos*, 609 F.3d 512, 521, 524 (2d Cir. 2010) (affirming lower court's application of SLUSA where the complaint concerned the defendants' communication of inaccurate, incomplete, or erroneous information, which acts caused the plaintiffs to make certain investment choices); *Siepel v. Bank of America, N.A.*, 526 F.3d 1122, 1124 (8th Cir. 2008) (upholding the district court's application of SLUSA because the claims concerned misrepresentations and omissions in connection with the purchase or sale of securities); *Anderson v. Merrill Lynch Pierce Fenner & Smith,* Inc., 521 F.3d 1278, 1283-84; (10th Cir. 2008) (affirming district court's application of SLUSA where the plaintiff's allegations concerning the defendant's misrepresentations or omissions, through stock value manipulation, were central to the complaint); *Instituto De Prevision Militar v. Merrill Lynch*, 546 F.3d 1340, 1350-52 (11th Cir. 2008) (finding

SLUSA barred state law claims where the plaintiffs alleged, and later incorporated by reference into each count, that the defendants were liable because they had knowledge of, but failed to protect the plaintiffs from, a third party's fraudulent acts); *Barron v. Igolnikov*, No. 09-4471, 2010 WL 882890, at *5 (S.D.N.Y. Mar. 10, 2010) (unpublished) (applying SLUSA where the allegations against feeder fund concerned the fund's failures to provide accurate account statements and ignoring certain "red flag warnings" about Madoff); *Backus v. Conn. Cmty. Bank*, No. 3:09-cv-1256, 2009 WL 5184360, at *7-*11 (D. Conn. Dec. 23, 2009) (unpublished) (finding SLUSA barred state law claims premised on the defendant's alleged misrepresenta-tions concerning its fulfillment of its custodial role and its knowing misrepresentations, which misrepresentations "coincide[d]" with Madoff's Ponzi scheme); *Levinson v. PSCC Servs., Inc.*, No. 09-cv-00269, 2009 WL 5184363, at *12-14 (D. Conn. Dec. 23, 2009) (unpublished) (applying SLUSA where allegations against the defendants, custodians of retirement accounts, concerned the defendants' disregard of several "red flags" concerning Madoff's Ponzi scheme, failures that led the plaintiffs to believe that their investments were safe, and conflicts of interest between the defendants and Madoff).

Accordingly, the Court finds that SLUSA bars the corresponding state law claims. The Court also finds that any asserted non-fraud based state law claims are also preempted by SLUSA if, as in the instant case, they incorporate by reference all preceding allegations in the complaint concerning misrepresentations, including misrepresentations in account statements.  *See Levinson*, 2009 WL 5184363, at

*13 (collecting cases).  Accordingly, IT IS ORDERED THAT Defendants' Motion to Dismiss All Claims Based on SLUSA (Doc. # 79) is GRANTED.

### VI.  DEFENDANTS' MOTION TO DISMISS CERTAIN OF THE PLAINTIFF'S BREACH OF CONTRACT CLAIMS AS TIME-BARRED UNDER THE STATUTE OF LIMITATIONS

Defendants contend that, because seven of the eight named Plaintiffs opened their IRAs prior to 2003,[17] their breach of contract claims are barred by Colorado's three-year statute of limitations for breach of express and implied contract actions. (Doc. # 78 at 52, citing Colo. Rev. Stat. § 13-80-101(1)(a).)  Contract claims accrue on "the date the breach is discovered or should have been discovered by the exercise of reasonable diligence."  Colo. Rev. Stat. § 13-80-108(6).

The Court finds that factual issues exist as to when Plaintiffs first learned, or reasonably should have learned, of their injury, and whether factors exist that support equitable tolling.  Accordingly, Defendants' Omnibus Motion to Dismiss is DENIED to the extent it seeks dismissal of Plaintiffs' breach of contract claims on statute of limitations grounds.

---

[17]  Plaintiff Giuseppe Santinello is the only one who opened his IRA after 2003 (September 2008).  (Consolidated Amended Complaint, Doc. # 69, ¶ 29(b).)

## VII.  **CONCLUSION**

Accordingly, based on the foregoing, IT IS ORDERED THAT:

(1)     Defendants' Motion to Dismiss All Claims As to All Defendants (Doc. # 78) is GRANTED;

(2)     Defendants' Motion to Dismiss Defendant Fiserv, Inc. (Doc. # 80) is GRANTED;

(3)     Defendants' Motion to Dismiss All Claims Based on SLUSA (Securities Litigation Uniform Standards Act of 1998) (Doc. # 79) is GRANTED;

(4)     Defendants' Motion for Reconsideration of Order Regarding Election of Arbitration Rights (Doc. # 111) is DENIED AS MOOT;

(5)     The following claims asserted by Plaintiffs are DISMISSED WITH PREJUDICE:

(a)     Implied Right of Action Under Federal Law (Claim 31);
(b)     Federal Common Law Claims (Claims 1-5 and 21-25); and
(c)     Breach of Fiduciary Duty Under ERISA (Claim 32);

(6)     The following state law claims as asserted by Plaintiffs in this putative class action are DISMISSED WITHOUT PREJUDICE:

(a)     Aiding and Abetting Breach of Fiduciary Duty Claims (Claims 9, 14, 19, and 29);
(b)     Breach of Contract Claims (Claims 6, 11, 16, and 26);
(c)     Unjust Enrichment Claims (Claims 10, 15, 20, and 30);
(d)     Ordinary & Gross Negligence Claims (Claims 7, 12, 17, 27); and
(e)     Breach of Fiduciary Duty Claims (Claims 8, 13, 18, and 28); and

(7)     All claims asserted against Defendant Fiserv, Inc. are DISMISSED WITHOUT PREJUDICE.

DATED:  March __29__, 2011

BY THE COURT:

_____
CHRISTINE M. ARGUELLO
United States District Judge

# APPENDIX A – Pertinent Provisions of the At-Issue IRA Agreements

---

**Agreement #1: Self-Directed Individual Retirement Account Application\***

---

\* This Agreement is between the account holder and Defendant Retirement Accounts, Inc.

1.      Valuation Reporting Policy

"Each account statement you receive shows the reported value of your assets, all transactions that have taken place and all fees that have been charged. [Retirement Accounts, Inc.] reports the value of account securities as accurately as possible using the resources available to us . . . .

Note: Retirement Accounts, Inc. **does not conduct appraisals of investments**, and it does not seek to verify any values reported to it by officers representing the investments.  You should refer to reports received from the general partner, corporate issuer or sponsor (or contact these sources directly) with regard to the current operation and status of your chosen asset(s).  The account statement (and reported value therein) should not be used as a basis for making, retaining or disposing of an investment."

(Doc. # 81-2 at 5) (emphasis added).

---

**Another Self-Directed Individual Retirement Account Application states:**

---

" . . . [Retirement Accounts, Inc.] reports the value of account assets as accurately as possible using the resources available to it.  The values listed on your [Retirement Accounts, Inc.] account statement may differ from the values listed on your brokerage account or other investment sponsor statements . . . .

" . . . **[Retirement Accounts, Inc.] does not guarantee the accuracy of prices obtained from quotation services**, nor the length of availability of such prices."

* * *

"**[Retirement Accounts, Inc.] does not conduct appraisals of investments and it does not seek to verify any values provided to it.**  The reported value of any asset may differ materially from its actual value.  [Retirement Accounts,

Inc.] does not guarantee the accuracy of reported values, or whether you will be able to obtain the value indicated in your account statement in the event of a sale . . . ."

(Doc. # 81-3 at 5) (emphasis added).

---

**Agreement #2: IRA Plan and Trust Agreement***

---

\* This Agreement is between the account owner and Defendant Retirement Accounts, Inc.

7.1 Investment Responsibility

Subject to Section 7.2 [re appointment of agent], the **Participant has the sole authority and discretion, fully and completely, to select and to direct the investment of all assets to his Account**.  The Participant **accepts full and sole responsibility for the success or failure of any selection made**.  Upon the death of the Participant, the Beneficiary assumes all rights, responsibilities, and liabilities for investment of the Account . . . .

7.3 Trustee and Sponsor Limitation on Liability

Neither the Trustee nor the Sponsor shall be liable for the acts or omissions of the Participant or his agent.  **The Trustee and/or Sponsor shall not have any responsibility nor any liability for any loss of income or of capital, nor for any unusual expense which the Trustee may incur, relating to any investment, or to the sale or exchange of any asset which the Participant . . . directs the Trustee to make**.  Neither the trustee nor the Sponsor will act as an investment advisor to a Participant and shall not have any duty to question the Participant's or his authorized agent's directions regarding the purchase, retention, or sale of any asset.  Neither the trustee nor the Sponsor shall incur any liability by reason of any action taken or not taken by the Participant or his authorized agent resulting from Retirement Accounts, Inc. transmitting or not transmitting to the Participant or his authorized agent any information of any kind and from wherever derived concerning the authorized agent or concerning any investment . . . .

7.4 Trustee's Interim Responsibility

The Participant or the Participant's authorized agent shall direct the Trustee with regard to the investment of any cash in the Account.  In the event such instructions are

not received by the Trustee, the Participant shall be deemed to have directed the Trustee, which may include a savings instrument of the Trustee.

7.5 Trustee's Right Not to Follow Directions

The Trustee shall not follow a direction to invest the Trust[18] . . . if the investment would result in taxable distribution to the Participant . . . Certain investments or classes of investments may pose administrative burdens to the Plan or Trustee, and therefore, the Trustee also reserves the right not to process or accept such investments.  The decision not to act on investment directions that the Trustee deems unacceptable for administrative reasons should in no way be construed as a determination concerning the prudence or advisability of investing in the asset.

7.6 Investment of Trust

The Trustee as trustee of the Trust assets entrusted to it under the Plan shall not commingle the Trust with any other property it holds except in a common trust fund or common investment fund.  **Subject to the rules imposed by the Trustee and subject to investment directions given by the Participant or the Participant's authorized agent**, the Trustee is authorized and empowered, but not by way of limitation, with the following powers, rights and duties . . . .

* * *

7.7 Trustee's Powers

**Subject to the investment directions of the Participant or the Participant's authorized agent**, the Trustee shall have the power or duty:

* * *

(f) To furnish or cause to be furnished to the Participant an annual calendar year report concerning the status of the Account, including a statement of the assets of the Trust held at the end of the calendar[.]

* * *

---

[18] "Trust" is defined as "all property of every kind held or acquired by the Trustee under this Plan." (Doc. # 81-3 at 10, ¶ 2.9.)  "Plan" is defined as "the individual retirement account established by the Participant, subject to acceptance by the Trustee, in the form of this Plan and Trust Agreement . . . " (*Id.*, ¶ 2.6.)

10.1 No Responsibility for Participant Action

**Neither the Sponsor nor the Trustee shall have any obligation or responsibility with respect to any act of, or failure to act, on the part of a Participant** . . . .

\* \* \*

10.3 Indemnity of Trustee and Sponsor

The Participant . . . agrees to indemnify and hold harmless the Trustee and Sponsor (hereinafter, "Trustee") from and against all losses, expenses, settlement payments, or judgment incurred by, or entered against the Trustee as the result of any threatened or asserted claim against the Trustee that pertains in any way to: (1) the Trustee's activities with the Participant; (2) the Participant's investments; and/or (3) a situation or matter associated with this Trust or Plan . . . **The Participant's indemnification obligation applies to any threatened or asserted claim against the Trustee, including specifically, a claim that is threatened or asserted by the Participant against the Trustee.** The Participant's indemnification obligation hereunder also applies to any threatened or asserted claims brought by the Participant against the Trustee resulting from wrongful conduct by the Participant's Designated Representative (or other agent of the Participant), including, but not limited to, fraud, forgery, or any other illegal act engaged in by the Designated Representative or other agent retained by the Participant.

10.4 Controlling Provisions

Any provision of this Plan and Trust Agreement, or of a Participant's Adoption Agreement, shall be wholly invalid if it is inconsistent, in whole or in part, with the Code Section 408(a) of the regulations under [the Internal Revenue Code, 26 U.S.C. § 408]. This Plan shall be governed by and construed, administered, and enforced according to the laws of the State of Colorado except to the extent preempted by Federal law.

(Doc. # 81-3 at 12-13) (emphasis added).

| Agreement #3: Updated Traditional IRA Disclosure Statement* |
|---|

* First Trust Corporation, which is a wholly-owned subsidiary of Fiserv, Inc., does business under the trade name Retirement Accounts, Inc.  (Doc. # 69, ¶¶ 33, 34.)  This updated disclosure statement is for retirement accounts with First Trust Corporation.

* * *

K.      Investment of the IRA and Financial Disclosure

" . . . [T]he assets of the IRA will be invested only in accordance with directions from the Participant or his duly authorized agent.  First Trust Corporation does not offer investment advice to the Participant."

(Doc. # 81-3 at 19.)

| Agreement #4: February 2003 Letter regarding Amendments to the IRA Contract* |
|---|

Indemnification and Limitation of Liability

The Trustee and Sponsor ("Trustee") **shall have no liability for any loss or diminution of the plan assets** resulting from the changes in the market value of the asset; or resulting from reliance or action taken in reliance upon notice, instruction, direction or approval received from an Account Owner or the [ ] [Financial Representative] or by reason of any exercise or failure to exercise investment direction authority by an Account Owner or by the [Financial Representative]; or **by reason of the Trustee's refusal on advice of counsel to act in accordance with any exercise of investment direction by an Account Owner or the [Financial Representative]**; or by reason of any other act or failure to act by an Account Owner or by the designated [Financial Representative]; or by reason of any prohibited transaction or plan disqualification occurring as a result of any action taken or not taken by the Trustee in reliance on direction [from] an Account Owner or [Financial Representative].

**The Account Owner** by execution of this Appointment waives and **will hold the Trustee harmless** from any and all claims including but not limited to damages, court costs, legal fees and costs of investigation arising as a result of changes in the market value of any asset; **resulting from reliance or action taken in reliance upon notice,**

46

**instruction, direction or approval received from an Account Owner or the [Financial Representative]** . . . .

The Account Owner . . . **agrees to indemnify and hold harmless the Trustee** from and against all losses, expenses, settlement payments, or judgment incurred by, or entered against the Trustee as a result of any threatened or asserted claim against the Trustee that pertains in any way to: 1) the Trustee's activities with the Account Owner; 2) the Account Owner's investment; and/or 3) **a situation or matter associated with this Trust or Plan** . . . . The Account Owner's indemnification obligation applies **to any threatened or asserted claim against the Trustee, including specifically, a claim that is threatened or asserted by the Account Owner against the Trustee**. The Account Owner's indemnification obligation hereunder also applies to any threatened or asserted claims brought by the Account Owner against the Trustee resulting from wrongful conduct by the Account Owner's [Financial Representative] (or any other agent of the Account Owner), including, but not limited to, fraud, forgery, or any other illegal act engaged in by the [Financial Representative] or other agent retained by the Account Owner.

(Doc. # 81-4 at 9.) (Emphasis added.)

---

**Agreement #5: Account Statements Contain "A Guide to Understanding Your Statement of Account"***

---

* Plaintiffs purportedly received this guide with each of their quarterly account statements.

* * *

" . . . Any discrepancies should be documented in writing and sent to us within 90 days of the date of this statement.  If the notice of discrepancies is not received in that time, FTC shall be relieved of any and all liability for the accuracy of the data reported in the statement."

" . . . Please note that the **ending balance listed in the Broker Cash column has not been verified** and is held at your brokerage firm (not at FTC).[19]  **To ensure accuracy of this figure** (and all brokerage activity), **please consult your Financial Representative**."

---

[19]  While Defendants held title to Plaintiffs' IRA-related brokerage accounts, the broker (BMIS) held the underlying assets in those brokerage accounts.  (Doc. # 78 at 18.)

" . . . FTC does not request updated valuation information for assets it classifies as non-standard debt investments.  **FTC does not conduct appraisals of investments** and it does not seek to verify any values provided to it."

"**You** (in conjunction with your Financial Representative) **have sole authority and discretion to manage the investment of all assets in your account.  FTC does not render investment advice** nor do we guarantee the account from loss or depreciation."

(Doc. # 81-5 at 28.) (Emphasis added.)